Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Brenden J. Gougeon, Esq.
Nevada Bar No. 16874
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
Email: bgougeon@nvbankruptcyattorneys.com
*Attorneys for Plaintiffs/Debtors*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.: 25-12627-mkn |
| VELOCITY ESPORTS, INC., | Jointly Administered with |
| | Case No. 25-12628-mkn |
| ☐ Affects Velocity Esports, Inc. | Case No. 25-12629-mkn |
| ☐ Affects Velocity Esports Las Vegas Town Square, LLC | Case No. 25-12630-mkn |
| | Case No. 25-12631-mkn |
| ☐ Affects Velocity Esports Chicago Schaumburg, LLC | |
| ☐ Affects Velocity Esports Newport Kentucky, LLC | Chapter 11 |
| ☐ Affects Velocity Esports Orlando Downtown, LLC | |
| ■ Affects All Debtors | |
| Debtor(s). | |
| | Adversary No.: |
| VELOCITY ESPORTS, INC., a Nevada corporation, VELOCITY ESPORTS LAS VEGAS TOWN SQUARE, LLC, a Nevada limited liability company, VELOCITY ESPORTS CHICAGO SCHAUMBURG, LLC, an Illinois limited liability company, VELOCITY ESPORTS NEWPORT KENTUCKY, LLC, a Kentucky limited liability company, and VELOCITY ESPORTS ORLANDO DOWNTOWN, LLC, a Florida limited liability company, | |
| | **VERIFIED ADVERSARY COMPLAINT** |
| Plaintiffs, | |
| v. | |

- 1 -

434 N. ORANGE INVESTMENT, LLC, a Delaware limited liability company;

Defendant,

and

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, solely as nominal garnishee and stakeholder defendant for purposes of notice and implementation of injunctive relief,

Nominal Defendant.

Velocity Esports, Inc., a Nevada corporation (the "Holding Company"), Velocity Esports Las Vegas Town Square, LLC, a Nevada limited liability company ("Velocity LV"), Velocity Esports Chicago Schaumburg, LLC, an Illinois limited liability company ("Velocity Chicago"), Velocity Esports Newport Kentucky, LLC, a Kentucky limited liability company ("Velocity Newport"), and Velocity Esports Orlando Downtown, LLC, a Florida limited liability company ("Velocity Orlando") (collectively, the "Debtors" or "Plaintiffs"), debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through their counsel of record, Nevada Bankruptcy Attorneys, LLC, complain against 434 N. Orange Investment, LLC, a Delaware limited liability company ("Orange" or "Defendant"), and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill"), solely as nominal garnishee/stakeholder defendant for purposes of notice and implementation of any injunctive or Court-supervised funding relief.

## I.

## INTRODUCTION

1.      Plaintiffs commence this adversary proceeding to (a) preserve this Court's jurisdiction over claim allowance; (b) prevent Orange from converting restricted Merrill Lynch assets titled to the LRW Revocable Trust into unilateral collection proceeds before this Court determines Orange's estate-side claims, credits, offsets, limitations, and Plan treatment; (c) preserve the Debtors' ability to seek Court-supervised release and use of Non-Debtor Guarantors' Plan Contributions and related insider-support funding for approved plan-support purposes; and (d) obtain a determination of, and appropriate relief

- 2 -

regarding, Orange's asserted claims arising from that certain Lease dated on or about April 28, 2023, and related agreements and documents, by and between Orange and Velocity Orlando.

2.      Orange has invoked this Court's jurisdiction by filing Proof of Claim No. 2 in the Chapter 11 Case of Velocity Orlando (the "POC 2 Claim") and Proof of Claim No. 11 in the Chapter 11 Case of Velocity Esports, Inc. (the "POC 11 Claim," and together with the POC 2 Claim, the "Orange Orlando Claims").

3.      The POC 2 Claim appears to seek recovery against Velocity Orlando as lessee under the Lease, and the POC 11 Claim appears to seek recovery against Velocity Esports, Inc. as the Corporate Guarantor with respect to the same underlying Lease-based liabilities.

4.      At the same time Orange pursues allowance of the Orange Orlando Claims here, Orange has pursued litigation in Florida against non-debtor guarantors Philip Kaplan and Leonard Wanger (collectively, the "Guarantors") based on the same alleged Lease-based liabilities and that certain guaranty executed by the Guarantors in connection with the Lease (the "Guaranty").

5.      Orange has obtained a default final judgment in Florida against the Guarantors for $400,000.00, jointly and severally, plus statutory interest, and has pursued post-judgment garnishment remedies. Those efforts are now focused materially on Merrill, which has restricted accounts titled to the LRW Revocable Trust. Merrill has advised that no transfers and no purchases are permitted from the restricted accounts and that sale proceeds may not leave the accounts absent further court order. Wanger will testify that the Merrill accounts are wholly owned by the LRW Revocable Trust, an Illinois trust, and that he does not own those accounts individually. Orange contends that because the LRW Revocable Trust is revocable and Wanger is trustee, settlor, and beneficiary, the restricted Merrill assets are reachable under applicable Florida and Illinois creditor law. That anticipated contention does not eliminate the need for bankruptcy relief; it confirms the imminent risk that Orange will obtain turnover before this Court adjudicates Orange's estate-side claims and Plan treatment.

6.      Plaintiffs seek narrowly tailored, temporary relief preventing Orange from converting the restricted Merrill / LRW Trust assets into unilateral collection proceeds through confirmation or further order of this Court, while preserving the Debtors' ability to seek Court-supervised release and use of such funds for approved plan-support purposes. Plaintiffs do not seek a release, discharge, or permanent

injunction of the Guarantors or the LRW Revocable Trust. Plaintiffs seek relief that allows this Court to determine Orange's estate-side claims, administer the Plan process, consider Court-approved plan-support funding needs, and prevent unilateral enforcement from impairing plan consummation.

7. The immediate threat is no longer speculative. On May 20, 2026, Orange filed in the Florida Litigation a Motion for Final Judgment After Writ of Garnishment Against Merrill and Bank of America. Through that motion, Orange seeks entry of final garnishment judgment against Merrill in the amount of $386,454.20 and against Bank of America in the amount of $3,988.22, for a total requested garnishment recovery of $390,442.42. Orange has noticed that motion for hearing on June 8, 2026, at 8:45 a.m. Unless this Court acts before that hearing, Orange may obtain a final garnishment judgment, turnover order, liquidation order, transfer order, or other enforcement relief causing Merrill and/or Bank of America to disburse restricted funds to Orange before this Court adjudicates Orange's estate-side claims, credits, offsets, limitations, and Plan treatment.

