Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Brenden J. Gougeon, Esq.
Nevada Bar No. 16874
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
Email: bgougeon@nvbankruptcyattorneys.com
*Attorneys for Plaintiffs/Debtors*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>   VELOCITY ESPORTS, INC.,<br><br>   ☐ Affects Velocity Esports, Inc.<br>   ☐ Affects Velocity Esports Las Vegas Town Square, LLC<br>   ☐ Affects Velocity Esports Chicago Schaumburg, LLC<br>   ☐ Affects Velocity Esports Newport Kentucky, LLC<br>   ☐ Affects Velocity Esports Orlando Downtown, LLC<br>   ■ Affects All Debtors<br><br>                    Debtor(s). | Case No.: 25-12627-mkn<br><br>Jointly Administered with<br>Case No. 25-12628-mkn<br>Case No. 25-12629-mkn<br>Case No. 25-12630-mkn<br>Case No. 25-12631-mkn<br><br>Chapter 11 |
| VELOCITY ESPORTS, INC., a Nevada corporation, VELOCITY ESPORTS LAS VEGAS TOWN SQUARE, LLC, a Nevada limited liability company, VELOCITY ESPORTS CHICAGO SCHAUMBURG, LLC, an Illinois limited liability company, VELOCITY ESPORTS NEWPORT KENTUCKY, LLC, a Kentucky limited liability company, and VELOCITY ESPORTS ORLANDO DOWNTOWN, LLC, a Florida limited liability company,<br><br>                    Plaintiffs,<br><br>v. | Adversary No.: 26-01075-mkn<br><br>Hearing Date: **OST REQUESTED**<br>Hearing Time: **OST REQUESTED**<br><br><br>PLAINTIFFS' EMERGENCY MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND RELATED RELIEF PRESERVING COURT-SUPERVISED PLAN-SUPPORT FUNDING UNDER 11 U.S.C. § 105(a), FED. R. BANKR. P. 7065, AND FED. R. CIV. P. 65 |

- 1 -

434 N. ORANGE INVESTMENT, LLC, a Delaware limited liability company;

Defendant,

and

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, solely as nominal garnishee and stakeholder defendant for purposes of notice and implementation of injunctive relief,

Nominal Defendant.

Velocity Esports, Inc., a Nevada corporation (the "Holding Company"), Velocity Esports Las Vegas Town Square, LLC ("Velocity LV"), Velocity Esports Chicago Schaumburg, LLC ("Velocity Chicago"), Velocity Esports Newport Kentucky, LLC ("Velocity Newport"), and Velocity Esports Orlando Downtown, LLC ("Velocity Orlando") (collectively, the "Debtors" or "Plaintiffs"), debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), move on an emergency basis for entry of a temporary restraining order under 11 U.S.C. § 105(a), Federal Rule of Bankruptcy Procedure 7065, and Federal Rule of Civil Procedure 65(b), effective for no longer than fourteen (14) days unless extended as permitted by Rule 65(b)(2), together with an order setting a preliminary-injunction hearing within that fourteen-day period (the "Motion").[1]

In the alternative, if the Court declines to enter immediate TRO relief on an ex parte or limited-notice basis, Plaintiffs request an order shortening time under LR 9006 and an order to show cause setting this

---

[1] The Debtor requests the Court take judicial notice of the Debtor's Bankruptcy proceeding pursuant to Federal Rules of Evidence ("FRE") 201, made applicable in bankruptcy proceedings pursuant to Bankruptcy Rule 9017. All references to "ECF No.", "Proof of Claim No.," or "Claim No." are to the numbers assigned to documents filed in these Chapter 11 Cases as they appear on the jointly administered docket in Case No. 25-12627-mkn maintained by the Clerk of the Court and, as applicable, the Court's claims registry. Unless otherwise indicated, all references to the "Code," "Chapter," "§," and "Section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005). References to "Rule" or "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("FRCP").

Motion for emergency hearing on or before June 3, 2026, before Orange's June 8, 2026 Florida garnishment hearing.

Plaintiffs request emergency relief because Orange's pending Florida Motion for Final Judgment After Writ of Garnishment is set for hearing on June 8, 2026, at 8:45 a.m. Ordinary notice under LR 9014 would make relief meaningless. Plaintiffs therefore request immediate TRO relief under Rule 65(b) or, alternatively, an order shortening time and order to show cause under LR 9006. Plaintiffs are filing or will file a separate certification of counsel under Rule 65(b)(1)(B) and a declaration satisfying LR 9006, identifying the notice and consultation efforts made, the method of consultation, Orange's position if known, the estimated hearing time, and the date beyond which relief would no longer be meaningful.

Because Orange's Florida garnishment hearing is set for June 8, 2026, Plaintiffs request that the Court proceed in one of two ways. First, Plaintiffs request immediate TRO relief under Rule 65(b), effective for no longer than fourteen (14) days, with a preliminary-injunction hearing set at the earliest possible time and within the fourteen-day TRO period. Second, if the Court concludes that ex parte or limited-notice TRO relief is not appropriate, Plaintiffs request that the Court enter an order shortening time and order to show cause setting this Motion for emergency hearing on or before June 3, 2026. Either procedure preserves due process while preventing Orange from using the June 8 Florida hearing to obtain final garnishment judgment before this Court can adjudicate Orange's estate-side claims and the Debtors' request for Court-supervised plan-support relief.

This Motion is supported by the Verified Adversary Complaint filed in this adversary proceeding, including its Prayer for Relief (the "Verified Complaint" and the "Prayer," respectively), the Declaration of Leonard Wanger filed concurrently herewith (the "Wanger Declaration"), the Declaration of Philip Kaplan filed concurrently herewith if separately filed ("Kaplan Declaration"), the exhibits filed in support of this Motion, the pleadings and papers on file in these Chapter 11 Cases and this adversary proceeding, the Court's judicial notice of its own docket under Federal Rule of Evidence 201, and such argument and evidence as may be presented at hearing.