8. The injunction is necessary because the Debtors have filed Plan #2, which expressly provides that the means of implementation include anticipated Non-Debtor Guarantors' Plan Contributions. Plan #2 provides that such contributions may be used to fund obligations arising under the Las Vegas transaction, the Newport transaction, payments or reserves required for Class 5 and Class 6, and other costs necessary to consummate the Plan. Plan #2 further states that the Debtors' ability to consummate the Plan depends materially on consummation of the Las Vegas transaction, consummation of the Newport transaction, continued access to the cooperation, support, and services of Kaplan and Wanger, and the Debtors' continued ability to obtain Non-Debtor Guarantors' Plan Contributions to the extent necessary to fund obligations required under the Plan. Plan #2 further states that collection activity, asset restraints, garnishments, or other enforcement efforts directed at Kaplan or Wanger by holders of Class 6 Claims, or by persons seeking to recover on account of the same underlying lease obligations, may materially impair implementation of Class 6 treatment and consummation of the transactions contemplated by the Plan.

9. The Debtors do not seek to take the restricted Merrill funds for unrestricted personal use by Wanger, Kaplan, or any insider. The Debtors seek to prevent Orange from taking the money while preserving the ability to seek Bankruptcy Court-supervised use of those funds for plan implementation, including Allowed Administrative Claims, Allowed Professional Fee Claims, NFS-related obligations,

- 4 -

transaction-consummation costs, and payments or reserves contemplated under Plan #2. Any such use would occur only after notice, hearing, and further order of this Court.

10.    This Complaint also includes, pursuant to Fed. R. Bankr. P. 3007(b), Plaintiffs' objection to and request for determination, disallowance, and/or reduction of the Orange Orlando Claims under 11 U.S.C. § 502, including based on Orange's failure to credit applicable offsets, failure to properly support and itemize the claimed amounts, duplication or overlap between the POC 2 Claim and the POC 11 Claim to the extent they seek recovery on the same underlying Lease-based obligation, and the statutory limitation on landlord termination damages under 11 U.S.C. § 502(b)(6).

## II.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the District Court's order of reference.

12.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), including, without limitation, subsections (A), (B), and (O), because, among other things, it concerns the administration of these estates, the allowance and disallowance of claims against the estates, and matters affecting the adjustment of the debtor-creditor relationship.

13.    Plaintiffs' request for injunctive relief arises under section 105(a) of the Bankruptcy Code, and Plaintiffs' request for declaratory relief arises under 28 U.S.C. § 2201. Each request relates to the Court's authority to protect its jurisdiction, to carry out the provisions of the Bankruptcy Code, and to prevent actions that threaten the estates and reorganization.

14.    Plaintiffs' request for determination, disallowance, and/or reduction of the Orange Orlando Claims arises under section 502 of the Bankruptcy Code and related provisions, and is properly included in this adversary proceeding pursuant to Fed. R. Bankr. P. 3007(b). Plaintiffs also include the claim objection information required by Local Rule 3007, including the claim holder, claim number, filed date, amount asserted, disputed amount, grounds for objection, and copies of the first pages of the proofs of claim

15.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

16.    Orange is subject to this Court's jurisdiction, and this Court may adjudicate and determine the Orange Orlando Claims and related issues, including because Orange has invoked this Court's claims-

allowance process by filing the POC 2 Claim in the Chapter 11 Case of Velocity Orlando and the POC 11 Claim in the Chapter 11 Case of Velocity Esports, Inc.

17. Merrill is named solely as a nominal garnishee/stakeholder defendant for purposes of notice, due process, and implementation of any order affecting the restricted Merrill assets. Plaintiffs do not seek damages, fees, sanctions, or affirmative monetary relief against Merrill. Plaintiffs seek to ensure that Merrill receives notice and an opportunity to be heard before this Court enters any order that could affect Merrill's duties as garnishee, custodian, or financial institution.

18. Plaintiffs reserve the right to serve Merrill under Fed. R. Bankr. P. 7004(h) and to request that any order affecting Merrill's obligations expressly provide that Merrill is not required to release, transfer, or disburse funds absent further order of this Court, order of the Florida court, or a written release, withdrawal, or stipulation sufficient under applicable law.

19. Pursuant to Fed. R. Bankr. P. 7008 and Local Rule 7008, Plaintiffs consent to the entry of final orders and judgment by the Bankruptcy Court to the fullest extent permitted by Article III of the United States Constitution. To the extent any matter is determined to be non-core or otherwise beyond the Bankruptcy Court's constitutional authority to enter final judgment absent consent, Plaintiffs consent to entry of final orders and judgment by this Court.

### III.

### PARTIES

20. Plaintiffs are the Debtors and debtors in possession in the Chapter 11 Cases. Velocity Orlando is the tenant under the Lease. Velocity Esports, Inc. is the corporate guarantor identified in the Lease documents and is the parent/holding company for the Debtor enterprise. The remaining Debtors join in this adversary proceeding because Orange's collection activity threatens the jointly administered reorganization and implementation of the filed Plan.

21. Defendant Orange is a landlord under the Lease and the holder of the POC 2 Claim and the POC 11 Claim. Orange filed Proof of Claim No. 2 in the Velocity Orlando case in the amount of $5,810,321.22 and Proof of Claim No. 11 in the Velocity Esports, Inc. case in the amount of $2,377,910.22.

22. Merrill is the garnishee in the Florida garnishment proceedings involving the restricted Merrill accounts titled to the LRW Revocable Trust. Merrill is joined solely as a nominal

garnishee/stakeholder defendant to ensure notice, due process, and implementation of any order that may affect the restricted Merrill assets. Plaintiffs do not allege wrongdoing by Merrill and do not seek damages or sanctions against Merrill.

**IV.**

**FACTUAL BACKGROUND**

**A.      THE LEASE, THE ORLANDO LOCATION, AND VELOCITY ORLANDO'S LEASED PREMISES**

23.      The Lease concerns commercial premises at Society Orlando in Orlando, Florida (the "Orlando Premises"), consisting of approximately 14,788 square feet, for a term reflected in the Lease documents and the Delivery Notice (as defined below).

24.      The transaction included a personal guaranty executed concurrently with the Lease by Philip Kaplan and Leonard Wanger, and a corporate guaranty by Velocity Esports, Inc., in connection with Velocity Orlando's obligations under the Lease.