## I.    INTRODUCTION

This Motion asks the Court to stop Orange from taking the restricted Merrill funds while preserving the Debtors' ability to seek Court-supervised use of those funds for plan implementation. Plaintiffs do not

seek to discharge, release, or permanently protect non-debtor guarantors. Plaintiffs seek temporary reorganization-protective relief preventing Orange from converting restricted Merrill / LRW Trust assets into unilateral collection proceeds before this Court adjudicates Orange's estate-side claims, credits, offsets, limitations, and Plan treatment.

Orange has invoked this Court's claims-allowance jurisdiction by filing Proof of Claim No. 2 against Velocity Orlando for $5,810,321.22 and Proof of Claim No. 11 against the Holding Company for $2,377,910.22. Those claims arise from the same Orlando lease transaction and must be determined, reconciled, credited, reduced, limited, or disallowed under § 502, including § 502(b)(1) and § 502(b)(6). Verified Compl. ¶¶ 2-3, 41-44; *see also id.* at ¶¶ 86-96, 99-103.

Orange also holds a Florida Guarantor Judgment against Leonard Wanger and Philip Kaplan for $400,000.00, plus statutory interest, and has used that judgment to pursue garnishment remedies directed to Merrill. Merrill has restricted accounts that Wanger will testify are titled to or owned by the LRW Trust, an Illinois trust, with Wanger serving as trustee. The LRW Trust is not a judgment debtor, and Wanger will testify that he does not own the restricted Merrill accounts individually. Verified Compl. ¶¶ 5, 49-60, 62; Wanger Decl. ¶¶ 4, 6-18 & Exs. A-B.

The emergency is immediate. On May 20, 2026, Orange filed a Motion for Final Judgment After Writ of Garnishment seeking final garnishment judgment against Merrill for $386,454.20 and against Bank of America for $3,988.22. That motion is set for June 8, 2026, at 8:45 a.m. Unless restrained before that hearing, Orange may obtain final garnishment judgment and cause restricted funds to be transferred away from a material plan-support funding source. Verified Compl. ¶¶ 58-61, 63.

Plan #2 expressly contemplates Non-Debtor Guarantors' Plan Contributions and continued support, cooperation, and services from Kaplan and Wanger. It further recognizes that collection activity, asset restraints, garnishments, and other enforcement efforts directed at Kaplan or Wanger by Class 6 creditors may materially impair plan implementation. Verified Compl. ¶¶ 35, 38-40, 47-48; *see also id.* at ¶¶ 67-72.

The requested TRO is narrow. It would restrain Orange from prosecuting, obtaining, enforcing, or receiving proceeds from any final garnishment judgment, turnover order, liquidation order, transfer order, disbursement order, writ, levy, or similar collection remedy directed to the restricted Merrill assets or Bank of America garnished funds. It would not require Merrill to release funds absent further order; vacate the

- 4 -

Florida judgment; release Kaplan or Wanger; discharge the LRW Trust; or prevent Orange from litigating claim allowance, plan treatment, trust-reachability issues, or modification of the injunction for cause.

## II.      FACTUAL BACKGROUND

### A.      Orange's Lease Claims and the Florida Guarantor Judgment

1.      Orange is the landlord under the Orlando lease transaction with Velocity Orlando. The transaction included a corporate guaranty by the Holding Company and a separate personal guaranty by Kaplan and Wanger. Verified Compl. ¶¶ 20-22.

2.      Orange filed POC 2 against Velocity Orlando for $5,810,321.22 and POC 11 against the Holding Company for $2,377,910.22. Both claims arise from the same Orlando lease relationship. Orange did not attach a rent ledger, damages spreadsheet, mitigation analysis, reletting analysis, security-deposit credit calculation, prepaid-rent credit calculation, or other accounting explaining how those asserted amounts were calculated. Verified Compl. ¶¶ 41-44, 86, 89-91.

3.      The lease documents include a $54,000.00 security deposit and $53,557.21 in prepaid rent. The Lease Termination and Surrender Agreement later provided for forfeiture and release of those amounts to Orange as part of a termination structure. Even under Orange's rescission theory, those deposits, prepaid rent, forfeited amounts, and any guarantor or third-party recoveries remain relevant to claim allowance, credit, offset, satisfaction, and prevention of double recovery. Verified Compl. ¶¶ 30-33; *see also id.* at ¶¶ 91-93.

4.      Orange separately sued Kaplan and Wanger in Florida on the personal guaranty in an action captioned *434 N. Orange Investment, LLC v. Leonard Wanger and Philip Kaplan*, Case No. 2025-CA-003002-O, pending in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Circuit Civil Division (the "Florida Litigation"). The Debtors were not defendants in that action. The Florida Litigation did not adjudicate the amount, character, enforceability, priority, allowance, limitation, treatment, or payment of Orange's claims against the bankruptcy estates. Verified Compl. ¶¶ 49-50, 54.

5.      On July 23, 2025, the Florida court entered the Florida Guarantor Judgment against Kaplan and Wanger, jointly and severally, for $400,000.00 plus statutory interest. That judgment is based on the capped personal guaranty theory; it does not determine the allowed amount of Orange's bankruptcy claims,

the credits or offsets applicable to those claims, the impact of any guarantor recovery, or the statutory limitation under § 502(b)(6). Verified Compl. ¶¶ 52-54.