25.      The Lease and the First Amendment (as defined below) are governed by Florida law. The Lease also contains an express guaranty structure under which Velocity Esports, Inc. executed a corporate guaranty and Kaplan/Wanger executed a personal guaranty. The Debtors do not seek in this adversary proceeding to adjudicate, release, or discharge the Guarantors' personal liability; the Debtors seek adjudication of Orange's claims against the Debtor estates and temporary enforcement-only relief to protect plan implementation.

**B.      THE AMENDED LEASE ECONOMICS, DELIVERY, AND COMMENCEMENT DATES**

26.      On or about February 8, 2024, Orange and Velocity Orlando executed that certain First Amendment to Lease Agreement (the "First Amendment").

27.      The First Amendment confirms that Velocity Orlando requested the maximum Additional Construction Allowance of $600,000.00, and in connection with that allowance, the parties revised the Base Rent schedule upward, beginning with Lease Year 1 base rent of $17.00 per square foot for months 1-6 and $34.00 per square foot for months 7-12, before scheduled annual increases.

28.      On or about March 19, 2024, Velocity Orlando executed that certain Notice of Delivery and Acceptance (the "Delivery Notice") stating that the Delivery Date and Commencement Date were March

18, 2024, that the Rent Commencement Date was September 14, 2024, or the date Tenant opened for business to the public if earlier, and that the expiration date of the Initial Term was March 31, 2035.

29.     The Delivery Notice further states that, as of that date, Landlord had fulfilled all of its obligations under the Lease, and that there were no offsets or credits against Base Rent or Additional Rent as of that date, nor had any Base Rent or Additional Rent been prepaid except for the Base Rent abatement provided pursuant to the Lease.

**C.     DEPOSITS, PREPAID RENT, AND OTHER CREDITS BEARING ON CLAIM ALLOWANCE**

30.     The Lease required a $54,000.00 security deposit and prepaid rent of $53,557.21. The Lease Termination and Surrender Agreement later provided that those amounts would be forfeited and released to Orange as part of the termination structure.

31.     Plaintiffs are informed and believe that such amounts, together with any other payments or credits received on account of the same underlying Lease-based obligation, must be properly applied and credited in determining the allowable amounts, if any, of the POC 2 Claim and the POC 11 Claim.

32.     To the extent Orange seeks any additional rent, tax, insurance, operating-expense, or other non-base-rent components, the Lease contains detailed definitions, exclusions, allocation rules, and reconciliation provisions that bear directly on the enforceability and amount of such components.

33.     Earlier, by letter dated February 14, 2025, Orange took the position that the December 2, 2024, Lease Termination and Surrender Agreement had been rescinded because the termination conditions allegedly were not satisfied, and that Orange intended to enforce its rights under the Lease against the former tenant and to pursue Wanger and Kaplan, as guarantors, "to collect all amounts owed to Landlord under the Lease." The Lease Termination and Surrender Agreement also provides that, if rescinded, Orange may retain deposits and amounts previously paid or forfeited and apply them against damages, liabilities, costs, fees, or amounts due from Velocity Orlando. Accordingly, even under Orange's rescission theory, the deposits, prepaid rent, forfeited amounts, and any guarantor recoveries remain relevant to claim allowance, credit, offset, and prevention of double recovery.

**D.     THE CHAPTER 11 CASES, PLAN-SUPPORT FUNDING, AND THE ORANGE ORLANDO CLAIMS**

34.     On May 7, 2025 (the "Petition Date"), Plaintiffs commenced these jointly administered Chapter 11 Cases and have continued to operate as debtors in possession.

35. The Debtors' concurrently filed Chapter 11 Plan of Reorganization #2 ("Plan #2") treats Orange and Woodfield as Class 6 legacy landlord creditors and provides for centralized claim allowance, estimation, reconciliation, objection, compromise, limitation, and reduction of Class 6 Claims before this Court. (Plan §§ 3.8, 3.8.1, 3.8.2.2, 7.1.1, 11.1.21.)

36. Under the filed Plan, Class 6 includes only claims against the Debtors and their estates. The Plan expressly states that any judgment, garnishment, collection, or other enforcement rights asserted by Orange or Woodfield against Non-Debtor Guarantors are not, by reason of such judgment or enforcement posture alone, separate claims against the Debtors, but may be relevant to claim allowance, credit, offset, reduction, or satisfaction to the extent provided by applicable law. (Plan §§ 3.8.1, 3.8.1.1, 3.8.1.2, 3.8.2.2, 3.8.2.5.)

37. The Plan further provides that no payment stream on account of any Class 6 Claim shall be fixed, commence, or become due unless and until the applicable Class 6 Claim becomes Allowed after giving effect to all required reductions, offsets, credits, and non-Debtor recoveries under applicable law. (Plan § 3.8.2.3.)

38. The Plan's means of implementation include anticipated Non-Debtor Guarantors' Plan Contributions. Such contributions may be used to fund obligations arising under the Las Vegas transaction, the Newport transaction, payments or reserves required for Class 5 and Class 6, and other costs necessary to consummate the Plan. (Plan § 3.8.2.3.)

39. The Plan states that the Debtors' ability to consummate the Plan depends materially on the Las Vegas transaction, the Newport transaction, continued access to the cooperation, support, and services of Kaplan and Wanger, and the Debtors' continued ability to obtain Non-Debtor Guarantors' Plan Contributions to the extent necessary to fund obligations required under the Plan. (Plan § 4.1.4.)

40. The Plan states that collection activity, asset restraints, garnishments, or enforcement efforts directed at Kaplan or Wanger by Class 6 creditors, or by persons seeking to recover on account of the same underlying lease obligations, may materially impair implementation of Class 6 treatment and consummation of the transactions contemplated by the Plan. Orange's May 20, 2026, Florida garnishment motion is precisely the type of Class 6 creditor enforcement activity that Plan #2 identifies as materially impairing

implementation of Class 6 treatment and consummation of the transactions contemplated by the Plan.  (Plan §§ 4.1.4, 10.4.2, 11.1.22, 11.1.23.)

41.     Orange filed the POC 2 Claim against Velocity Orlando for $5,810,321.22 and the POC 11 Claim against Velocity Esports, Inc. for $2,377,910.22. Orange did not attach a rent ledger, damages spreadsheet, mitigation analysis, reletting analysis, security-deposit credit calculation, prepaid-rent credit calculation, or other accounting explaining how those amounts were calculated.

42.     In each claim, Orange listed the same amount asserted as the amount necessary to cure any default.

43.     The Orange Orlando Claims are disputed and must be determined through this Court's claims-allowance process, including application of 11 U.S.C. § 502(b)(1) and § 502(b)(6).

44.     To the extent the POC 2 Claim and the POC 11 Claim seek recovery on overlapping components of the same underlying Lease-based obligation, those claims must be reconciled and limited to prevent duplicative or overstated recovery against the Debtors' estates.