**B.**      **Orange's Merrill Garnishment Has Already Restricted Trust-Owned Assets**

6.      After entry of the Florida Guarantor Judgment, Orange pursued post-judgment garnishment against Merrill and Bank of America. Merrill identified four accounts associated with Wanger as trustee, titled in substance to "Mr. Leonard Ralph Wanger TTEE, U/A DTD 03/09/2012," with a total approximate value of $386,454.20. Bank of America identified two accounts in Wanger's name totaling $3,988.22. Verified Compl. ¶¶ 55-57; Wanger Decl. ¶¶ 9-18 & Exs. A-B.

7.      Merrill advised Wanger that it had restricted the affected accounts, that no transfers or purchases are allowed, and that sales are permitted only if proceeds do not leave the account absent further court order. Wanger will testify that the restricted Merrill accounts are titled to or owned by the LRW Trust, that he serves as trustee, and that he does not own those restricted Merrill assets individually. Verified Compl. ¶¶ 5, 56; *see also id.* ¶ 62; Wanger Decl. ¶¶ 4-8, 12-18.

8.      Orange has now escalated the garnishment proceedings. On May 20, 2026, Orange filed a Motion for Final Judgment After Writ of Garnishment Against Merrill and Bank of America, seeking final garnishment judgment against Merrill in the amount of $386,454.20 and against Bank of America in the amount of $3,988.22. Orange contends that the Merrill accounts are held in a revocable trust controlled by Wanger and that the assets are reachable under Florida and Illinois law. Verified Compl. ¶¶ 58-59.

9.      The Florida court has noticed Orange's motion for hearing on June 8, 2026, at 8:45 a.m. Unless restrained before that hearing, Orange may obtain final garnishment, turnover, liquidation, transfer, disbursement, or other enforcement relief causing Merrill and/or Bank of America to transfer restricted funds to Orange before this Court adjudicates the Orange Claims and before the Debtors can prosecute confirmation. Verified Compl. ¶¶ 60-61.

10.      The Debtors do not contend that the LRW Trust's revocable-trust form provides a complete substantive defense to Orange's collection efforts. Orange's likely collection path makes the threat of turnover imminent and concrete. The Debtors seek temporary bankruptcy relief not because the funds are categorically unreachable, but because Orange should not be permitted to take them for its sole benefit

before this Court determines Orange's estate-side claims, credits, offsets, reductions, limitations, and Plan treatment. Verified Compl. ¶ 62.

11. The restriction and threatened turnover of the Merrill assets directly impair the Debtors' ability to obtain or facilitate Non-Debtor Guarantors' Plan Contributions and related insider-support funding contemplated by Plan #2. The Debtors seek relief that prevents Orange from receiving the funds while preserving the Debtors' ability to seek Court-supervised release and use of such funds for approved plan-support purposes. Verified Compl. ¶ 63.

**C. Plan #2, NFS Obligations, Administrative Expenses, and Guarantor/Insider Support**

12. The Debtors have filed Plan #2. Plan #2 treats Orange as a Class 6 legacy landlord creditor and provides for centralized allowance, estimation, reconciliation, objection, compromise, limitation, and reduction of Class 6 Claims before this Court. Plan #2's means of implementation include anticipated Non-Debtor Guarantors' Plan Contributions, which may be used for Las Vegas transaction obligations, the Newport transaction, Class 5 and Class 6 payments or reserves, and other costs necessary to consummate the Plan. Verified Compl. ¶¶ 35, 38-40.

13. Plan #2 states that the Debtors' ability to consummate the Plan depends materially on the Las Vegas transaction, the Newport transaction, continued access to the cooperation, support, and services of Kaplan and Wanger, and the Debtors' continued ability to obtain Non-Debtor Guarantors' Plan Contributions. Plan #2 further states that collection activity, asset restraints, garnishments, or enforcement efforts directed at Kaplan or Wanger by Class 6 creditors may materially impair implementation of Class 6 treatment and consummation of the transactions contemplated by the Plan. Verified Compl. ¶¶ 39-40.

14. The Debtors anticipate material plan-funding needs through confirmation and the Effective Date, including administrative expenses, estimated professional fees, obligations and arrearages associated with the Court-approved NFS settlement structure, and payments or reserves necessary for Class 5 and Class 6 treatment. Verified Compl. ¶¶ 45-46.

15. Kaplan and Wanger are personal guarantors of obligations associated with the NFS settlement/payment stream and remaining NFS secured equipment lease. They are also working on behalf of the Debtors without compensation, and their continued services, cooperation, and liquidity support are material to the Debtors' ability to prosecute the Plan, preserve value, maintain NFS-related arrangements,

and fund distributions or reserves under the Plan waterfall. Verified Compl. ¶¶ 47-48; Wanger Decl. ¶¶ 23-34.

16.    The Debtors do not seek to take the restricted Merrill funds for unrestricted personal use by Wanger, Kaplan, or any insider. The Debtors seek to prevent Orange from taking the money while preserving the ability to seek Bankruptcy Court-supervised use of those funds for plan implementation after notice, hearing, and further order. Verified Compl. ¶ 9.

17.    Plan #2 also contemplates the Newport transaction as a material implementation component, further confirming that the Debtors are pursuing concrete plan-implementation transactions rather than a speculative reorganization concept. *See* Verified Compl. ¶¶ 38-40.

## III.    LEGAL STANDARD

### A.    The Court Has Jurisdiction Over the Claim-Allowance and Injunctive-Relief Issues

Bankruptcy jurisdiction extends to proceedings "arising under," "arising in," and "related to" cases under title 11. 28 U.S.C. § 1334(b). The allowance or disallowance of claims against the estate is a core proceeding. 28 U.S.C. § 157(b)(2)(B). An action "to obtain an injunction or other equitable relief" is properly brought as an adversary proceeding. Fed. R. Bankr. P. 7001(7).