E.     **PLAN FUNDING, NFS OBLIGATIONS, ADMINISTRATIVE EXPENSES, AND GUARANTOR SUPPORT**

45.     The Debtors anticipate material plan-funding needs through confirmation and the Effective Date. Those needs include administrative expenses, including estimated professional fees of approximately $350,000.00 through confirmation, obligations and arrearages associated with the Court-approved NFS settlement structure, and payments or reserves necessary for Class 5 and Class 6 treatment under the Plan. (Plan §§ 1.1.1, 1.1.56, 1.1.57, 2.2, 3.6.1, 3.6.2, 3.7, 3.8.2, 4.1.3.)

46.     The Bankruptcy Court approved the Debtors' compromise with NFS under Rule 9019 by order entered November 17, 2025, finding that the settlement was negotiated in good faith, fair and equitable, favorable to the Debtors and their estates, and in the best interests of the Debtors, their estates, and creditors. The order authorized and directed the Debtors to implement and consummate the NFS settlement.  (Plan §§ 3.6.1, 3.6.1.1, 3.6.2.1.)

47.     Kaplan and Wanger are personal guarantors of obligations associated with the NFS settlement/payment stream and the remaining NFS secured equipment lease associated with esports equipment used in the Debtors' Newport operations. The Debtors understand that the monthly payments

under the NFS settlement stream are current, but that NFS attorneys' fees and related arrearage components remain subject to catch-up negotiations. (Plan §§ 3.6.1.1, 3.6.1.2, 3.6.1.3, 3.6.2.2, 3.6.2.4, 3.6.2.7, 3.6.2.8.)

48.    Kaplan and Wanger are working on behalf of the Debtors without compensation. Their continued services, cooperation, and liquidity support are material to the Debtors' ability to prosecute the Plan, preserve value, address administrative expenses, maintain NFS-related arrangements, and fund distributions or reserves under the Plan waterfall.  (Plan §§ 1.1.46, 3.6.2.2, 3.6.2.4, 3.8.2.1, 3.8.2.2, 3.8.2.5, 4.1.3, 4.1.4.)

**F.    THE FLORIDA LITIGATION AND IMMINENT ENFORCEMENT RISK**

49.    Orange commenced litigation against Leonard Wanger and Philip Kaplan in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Circuit Civil Division, under Case No. 2025-CA-003002-O, in a case captioned 434 N. Orange Investment, LLC v. Leonard Wanger and Philip Kaplan (the "Florida Litigation"). Orange initiated the Florida Litigation to enforce its Guaranty executed in connection with the Lease and sought to recover a liquidated amount against the Guarantors arising from the same underlying Lease-based obligations. Orange later described the case in its default-final-judgment motion as "an action for breach of contract for the liquidated sum of $400,000.00."

50.    The Florida Litigation did not name the Debtors as defendants and did not adjudicate the amount, character, enforceability, priority, allowance, limitation, treatment, or payment of Orange's claims against the Debtors' bankruptcy estates.

51.    In the Florida Litigation, Orange moved for clerk's defaults after alleging that Wanger was served with summons on April 10, 2025, Kaplan was served with summons on April 14, 2025, and the response deadlines expired on April 30, 2025, and May 5, 2025, respectively. Orange's motion for default further states that the clerk's defaults were entered against both Wanger and Kaplan on May 8, 2025.

52.    Orange then moved for default final judgment on May 24, 2025, expressly arguing that the Florida Litigation was an action for breach of contract for a liquidated sum of $400,000.00, and that the amount was liquidated because the Guaranty capped the Guarantors' aggregate liability at $400,000.00, exclusive of attorneys' fees and enforcement costs. Orange's motion also asserted that "millions are owed" under the underlying Lease while requesting entry of judgment against the Guarantors in the capped amount of $400,000.00, jointly and severally.

- 11 -

53. On July 23, 2025, after a hearing held on July 9, 2025, the Florida court entered a Default Final Judgment in favor of Orange and against Wanger and Kaplan, jointly and severally, for $400,000.00, plus statutory interest at the legal rate under Florida law. The judgment further required Wanger and Kaplan to complete and serve the Florida Rule 1.977 Fact Information Sheet within 45 days, reserved jurisdiction for 120 days to determine unliquidated attorneys' fees and costs under the Guaranty, and reserved jurisdiction to enter further enforcement orders. The Default Final Judgment states that Orange shall recover from Wanger and Kaplan, jointly and severally, the sum of $400,000.00, plus statutory post-judgment interest, "for which sums let execution issue forthwith."

54. Orange's Florida Litigation theory was limited to enforcement of the Guaranty's capped liability against the Guarantors. The Florida Guarantor Judgment does not adjudicate, and cannot by itself establish, the allowed amount of Orange's claims against the Debtors' bankruptcy estates, the amount of credits or offsets required against those claims, the impact of guarantor recoveries or garnishment proceeds, or the statutory limitation on Orange's landlord claims under § 502(b)(6).

55. After entry of the Default Final Judgment, Orange commenced post-judgment collection efforts. Orange obtained writs of garnishment directed to Merrill and Bank of America.

56. Merrill filed an Answer of Garnishee on March 26, 2026. Merrill identified four accounts associated with Wanger as trustee, titled in substance to "Mr. Leonard Ralph Wanger TTEE, U/A DTD 03/09/2012," and stated that the accounts had a total approximate value of $386,454.20. Merrill further stated that it did not know the extent of Wanger's beneficial interest, if any, in the accounts, that Merrill was not trustee but a mere custodian, and that Merrill lacked direct visibility into the terms or beneficiaries of the trust.

57. Bank of America also filed an Answer of Garnishee identifying two accounts in Wanger's name with a combined amount of $3,988.22 and stating that it would not turn over funds from accounts located outside Florida absent a court order.

58. On May 20, 2026, Orange filed a Motion for Final Judgment After Writ of Garnishment Against Merrill and Bank of America. Orange seeks final garnishment judgment against Merrill in the amount of $386,454.20 and against Bank of America in the amount of $3,988.22. Orange contends that the

Merrill accounts are held in a revocable trust controlled by Wanger as trustee and that repeated monthly distributions from the accounts to Wanger demonstrate Wanger's control over the trust and distributions.

59. Orange further contends that, under Florida and Illinois law, a revocable trust does not provide creditor protection for a judgment debtor like Wanger and that Orange is entitled to collect both the Bank of America funds and the Merrill funds, totaling $390,442.42.