The Ninth Circuit applies the "conceivable effect" test for "related to" jurisdiction. *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988). The Supreme Court has likewise recognized bankruptcy court jurisdiction to enjoin third-party execution where execution would have a direct adverse effect on the reorganization and the court's ability to administer the case. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308-10 (1995).

### B.    Section 105(a), Rule 7065, and Rule 65 Authorize Temporary Reorganization-Protective Relief

Section 105(a) authorizes the Court to issue any order, process, or judgment necessary or appropriate to carry out the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 7065 makes Rule 65 applicable in adversary proceedings and permits the Court, on application of a debtor, trustee, or debtor in possession, to issue a temporary restraining order or preliminary injunction without requiring security under Rule 65(c). Fed. R. Bankr. P. 7065.

Rule 65(d) requires that an injunction state the reasons it issued, state its terms specifically, describe the acts restrained in reasonable detail, and bind only the parties and those persons in active concert or participation with them who receive actual notice.

**C.      Rule 65(b) Permits Immediate TRO Relief Only Upon a Specific Showing of Imminent Harm and Counsel Certification; Alternatively, LR 9006 Permits an Emergency OSC Hearing on Shortened Time.**

Federal Rule of Bankruptcy Procedure 7065 incorporates Federal Rule of Civil Procedure 65 in adversary proceedings. A temporary restraining order may issue without written or oral notice to the adverse party or its attorney only if: (1) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing the efforts made to give notice and the reasons why notice should not be required. Fed. R. Civ. P. 65(b)(1).

A TRO issued without notice must state the date and hour it was issued, describe the injury, state why the injury is irreparable, state why the order issued without notice, be promptly filed in the clerk's office, and expire within the time set by the Court, not to exceed fourteen (14) days, unless extended for good cause or by consent of the restrained party. Fed. R. Civ. P. 65(b)(2). If a TRO is issued without notice, the preliminary-injunction motion must be set for hearing at the earliest possible time and takes precedence over all matters except older matters of the same character. Fed. R. Civ. P. 65(b)(3). A restrained party may move to dissolve or modify the TRO on two days' notice or shorter notice set by the Court. Fed. R. Civ. P. 65(b)(4).

Ex parte TRO relief is extraordinary. The Ninth Circuit recognizes that such relief may be proper where notice is impossible because the adverse party is unknown or cannot be located in time for a hearing, or in the narrow band of cases where notice would render further prosecution of the action fruitless. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130-31 (9th Cir. 2006). Plaintiffs do not seek to avoid notice for tactical advantage. Plaintiffs seek immediate relief only because Orange's Florida garnishment motion is set for June 8, 2026, and ordinary notice would allow the Florida hearing to occur before this Court can protect its claims-allowance and plan-implementation jurisdiction.

If the Court determines that immediate TRO relief should not issue without full notice, Plaintiffs alternatively request an order shortening time and order to show cause under LR 9006. LR 9006 authorizes expedited hearing procedures upon a declaration showing cause, an attorney-information statement addressing consultation and timing, and a proposed order allowing the Court to insert the hearing date, objection deadline, reply deadline, and service deadline. Plaintiffs request that any OSC hearing be set on or before June 3, 2026, so that the Court may hear Orange before Orange's June 8, 2026 Florida garnishment hearing.

**D.     The Preliminary-Injunction Standard Applies, With the Chapter 11 Success Inquiry Focused on Reorganization**

The ordinary preliminary-injunction standard requires the movant to show: (1) likelihood of success on the merits; (2) likely irreparable harm absent relief; (3) that the balance of equities favors relief; and (4) that the injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, serious questions going to the merits and a balance of hardships that tips sharply toward the movant may support relief if irreparable harm and public interest are also shown. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

For a § 105(a) injunction temporarily staying actions against non-debtors, the Ninth Circuit applies the ordinary preliminary-injunction standard. *Solidus Networks, Inc. v. Excel Innovations, Inc.* (*In re Excel Innovations, Inc.*), 502 F.3d 1086, 1094-96 (9th Cir. 2007). In the Chapter 11 context, the success inquiry focuses on whether the debtor has a reasonable likelihood of a successful reorganization. *Id.* at 1095. The debtor must make a concrete evidentiary showing of reorganization harm; conclusory assertions and ordinary litigation costs are insufficient unless shown to be substantial enough to interfere with reorganization or harm creditors. *Id.* at 1098-99.

**E.     Section 524(e) Bars Permanent Non-Debtor Discharge Relief, Not Temporary Enforcement Relief Through Confirmation**

Section 524(e) provides that a debtor's discharge does not affect the liability of any other entity on, or the property of any other entity for, the debt. 11 U.S.C. § 524(e). The Ninth Circuit therefore prohibits permanent injunctions that function as non-debtor discharges. *In re American Hardwoods, Inc.*, 885 F.2d 621, 625-27 (9th Cir. 1989); *Resorts Int'l, Inc. v. Lowenschuss* (*In re Lowenschuss*), 67 F.3d 1394, 1401-02

(9th Cir. 1995). But *American Hardwoods* recognized jurisdiction over temporary non-debtor injunction requests in which enforcement could affect plan administration and approved relief through confirmation, while rejecting permanent discharge relief. *American Hardwoods*, 885 F.2d at 623-27.

F.    **The Requested Relief Is Primarily Prohibitory; Any Affirmative Implementation Relief Is Alternative and Limited**

The Ninth Circuit distinguishes between prohibitory injunctions, which preserve the status quo by prohibiting a party from taking action, and mandatory injunctions, which order a party to take affirmative action. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009). Mandatory injunctions are "particularly disfavored" and should not issue unless the facts and law clearly favor the moving party. *Id.* The status quo is the last uncontested status that preceded the pending controversy. *Id.* at 879.