60. The Florida court has noticed Orange's May 22, 2026 motion for hearing on June 8, 2026, at 8:45 a.m. Orange separately filed a certificate of service stating that the garnishment motion and hearing notice were sent by U.S. Mail to Wanger and Kaplan on May 22, 2026.

61. Unless restrained before the June 8, 2026 hearing, Orange may obtain a final garnishment judgment, turnover order, liquidation order, transfer order, disbursement order, or other enforcement relief that would cause Merrill and/or Bank of America to transfer restricted funds to Orange before this Court adjudicates the Orange Orlando Claims and before the Debtors can prosecute confirmation.

62. The Debtors do not contend that the LRW Revocable Trust's revocable-trust form provides a complete substantive defense to Orange's collection efforts. Orange may contend, and has now contended, that assets titled to a self-settled revocable trust are reachable by a settlor's creditors during the settlor's lifetime. That likely collection path makes the threat of turnover imminent and concrete. The Debtors seek temporary bankruptcy relief not because the funds are categorically unreachable, but because Orange should not be permitted to take them for its sole benefit before this Court determines Orange's estate-side claims, credits, offsets, reductions, limitations, and Plan treatment.

63. The restriction and threatened turnover of the Merrill assets directly impair the Debtors' ability to obtain or facilitate Non-Debtor Guarantors' Plan Contributions and related insider-support funding contemplated by Plan #2. The Debtors seek relief that prevents Orange from receiving the funds while preserving the Debtors' ability to seek Court-supervised release and use of such funds for approved plan-support purposes, including Allowed Administrative Claims and Professional Fee Claims, NFS-related obligations and catch-up arrangements, transaction-consummation costs, and Plan payments or reserves. (Plan §§ 1.1.46, 2.2, 3.6.2.2, 3.6.2.4, 3.8.2.1, 3.8.2.2, 3.8.2.5, 4.1.3, 4.1.4, 10.4.2, 11.1.22, 11.1.23.)

## V.

### CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF**
**(11 U.S.C. § 105(A), FED. R. BANKR. P. 7065, AND FED. R. BANKR. P. 7001(7))**

64.     Plaintiffs incorporate by reference and reallege all preceding allegations as though fully set forth herein.

65.     This Count seeks temporary and preliminary injunctive relief and related Court-supervised plan-support funding relief and is properly brought as an adversary proceeding under Fed. R. Bankr. P. 7001(7). Section 105(a) authorizes this Court to issue orders necessary or appropriate to carry out the provisions of the Bankruptcy Code, including to protect these estates, preserve the reorganization process, prevent acts that would impair this Court's jurisdiction and administration of these Chapter 11 Cases, and preserve the Debtors' ability to prosecute confirmation and fund Allowed Administrative Claims, Allowed Professional Fee Claims, NFS-related obligations, transaction-consummation costs, and Plan obligations through Court-supervised mechanisms.

66.     Under Ninth Circuit law, a bankruptcy court considering a § 105(a) injunction that stays actions against non-debtors must apply the traditional preliminary injunction standard, including whether the debtor has shown a reasonable likelihood of successful reorganization, irreparable harm to the estate, balance of hardships, and relevant public interest concerns. *In re Excel Innovations, Inc.*, 502 F.3d 1086 (9th Cir. 2007). Such relief must be temporary and reorganization-protective, not a permanent discharge or release of non-debtor liability. *In re American Hardwoods, Inc.*, 885 F.2d 621 (9th Cir. 1989).

67.     The Debtors have filed Plan #2, which identifies Non-Debtor Guarantors' Plan Contributions as part of the means of implementation. Plan #2 states that such contributions may be used to fund Las Vegas transaction obligations, Newport transaction obligations, Class 5 and Class 6 payments or reserves, and other costs necessary to consummate the Plan. Plan #2 also states that collection activity, asset restraints, garnishments, or enforcement efforts directed at Kaplan or Wanger by Class 6 creditors may materially impair Plan implementation.

68.     Plaintiffs have a reasonable likelihood of successful reorganization because Plaintiffs are actively progressing toward a confirmable plan, and the Guarantors are expected to provide plan-related

support and/or contributions that assist in funding proposed plan payments, including proposed payments on account of the allowed amounts, if any, of the Orange Orlando Claims.

69.    Orange's Merrill garnishment has already resulted in restrictions on accounts titled to the LRW Revocable Trust. Those restrictions prevent transfers and purchases and prevent sale proceeds from leaving the restricted accounts absent further court order. The Debtors do not seek merely to preserve those restrictions. Rather, the Debtors seek to prevent turnover or disbursement to Orange while preserving the ability to seek Bankruptcy Court-supervised release and use of the funds for approved plan-support purposes.

70.    The Debtors face immediate and irreparable harm because the restricted Merrill liquidity is a material potential source of Non-Debtor Guarantors' Plan Contributions. Those funds may be needed to support Administrative Claims, Professional Fee Claims, NFS-related obligations, transaction-consummation costs, Class 5 and Class 6 payments or reserves, and other Plan obligations. Turnover or disbursement of those funds to Orange before this Court adjudicates Orange's estate-side claims and before the Debtors can seek Court-supervised plan-support use would impair the Debtors' ability to confirm and consummate Plan #2.

71.    Kaplan and Wanger are working for the Debtors without compensation, are personally exposed on material guarantee obligations, and are directly involved in preserving value and prosecuting the restructuring. Orange's collection activity therefore threatens both liquidity and management bandwidth necessary for reorganization.

72.    That impairment would materially jeopardize Plaintiffs' ability to fund plan payments and administrative expenses, thereby threatening plan confirmation and risking conversion, dismissal, or liquidation outcomes that would reduce recoveries for all stakeholders.

73.    The balance of hardships favors temporary relief. Orange will not lose its Florida Guarantor Judgment, its estate claims, or its right to litigate claim allowance and plan treatment in this Court. Orange will be delayed only from converting restrained assets into collection proceeds, including through the June 8, 2026, Florida garnishment hearing, while the Debtors seek confirmation and while this Court adjudicates Orange's estate-side claims. By contrast, absent relief, the Debtors face loss of plan funding, impairment of

NFS and administrative-payment capacity, disruption of Class 5 and Class 6 treatment, and potential loss of a reorganization that is intended to benefit all creditors.

74. The public interest favors injunctive relief because it preserves centralized claims allowance, prevents an end-run around bankruptcy jurisdiction, and promotes orderly Chapter 11 administration and maximization of value.