G.    **Florida Garnishment Law and Merrill's Nominal-Defendant Status Support Narrow, Notice-Based Relief**

Florida garnishment law reinforces the need for narrow relief. Florida Statute § 77.01 authorizes garnishment to reach debts due to the defendant and tangible or intangible personal property of the defendant in a third party's possession or control. Florida Statute § 77.055 requires service of the garnishee's answer and notice of the right to dissolve the writ on the defendant and on any person disclosed in the garnishee's answer to have an ownership interest in the deposit, account, or property controlled by the garnishee. Florida Statute § 77.07 permits the defendant and any other person having an ownership interest in the property to move to dissolve the writ.

H.    **Local Rule 9014(c) Requires Admissible Evidence for Contested Relief**

Local Rule 9014(c) requires a motion to state the facts on which it is based and contain a legal memorandum. If factual issues are contested, the Court will not grant contested relief absent admissible evidence. Declarations must be filed separately and contain nonhearsay factual evidentiary matter, authenticate exhibits unless already authenticated, and avoid mere conclusions.

/ / /

- 11 -

## IV.    ARGUMENT

### A.    This Court Has Core and Related-To Jurisdiction to Preserve Claim Allowance and Plan Implementation

Bankruptcy jurisdiction extends to proceedings "arising under," "arising in," and "related to" cases under title 11. 28 U.S.C. § 1334(b). Claim allowance is a core proceeding, and an action seeking injunctive relief is properly brought as an adversary proceeding. 28 U.S.C. § 157(b)(2)(B); Fed. R. Bankr. P. 7001(7). The Ninth Circuit applies the "conceivable effect" test for related-to jurisdiction, and the Supreme Court has recognized bankruptcy court jurisdiction to enjoin third-party execution where execution would directly affect reorganization or case administration. *Fietz*, 852 F.2d at 457; *Celotex*, 514 U.S. at 308-10. Section 105(a) authorizes orders necessary or appropriate to carry out the Code, including orders protecting the Court's jurisdiction and the reorganization process.

This Court has core jurisdiction here because Orange invoked the claims-allowance process by filing Proof of Claim No. 2 against Velocity Orlando in the amount of $5,810,321.22 and Proof of Claim No. 11 against the Holding Company in the amount of $2,377,910.22. Verified Compl. ¶¶ 2-3, 21, 41, 86. Plaintiffs' Verified Complaint directly places those claims at issue under § 502(b)(1), § 502(b)(6), applicable non-bankruptcy law, and the requirement that Orange account for credits, offsets, reductions, duplicative recoveries, and any non-Debtor recoveries on account of the same underlying Orlando lease obligations. Verified Compl. ¶¶ 10, 31-33, 41-44, 82-83, 87-96, 99-103.

This Court also has related-to jurisdiction because Orange's enforcement activity may have a direct and concrete effect on the Debtors' reorganization. Orange seeks final garnishment judgment against Merrill in the amount of $386,454.20 and against Bank of America in the amount of $3,988.22, with a hearing set for June 8, 2026. Verified Compl. ¶¶ 58-60. Unless restrained, Orange may obtain a final garnishment judgment, turnover order, liquidation order, transfer order, disbursement order, or other enforcement relief causing restricted funds to be transferred to Orange before this Court adjudicates the Orange Claims and before the Debtors can seek Court-supervised plan-support use of those funds. Verified Compl. ¶¶ 7, 58-61, 63.

That threatened enforcement affects these Chapter 11 cases because Plan #2 identifies Non-Debtor Guarantors' Plan Contributions and continued support from Kaplan and Wanger as material to

implementation. Verified Compl. ¶¶ 38-40. The restricted Merrill assets are a material potential source of that plan-support funding, including for Administrative Claims, Professional Fee Claims, NFS-related obligations, transaction-consummation costs, and Plan payments or reserves. Verified Compl. ¶¶ 9, 45, 47-48, 63, 70-72.

Accordingly, the requested TRO is within this Court's jurisdiction and is necessary to preserve the Court's ability to adjudicate the Orange Claims, prevent duplicative or premature recovery, and administer Plan #2 before Orange converts restricted assets into unilateral collection proceeds.

**B.     Plaintiffs Have Serious Questions on the Merits and a Reasonable Likelihood of Successful Reorganization**

A movant may obtain preliminary injunctive relief by showing likelihood of success on the merits or serious questions going to the merits, provided irreparable harm, the balance of equities, and the public interest also support relief. *Winter*, 555 U.S. at 20; *Alliance*, 632 F.3d at 1134-35. In the Chapter 11 context, the success inquiry focuses on whether the debtor has a reasonable likelihood of successful reorganization. *Excel Innovations*, 502 F.3d at 1095.

Plaintiffs raise serious questions concerning the allowance, amount, treatment, crediting, reduction, and limitation of the Orange Claims. Orange filed POC 2 against Velocity Orlando for $5,810,321.22 and POC 11 against the Holding Company for $2,377,910.22. Both claims arise from the same Orlando lease transaction, both are disputed, and both require adjudication under § 502(b)(1) and § 502(b)(6). Verified Compl. ¶¶ 2-3, 21, 41-44; *see also id.* at ¶¶ 86-96, 99-103.