75. The requested injunction is narrowly tailored to avoid any impermissible non-debtor discharge. Plaintiffs do not seek to release, discharge, or permanently enjoin Orange's claims against Kaplan, Wanger, the LRW Revocable Trust, or any other non-Debtor. Plaintiffs seek temporary relief preventing Orange from obtaining, prosecuting, enforcing, or causing a final garnishment judgment, turnover order, liquidation, transfer, disbursement, levy, further restraint, or similar enforcement remedy directed to the restricted Merrill assets or Bank of America funds, while preserving the Debtors' ability to seek Court-supervised release and use of the Merrill funds for approved plan-support purposes. Any such use would occur only pursuant to separate Bankruptcy Court order, including any order approving interim Professional Fees under 11 U.S.C. §§ 330 and 331.

76. Plaintiffs' primary requested relief is prohibitory: Plaintiffs seek to prevent Orange from prosecuting, obtaining, enforcing, executing on, or receiving proceeds through any final garnishment judgment, turnover order, liquidation order, transfer order, disbursement order, or similar enforcement remedy directed to the restricted Merrill assets or Bank of America funds on account of the Florida Guarantor Judgment. To the extent the Court determines that effective relief requires Orange to take affirmative action in the Florida Litigation, including filing a notice of suspension, withdrawal, release, modification, or continuance of the Florida garnishment proceedings, Plaintiffs request such relief in the alternative and submit that the facts and law clearly favor such relief.

77. Because Plaintiffs are debtors and debtors in possession seeking relief under Fed. R. Bankr. P. 7065, the Court may issue a temporary restraining order or preliminary injunction without requiring security under Fed. R. Civ. P. 65(c). To the extent the Court requires security, Plaintiffs request that any bond be waived or set in a nominal amount.

78. Plaintiffs request entry of an order temporarily restraining and preliminarily enjoining Orange and all persons acting in concert with it from taking any act to prosecute, obtain, present, enforce,

execute upon, collect, receive, turn over, liquidate, levy, garnish, attach, further restrain, or cause entry of any final garnishment judgment, turnover order, liquidation order, transfer order, disbursement order, writ, levy, or other collection remedy directed to the restricted Merrill assets, the Bank of America garnished funds, or any other assets held by or for Kaplan, Wanger, or the LRW Revocable Trust on account of the Florida Guarantor Judgment, through confirmation of a Chapter 11 plan or further order of this Court. Plaintiffs further request that the order preserve the Debtors', Wanger's, and the LRW Revocable Trust's ability to seek further Bankruptcy Court authority to release or use such funds solely for Court-approved plan-support purposes, including payment of Allowed Administrative Claims and Professional Fee Claims, NFS-related obligations, transaction-consummation costs, and Plan reserves or payments.

79.    Plaintiffs request such other and further relief as the Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**DECLARATORY RELIEF**
**(28 U.S.C. § 2201 AND FED. R. BANKR. P. 7001(9))**

80.    Plaintiffs incorporate by reference and reallege all preceding allegations as though fully set forth herein.

81.    This Count seeks declaratory relief and is properly brought as an adversary proceeding under Fed. R. Bankr. P. 7001(9).

82.    An actual and present controversy exists concerning the relationship between: (a) Orange's Florida Guarantor Judgment against non-debtors Kaplan and Wanger; (b) Orange's pending estate-side claims asserted through POC 2 and POC 11; (c) the credits, offsets, reductions, and limitations applicable to those estate-side claims; (d) the restricted Merrill assets titled to the LRW Revocable Trust; (e) Orange's pending request for final garnishment judgment against Merrill and Bank of America; (f) the Debtors' ability to seek Court-supervised release and use of plan-support funding for approved plan-support purposes; and (g) the Debtors' ability to implement Plan #2 without value-destructive unilateral enforcement activity by Orange.

83.    Plaintiffs request entry of a declaratory judgment declaring the following:

a.   The POC 2 Claim and the POC 11 Claim are subject to determination, allowance, disallowance, and limitation in these Chapter 11 Cases pursuant to 11 U.S.C. § 502 and the Bankruptcy Rules.

b.   The amount, character, and enforceability of the Orange Orlando Claims against Plaintiffs are disputed, have not been finally determined, and must be adjudicated through this Court's claims-allowance process, including application of the Bankruptcy Code's limitations on allowance and applicable non-bankruptcy law governing enforceability.

c.   Pending this Court's determination of the allowed amounts and proper treatment of the Orange Orlando Claims in a Chapter 11 plan, actions by Orange that seek to treat the same underlying Lease-based liabilities as fixed and liquidated for collection purposes, or that would effectively preempt this Court's allowance determination, threaten to impair the Court's administration of these estates and the orderly Chapter 11 process.

d.   Any amounts Orange receives from or on account of Kaplan, Wanger, Merrill, Bank of America, the LRW Revocable Trust, garnishment proceedings, settlement, third-party recovery, security deposit, prepaid rent, forfeited amounts, or any other source on account of the same underlying Orlando lease obligations must be credited against Orange's corresponding estate-side claims to the extent required by applicable law and the Bankruptcy Code, so as to prevent double recovery.

e.   The Florida Guarantor Judgment does not, by itself and without further garnishment, turnover, or proceedings-supplementary adjudication, determine Orange's entitlement to disbursement of the restricted Merrill assets.

f.   Any amount Orange receives from or on account of Kaplan, Wanger, Merrill, Bank of America, the LRW Revocable Trust, garnishment proceedings, settlement, security deposit, prepaid rent, forfeited amounts, or any other source on account of the same underlying Orlando lease obligations must be credited, offset, reduced, or otherwise

- 18 -

accounted for in determining Orange's allowed claims against the Debtors' estates to the extent required by applicable law and the Bankruptcy Code.

g.    The Debtors may seek separate Bankruptcy Court authority to use Non-Debtor Guarantors' Plan Contributions or related insider-support funding for Court-approved plan-support purposes, including Allowed Administrative Claims, Allowed Professional Fee Claims, NFS-related obligations, transaction-consummation costs, and Plan reserves or payments, without such request constituting a release, discharge, or permanent injunction of any non-Debtor liability.

84.    Plaintiffs request such other and further relief as the Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**OBJECTION TO ORANGE'S PROOFS OF CLAIM NO. 2 AND 11 AND REQUEST FOR DETERMINATION OF ALLOWED CLAIM**
**(11 U.S.C. § 502(b)(1), FED. R. BANKR. P. 3001, AND FED. R. BANKR. P. 3007(b))**

85.    Plaintiffs incorporate by reference and reallege all preceding allegations as though fully set forth herein.

86.    The Debtors provide the following claim-objection summary pursuant to Local Rule 3007:

**Claimant:** 434 N. Orange Investment, LLC.
**Claim No.:** Proof of Claim No. 2.
**Debtor Case:** Velocity Esports Orlando Downtown, LLC, Case No. 25-12631.
**Filed Date:** September 10, 2025.
**Asserted Amount:** $5,810,321.22.
**Disputed Amount:** Entire claim, subject to determination, reduction, limitation, offset, credit, and disallowance.
**Grounds:** Lack of damages accounting, duplicative recovery, credits/offsets, security deposit/prepaid rent, mitigation, enforceability under applicable law, and § 502(b)(6).