Orange did not attach a rent ledger, damages spreadsheet, mitigation analysis, reletting analysis, security-deposit credit calculation, prepaid-rent credit calculation, or other accounting explaining how the asserted amounts were calculated. The claims also must be reconciled to avoid duplicative recovery and to account for any amounts Orange receives from Kaplan, Wanger, Merrill, Bank of America, the LRW Trust, garnishment proceedings, settlement, security deposit, prepaid rent, forfeited amounts, or any other source on account of the same Orlando lease obligations. Verified Compl. ¶¶ 31-33, 41-44, 83(d)-(f), 86, 89-96.

The Florida Guarantor Judgment does not resolve those claim-allowance issues. The Debtors were not defendants in the Florida Litigation, and the Florida Litigation did not adjudicate the amount, character,

enforceability, priority, allowance, limitation, treatment, or payment of Orange's claims against the Debtors' estates. Verified Compl. ¶¶ 49-50, 54.

Plaintiffs also have a reasonable likelihood of successful reorganization. Plan #2 provides a concrete restructuring framework, identifies the Las Vegas transaction, the Newport transaction, Class 5 and Class 6 payments or reserves, and anticipated Non-Debtor Guarantors' Plan Contributions as part of the Debtors' means of implementation. Verified Compl. ¶¶ 35, 38-40; *see also id.* at ¶¶ 67-68.

Orange's garnishment activity directly threatens that implementation structure. Orange seeks final garnishment judgment against Merrill and Bank of America before this Court adjudicates the Orange Claims, required credits and offsets, or the Debtors' request for Court-supervised plan-support use. Verified Compl. ¶¶ 7, 58-61, 63.

Accordingly, Plaintiffs have shown serious questions going to the merits and a reasonable likelihood of successful reorganization.

**C.    Plaintiffs Will Suffer Immediate and Irreparable Harm Absent Temporary Relief**

A movant seeking temporary injunctive relief must show likely irreparable harm absent relief. *Winter*, 555 U.S. at 22. In the Chapter 11 context, harm to the reorganization process may support § 105(a) injunctive relief where the debtor makes a concrete evidentiary showing that enforcement activity threatens reorganization or harms creditors. *Excel Innovations*, 502 F.3d at 1098-99.

Plaintiffs face immediate harm because Orange's final garnishment judgment motion is set for hearing on June 8, 2026. Verified Compl. ¶ 60. If Orange obtains that relief, Merrill and/or Bank of America may be ordered to transfer funds to Orange before this Court adjudicates the Orange Claims, before required credits and offsets are determined, and before the Debtors can seek Court-supervised plan-support use. Verified Compl. ¶¶ 58-61, 63.

The harm is irreparable because the threatened injury is not merely a money dispute between Orange and non-debtor guarantors. The restricted Merrill funds are a material potential source of Non-Debtor Guarantors' Plan Contributions and related insider-support funding. Verified Compl. ¶¶ 9, 38-40, 63, 67, 69-70. Those funds may be needed to support Administrative Claims, Professional Fee Claims, NFS-related obligations, transaction-consummation costs, Class 5 and Class 6 payments or reserves, and other Plan obligations. Verified Compl. ¶¶ 9, 45, 47-48, 63, 70

Orange's enforcement activity also threatens the Debtors' management bandwidth and restructuring support. Kaplan and Wanger are working for the Debtors without compensation, are personally exposed on material guaranty obligations, and are directly involved in preserving value and prosecuting the restructuring. Verified Compl. ¶¶ 47-48, 71. Orange's collection activity therefore threatens both liquidity and management support necessary for reorganization. *See* Verified Compl. ¶¶ 63, 70-72.

Once the funds are transferred to Orange, the harm to the Debtors' plan process may not be capable of repair by a later claim adjustment or damages award. A failed or impaired confirmation process, loss of plan-support liquidity, disruption of NFS-related arrangements, inability to fund administrative expenses, and impairment of Class 5 and Class 6 treatment are harms to the reorganization process itself.

D.      **The Balance of Equities Tips Sharply in Plaintiffs' Favor**

The balance-of-equities inquiry compares the harm Plaintiffs will suffer absent relief against the harm Orange will suffer if temporary relief is granted. *Winter*, 555 U.S. at 20; *Alliance*, 632 F.3d at 1134-35.

The balance favors Plaintiffs. Orange will not lose its Florida Guarantor Judgment, proofs of claim, or right to litigate claim allowance, plan treatment, credits, offsets, § 502(b)(6), trust reachability, or modification of any injunction for cause. Verified Compl. ¶¶ 6, 75-76, 82-83. Orange will be delayed only from converting restrained assets into collection proceeds while this Court adjudicates estate-side claims and the Debtors prosecute confirmation. Verified Compl. ¶¶ 73, 75-76.

By contrast, absent relief, the Debtors face loss of a material plan-support funding source, impairment of NFS and administrative-payment capacity, disruption of Class 5 and Class 6 treatment, and potential loss of a reorganization intended to benefit all creditors. Verified Compl. ¶¶ 45, 47-48, 63, 70-73. The balance therefore tips sharply in Plaintiffs' favor.

E.      **The Public Interest Favors Centralized Claim Allowance and a Feasible Reorganization**

The public interest favors preserving centralized claim allowance, orderly plan administration, and value-maximizing reorganization. *Excel Innovations*, 502 F.3d at 1096-99.

Temporary relief serves that interest because Orange filed claims in this Court, those claims are disputed, and they remain subject to credits, offsets, and statutory limitation under § 502(b)(6). Verified Compl. ¶¶ 2-3, 10, 21, 41-44, 86-96, 99-103. Plan #2 provides that Class 6 Claims will be centrally

- 15 -

reconciled, reduced, credited, allowed, compromised, or otherwise determined before payment streams become fixed or due. Verified Compl. ¶¶ 35-37, 40. Orange's garnishment activity threatens to undermine that process by allowing one Class 6 creditor to obtain immediate collection proceeds before this Court determines the amount and treatment of Orange's estate-side claims.