**Claimant:** 434 N. Orange Investment, LLC.
**Claim No.:** Proof of Claim No. 11.
**Debtor Case:** Velocity Esports, Inc., Case No. 25-12627.
**Filed Date:** September 10, 2025.
**Asserted Amount:** $2,377,910.22.
**Disputed Amount:** Entire claim, subject to determination, reduction, limitation, offset, credit, and disallowance.
**Grounds:** Lack of damages accounting, duplicative recovery with POC 2, credits/offsets, security deposit/prepaid rent, mitigation, enforceability under applicable law, and § 502(b)(6).

87. Pursuant to 11 U.S.C. § 502(b)(1), the Court must disallow the POC 2 Claim and the POC 11 Claim to the extent either is unenforceable against Plaintiffs under applicable law, and must determine the proper allowed amounts, if any, of those claims.

88. Plaintiffs object to the POC 2 Claim and the POC 11 Claim as bases for claim allowance, disallowance, and reduction under section 502(b)(1) and applicable law.

89. Orange's asserted damages are subject to reduction and limitation under applicable Florida law and the Bankruptcy Code, including based on Orange's obligation to properly compute and support the amount of the underlying Lease-based debt, to apply all required credits and offsets, to account for the amended Lease economics and actual commencement dates, and to avoid inclusion of unsupported, duplicative, or otherwise unenforceable amounts in either the POC 2 Claim or the POC 11 Claim.

90. The POC 2 Claim and the POC 11 Claim do not transparently identify and support the parts of the amounts asserted, including any distinction among prepetition rent, alleged termination-related damages, additional-rent components, taxes, insurance, operating expenses, credits, offsets, cure amounts, and any other information necessary to determine whether the damages asserted are enforceable under applicable law.

91. Orange's estate-side claims must be reduced, credited, reconciled, or otherwise adjusted to account for any amount Orange collects, receives, obtains, or is awarded from Kaplan, Wanger, the LRW Revocable Trust, Merrill, Bank of America, garnishment proceedings, settlement, security deposit, prepaid rent, forfeited amounts, or any other source on account of the same underlying Orlando lease obligations. Orange should not be permitted to recover on the same underlying obligation through both estate distributions and non-Debtor enforcement without a full accounting and corresponding credit.

92. To the extent Orange seeks, in either claim, future rent, termination damages, acceleration, or other forward-looking damages, the claims must be reduced to reflect all applicable credits, offsets, and limitations, including application of the security deposit, prepaid rent, and any other payments or value received on account of the same underlying Lease-based obligation.

93. Orange has received or was entitled to receive a security deposit, prepaid rent, and potentially other amounts on account of the same Lease-based obligation, all of which must be credited against any allowed claim to avoid duplicative recovery.

- 20 -

94.    Orange's damages models reflected in the POC 2 Claim and the POC 11 Claim lack sufficient itemization and support to establish enforceability under applicable law and do not demonstrate that the amounts sought are properly computed under the Lease, the First Amendment, the Delivery Notice, and the Bankruptcy Code.

95.    To the extent the POC 2 Claim and the POC 11 Claim seek overlapping recovery on the same underlying Lease-based obligation, those claims must be reconciled, reduced, and limited so that Orange does not obtain duplicate or inflated recoveries against the Debtors' estates.

96.    Plaintiffs request entry of an order sustaining this objection, determining the allowed amounts, if any, of the POC 2 Claim and the POC 11 Claim, and disallowing or reducing those claims to the extent they exceed the amounts Orange proves are enforceable under applicable law and the Bankruptcy Code, together with such further relief as the Court deems proper, including an order requiring Orange to provide complete accountings and supporting documentation.

97.    Plaintiffs request such other and further relief as the Court deems just and proper.

### FOURTH CLAIM FOR RELIEF
### FURTHER OBJECTION AND REQUEST FOR LIMITATION OF ALLOWED AMOUNTS
### (11 U.S.C. § 502(B)(6))

98.    Plaintiffs incorporate by reference and reallege all preceding allegations as though fully set forth herein.

99.    The POC 2 Claim and the POC 11 Claim are asserted based on a lease of nonresidential real property, and Orange seeks amounts that it characterizes, or may characterize, as termination-related or other Lease-based damages. To the extent Orange seeks damages resulting from termination of the Lease, allowance of such damages is limited by 11 U.S.C. § 502(b)(6).

100.    Section 502(b)(6) limits a lessor's claim for damages resulting from termination of a real-property lease to: (a) the rent reserved by the lease, without acceleration, for the greater of one year or 15 percent, not to exceed three years, of the remaining term following the earlier of the petition date or surrender/repossess date; plus (b) unpaid rent due under the lease, without acceleration, on the earlier of those dates.

101.    Under Ninth Circuit law, § 502(b)(6) caps lost rent, rent-like payments, and other damages directly arising from a tenant's failure to complete the lease term, while collateral damages that do not result from lease termination may fall outside the cap. The Debtors reserve all rights to challenge whether any asserted components are properly within or outside the cap and to require Orange to prove each component.

102.    Plaintiffs further object to the extent either the POC 2 Claim or the POC 11 Claim improperly classifies post-petition amounts or post-petition performance obligations as part of a prepetition general unsecured claim rather than addressing them, if at all, under the applicable Bankruptcy Code provisions governing post-petition obligations and administrative expense treatment.

103.    Plaintiffs request entry of an order determining the allowed amounts of the POC 2 Claim and the POC 11 Claim under section 502(b)(6) and disallowing any portions of those claims that exceed the statutory limitation.