### F. The Requested Injunction Is a Narrow, Temporary Enforcement Restraint—Not a Non-Debtor Release—and Fully Complies with § 524(e) and Rule 65(d)

Section 524(e) prohibits permanent non-debtor discharge relief, but it does not bar temporary enforcement relief designed to protect the reorganization process through confirmation or further order. 11 U.S.C. § 524(e); *American Hardwoods*, 885 F.2d at 625-27; *Lowenschuss*, 67 F.3d at 1401-02. Rule 65(d) requires that any injunction describe the restrained acts with reasonable detail and bind only parties and persons acting in concert with them who receive actual notice. Fed. R. Civ. P. 65(d).

The requested relief satisfies those requirements. Plaintiffs do not seek to release, discharge, or permanently enjoin Orange's claims against Kaplan, Wanger, the LRW Trust, or any other non-debtor. Verified Compl. ¶¶ 6, 75-76. Plaintiffs seek temporary enforcement relief through confirmation or further order of this Court to prevent Orange from converting restricted Merrill / LRW Trust assets into unilateral collection proceeds before this Court determines Orange's estate-side claims, credits, offsets, limitations, and Plan treatment. Verified Compl. ¶¶ 1, 6-9, 62-63, 75-76.

The proposed TRO is narrowly tailored. It is enforcement-only; it restrains Orange and those acting in concert with it from prosecuting, obtaining, enforcing, or receiving proceeds from final garnishment, turnover, liquidation, transfer, disbursement, levy, or similar collection remedies directed to the restricted Merrill assets, the Bank of America garnished funds, or other assets held by or for Kaplan, Wanger, or the LRW Trust on account of the Florida Guarantor Judgment. Verified Compl. ¶¶ 75-76, 78; Prayer ¶ 1.

The relief is also temporary and preserves substantive rights. It lasts only through confirmation or further order; it does not vacate the Florida Guarantor Judgment, adjudicate trust reachability, release Kaplan or Wanger, discharge the LRW Trust, or prevent Orange from litigating claim allowance, plan treatment, credits, offsets, § 502(b)(6), trust-reachability issues, or modification for cause. Verified Compl. ¶¶ 6, 75-76, 82-83.

Finally, the relief preserves Court-supervised process. Plaintiffs do not seek unrestricted personal use of the restricted Merrill funds by Wanger, Kaplan, or any insider. Plaintiffs seek to prevent Orange from taking the money while preserving the ability to seek Bankruptcy Court-supervised use for plan implementation after notice, hearing, and further order. Verified Compl. ¶ 9.

Accordingly, the requested relief is temporary, enforcement-focused, and designed to preserve plan implementation rather than discharge non-debtor liability.

**G.      The Requested TRO Is Primarily Prohibitory; Any Affirmative Implementation Relief Is Alternative and Limited**

The Ninth Circuit distinguishes between prohibitory injunctions, which preserve the status quo by prohibiting a party from taking action, and mandatory injunctions, which order a party to take affirmative action. *Marlyn Nutraceuticals*, 571 F.3d at 878-79. Mandatory injunctions are disfavored and should issue only where the facts and law clearly favor the moving party. *Id.*

Plaintiffs' primary requested relief is prohibitory. Plaintiffs ask the Court to stop Orange from prosecuting, obtaining, enforcing, executing on, or receiving proceeds through final garnishment or similar collection remedies before this Court adjudicates the Orange Claims and the Debtors' plan-funding needs. Verified Compl. ¶¶ 7, 58-61, 69-70, 75-76.

That relief preserves the operative status quo for bankruptcy purposes: Orange has not yet obtained a final garnishment judgment against Merrill or Bank of America; the funds have not yet been transferred to Orange; and this Court has not yet adjudicated the Orange Claims, credits, offsets, limitations, or Plan treatment. Verified Compl. ¶¶ 7, 58-61.

To the extent the Court determines that effective relief requires Orange to take affirmative action in the Florida Litigation, Plaintiffs request that relief only in the alternative. Specifically, Plaintiffs request that Orange be required, if necessary, to file and serve a notice of this Court's order, and if directed by this Court, a notice suspending, withdrawing, releasing, modifying, or continuing the pending Florida garnishment proceedings, including the June 8, 2026 hearing on Orange's Motion for Final Judgment After Writ of Garnishment. Verified Compl. ¶ 76; Prayer ¶ 3.

Even if that alternative relief is characterized as mandatory, the facts and law clearly favor it. Orange has noticed its final garnishment judgment motion for June 8, 2026. Verified Compl. ¶ 60. The relief Orange

seeks could cause Merrill and/or Bank of America to transfer restricted funds before this Court adjudicates the Orange Claims or the Debtors' request for Court-supervised plan-support use. Verified Compl. ¶¶ 58-61, 63. The alternative affirmative relief is therefore limited, necessary, and directly tied to preserving this Court's jurisdiction and the reorganization process.

Accordingly, the TRO should be entered as principally prohibitory relief, with any affirmative implementation requirement limited to notice, suspension, withdrawal, modification, release, or continuance of the pending Florida garnishment proceedings only to the extent necessary to effectuate the Court's order.

**H.     The TRO Should Operate Against Orange and Should Not Require Merrill to Release Funds Absent Further Order**

Florida garnishment law contemplates notice, ownership-interest issues, and an opportunity to contest garnishment before final disposition of disputed property. Fla. Stat. §§ 77.01, 77.055, 77.07. Where a garnishee is joined only for notice and implementation purposes, and no wrongdoing is alleged against the garnishee, temporary relief should be structured to operate against the judgment creditor while protecting the garnishee from conflicting obligations.