104.    Plaintiffs request such other and further relief as the Court deems just and proper.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request this Court to enter a judgment in favor of Velocity Esports, Inc., a Nevada corporation, Velocity Esports Las Vegas Town Square, LLC, a Nevada limited liability company, Velocity Esports Chicago Schaumburg, LLC, an Illinois limited liability company, Velocity Esports Newport Kentucky, LLC, a Kentucky limited liability company, and Velocity Esports Orlando Downtown, LLC, a Florida limited liability company, and against 434 N. Orange Investment, LLC, a Delaware limited liability company, with Merrill Lynch, Pierce, Fenner & Smith Incorporated joined solely as nominal garnishee/stakeholder defendant for notice and implementation purposes, as follows:

1.    Entry of a temporary restraining order and preliminary injunction under 11 U.S.C. § 105(a), Fed. R. Bankr. P. 7065, Fed. R. Civ. P. 65, and Fed. R. Bankr. P. 7001(7), temporarily restraining and enjoining Orange and all persons acting in concert with it from prosecuting, obtaining, presenting, enforcing, executing upon, collecting, receiving, turning over, liquidating, levying, garnishing, attaching, further restraining, or causing entry of any final garnishment judgment, turnover order, liquidation order, transfer order, disbursement order, writ, levy, or other collection remedy directed to the restricted Merrill assets, the

Bank of America garnished funds, or any other assets held by or for Kaplan, Wanger, or the LRW Revocable Trust on account of the Florida Guarantor Judgment, through confirmation or further order of this Court.

2.    A declaration that the Florida Guarantor Judgment does not, by itself and without further garnishment, turnover, or proceedings-supplementary adjudication, adjudicate Orange's entitlement to disbursement of the restricted Merrill assets and does not determine the allowed amount, credit, offset, reduction, satisfaction, treatment, or limitation of Orange's claims against the Debtors' estates under 28 U.S.C. § 2201 and Fed. R. Bankr. P. 7001(9).

3.    Entry of an order requiring Orange, to the extent necessary to effectuate the temporary relief granted by this Court, to file in the Florida Litigation and serve on Merrill, Bank of America, Wanger, Kaplan, and all affected parties a notice of this Court's order and, if directed by this Court, a notice suspending, withdrawing, releasing, modifying, or continuing the pending Florida garnishment proceedings, including the June 8, 2026 hearing on Orange's Motion for Final Judgment After Writ of Garnishment.

4.    Entry of related relief preserving the Debtors', Wanger's, and the LRW Revocable Trust's ability to seek Bankruptcy Court authority to release or use restricted Merrill funds solely for Court-approved plan-support purposes, including payment of Allowed Administrative Claims and Professional Fee Claims, NFS-related obligations, transaction-consummation costs, and Plan reserves or payments, subject to such notice, hearing, bond, reserve, escrow, replacement protection, or further order as the Court deems appropriate.

5.    A determination that Merrill is joined solely as a nominal garnishee/stakeholder defendant; that Plaintiffs seek no damages, sanctions, or monetary relief against Merrill; and that nothing in any temporary restraining order or preliminary injunction shall require Merrill to release, transfer, liquidate, or disburse any restricted funds unless Merrill receives a further order of this Court, an order of the Florida court, or a written release, withdrawal, or stipulation sufficient under applicable law.

6.    Determination, disallowance, and/or reduction of Defendant's Proof of Claim No. 2 and Proof of Claim No. 11 under 11 U.S.C. § 502(b)(1), Fed. R. Bankr. P. 3001, and Fed. R. Bankr. P. 3007(b).

7.    Limitation of Defendant's Proof of Claim No. 2 and Proof of Claim No. 11 to the extent applicable under 11 U.S.C. § 502(b)(6).

8.      Costs and attorneys' fees only to the extent recoverable under applicable law, contract, or further order of this Court.

9.      Such other and further relief as the Court deems just and proper.

Respectfully submitted on May 29, 2026 by:

**NEVADA BANKRUPTCY ATTORNEYS, LLC**

By: /s/ Matthew Knepper, Esq.
Matthew Knepper, Esq.
NEVADA BANKRUPTCY ATTORNEYS, LLC
*Attorney for Plaintiffs/Debtors*

**VERIFICATION**

I, Philip Kaplan, declare as follows:

1.      I am an adult individual and the Managing Member and authorized representative of the above-captioned Debtors and Debtors-in-Possession (the "Debtors") in these jointly administered Chapter 11 cases.

2.      I have personal knowledge of the facts set forth in the foregoing Verified Adversary Complaint (the "Complaint") – except as to matters stated upon information and belief or statements of law – and as to those matters, I believe them to be true.

3.      The factual allegations in the Complaint concerning:

(a)      the Lease, including the related amendment and delivery/acceptance documents;

(b)      the Guaranty and the related corporate-guaranty structure;

(c)      the circumstances surrounding the Orlando location, the termination-related events, and the events leading to the asserted Orange liabilities;

(d)      Orange's Proof of Claim No. 2 against Velocity Esports Orlando Downtown, LLC, and Proof of Claim No. 11 against Velocity Esports, Inc.;

(e)      the Florida litigation against Philip Kaplan and Leonard Wanger, including the Florida Guarantor Judgment and related garnishment and enforcement activity;

(f)      the Guarantors' role in funding and supporting the Debtors' reorganization;

(g)      the risk of immediate and irreparable harm to the Debtors' reorganization efforts absent enforcement-only injunctive relief;

(h)      the filed Chapter 11 Plan and its provisions concerning Non-Debtor Guarantors' Plan Contributions, Class 5, Class 6, Orange, Woodfield, and centralized claim allowance;

(i)      the NFS 9019 settlement approval order and NFS-related arrearage/catch-up obligations;

(j)      the fact that Merrill has restricted accounts that Wanger will testify are titled to or owned by the LRW Revocable Trust, with Wanger serving as trustee, and the impact of those restrictions on the Debtors' reorganization efforts; and

- 25 -

(k)    the expected use of guarantor support to assist with plan implementation, including administrative expenses, NFS-related obligations, and plan distributions or reserves; are true and correct based upon my personal knowledge, my review of the Debtors' books and records, and my involvement in the events described.

4.    To the extent the Complaint alleges facts concerning the title, ownership, administration, revocability, settlor/trustee structure, beneficial-interest structure, or other ownership attributes of the LRW Revocable Trust or the restricted Merrill accounts, those allegations are based on information provided by Leonard Wanger, Merrill-related materials, the Florida garnishment filings, and Wanger's declaration filed or to be filed in support of the Debtors' emergency injunctive-relief motion. Those allegations are not intended as a final adjudication of Florida or Illinois trust-law reachability issues, and Plaintiffs reserve all rights with respect to such issues.

5.    I submit this Verification in support of Plaintiffs' request for temporary restraining order and preliminary injunction pursuant to 11 U.S.C. § 105(a), Federal Rule of Bankruptcy Procedure 7065, and Federal Rule of Civil Procedure 65.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 29th day of May, 2026.

/s/ *Philip Kaplan*
Philip Kaplan
Managing Member
Velocity Esports, Inc., et al.
*Debtors and Debtors-in-Possession*