That structure fits this case. Merrill has been joined only as a nominal garnishee/stakeholder defendant for notice and implementation purposes. Plaintiffs do not allege wrongdoing by Merrill and do not seek damages, sanctions, fees, or affirmative monetary relief against Merrill. Verified Compl. ¶¶ 17-18, 22, Prayer ¶ 5. Plaintiffs also do not ask this Court to compel Merrill, *ex parte*, to release funds. The immediate TRO should operate against Orange and preserve Merrill's ability to maintain the restricted funds pending further order of this Court, an order of the Florida court, or written release, withdrawal, or stipulation sufficient under applicable law. Verified Compl. ¶¶ 17-18, 22, 76, 78; Prayer ¶¶ 4-5.

That structure protects Merrill while preventing Orange from obtaining immediate turnover before this Court adjudicates Orange's estate-side claims, required credits and offsets, Plan treatment, and the Debtors' request for Court-supervised plan-support use. It also preserves trust ownership, reachability, and turnover issues for orderly adjudication. Verified Compl. ¶¶ 5, 56-63, 75-76; Prayer ¶¶ 1, 3-5.

**I.      The Court Should Enter Immediate TRO Relief Under Rule 65(b) or, Alternatively, Issue an OSC on Shortened Time for Hearing Before the June 8 Florida Garnishment Hearing**

Plaintiffs satisfy Rule 65(b)(1) because the Verified Complaint and supporting declarations provide specific facts showing immediate and irreparable injury before Orange can be heard on ordinary notice. Orange's final garnishment judgment motion is set for June 8, 2026, at 8:45 a.m. Verified Compl. ¶ 60. Orange seeks entry of final garnishment judgment against Merrill for $386,454.20 and against Bank of America for $3,988.22. *Id.* at ¶¶ 58-59. Unless restrained before that hearing, Orange may obtain final garnishment, turnover, liquidation, transfer, disbursement, or similar enforcement relief before this Court adjudicates the Orange Claims, required credits and offsets, § 502(b)(6) issues, Class 6 treatment, or the Debtors' request for Court-supervised plan-support use. *Id.* at ¶¶ 58-63.

The requested immediate TRO should expire no later than fourteen (14) days after entry unless extended for good cause or by Orange's consent, and the Court should set the preliminary-injunction hearing at the earliest possible time within that fourteen-day period. Plaintiffs also request that the TRO state the date and hour of issuance, describe the irreparable injury, state why immediate relief is necessary before Orange can be heard on ordinary notice, and preserve Orange's right to move to dissolve or modify the TRO under Rule 65(b)(4).

Plaintiffs recognize that ex parte relief is extraordinary and do not seek to deprive Orange of an opportunity to be heard if the Court can provide meaningful relief on shortened time. Accordingly, if the Court declines to enter immediate TRO relief under Rule 65(b), Plaintiffs request alternative relief under LR 9006: an order shortening time and order to show cause setting this Motion for emergency hearing on or before June 3, 2026. That alternative relief would preserve Orange's opportunity to appear while preventing the June 8 Florida garnishment hearing from overtaking this Court's ability to adjudicate the Orange Claims and the plan-support funding issues.

The requested procedure is narrow and fair. The immediate TRO, if entered, would operate only against Orange and those acting in concert with Orange who receive actual notice. It would not compel Merrill or Bank of America to release funds, would not vacate the Florida Guarantor Judgment, would not discharge Kaplan, Wanger, or the LRW Trust, and would not adjudicate trust-reachability issues. It would simply prevent Orange from taking the money before this Court can hear the parties and supervise any further use of the funds for plan implementation.

**J.      The Court Should Waive Any Bond Requirement or Set a Nominal Bond Pursuant to Fed. R. Bankr. P. 7065.**

Bankruptcy Rule 7065 permits the Court, on application of a debtor, trustee, or debtor in possession, to issue a temporary restraining order or preliminary injunction without requiring security under Rule 65(c). Fed. R. Bankr. P. 7065.

Because Plaintiffs are debtors in possession seeking relief to preserve the estate and facilitate reorganization, Plaintiffs request that the Court waive any bond requirement or set a nominal bond pursuant to Fed. R. Bankr. P. 7065.

**V.      CONCLUSION**

Orange should not be permitted to take the restricted Merrill / LRW Trust funds before this Court determines the Orange Claims, applicable credits and offsets, § 502(b)(6) limitations, and Plan treatment. Plaintiffs do not seek to release Kaplan, Wanger, the LRW Trust, or any other non-Debtor; vacate the Florida Guarantor Judgment; or compel Merrill to release funds absent further order. Plaintiffs seek only temporary relief preventing Orange from converting the restricted funds into unilateral collection proceeds while preserving the Debtors' ability to seek Court-supervised use of those funds for plan implementation after notice and hearing.

/ / /

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an immediate temporary restraining order under Rule 65(b), effective for no longer than fourteen (14) days unless extended as permitted by Rule 65(b)(2), and set a preliminary-injunction hearing within that fourteen-day period. Alternatively, if the Court declines to enter immediate TRO relief, Plaintiffs request entry of an order shortening time and order to show cause setting this Motion for emergency hearing on or before June 3, 2026. Plaintiffs further request that the Court restrain Orange from prosecuting or enforcing the pending Florida garnishment proceedings, require any necessary notice or suspension of the June 8, 2026 garnishment hearing, protect Merrill and Bank of America from any release or transfer obligation absent further order, waive any bond requirement under Fed. R. Bankr. P. 7065, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted on May 29, 2026.

/s/ Matthew I. Knepper, Esq.
Matthew I. Knepper, Esq.
Nevada Bar No. 12796
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228

Attorneys for Plaintiffs