Maurice B. VerStandig, Esq.
Nevada Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
(301) 444-4600
mac@mbvesq.com
*Counsel for 434 N.*
*Orange Investment, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-12627-mkn |
| | ) | |
| VELOCITY ESPORTS, INC., | ) | Jointly Administered with |
| | ) | Case No. 25-12628-mkn |
| □ Affects Velocity Esports, Inc. | ) | Case No. 25-12629-mkn |
| □ Affects Velocity Esports Las | ) | Case No. 25-12630-mkn |
| Vegas Town Square, LLC | ) | Case No. 25-12631-mkn |
| □ Affects Velocity Esports Chicago | ) | |
| Schaumburg, LLC | ) | Chapter 11 |
| □ Affects Velocity Esports Newport | ) | |
| Kentucky, LLC | ) | |
| □ Affects Velocity Esports Orlando | ) | |
| Downtown, LLC | ) | |
| ■ Affects All Debtors | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| VELOCITY ESPORTS, INC., a Nevada | ) | Adv. No. 26-01075-mkn |
| corporation, VELOCITY ESPORTS LAS | ) | |
| VEGAS TOWN SQUARE, LLC, a Nevada | ) | Hearing Date: June 5, 2026 |
| limited liability company, VELOCITY | ) | Hearing Time: 11:00 am |
| ESPORTS CHICAGO SCHAUMBURG, | ) | |
| LLC, an Illinois limited liability company, | ) | |
| VELOCITY ESPORTS NEWPORT | ) | |
| KENTUCKY, LLC, a Kentucky limited | ) | |
| liability company, and VELOCITY | ) | |
| ESPORTS ORLANDO DOWNTOWN, | ) | |
| LLC, a Florida limited liability company, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 434 N. ORANGE INVESTMENT, LLC, a | ) | |
| Delaware limited liability company; | ) | |

1

|  | ) |
| --- | --- |
| Defendant, | ) |
|  | ) |
| and | ) |
|  | ) |
| MERRILL LYNCH, PIERCE, FENNER | ) |
| & SMITH INCORPORATED, solely as | ) |
| nominal garnishee and stakeholder | ) |
| defendant for purposes of notice and | ) |
| implementation of injunctive relief, | ) |
|  | ) |
| Nominal Defendant. | ) |
|  | ) |

## OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

Comes now the 434 N. Orange Investment, LLC ("434 N. Orange" or the "Defendant"), by and through undersigned counsel, in opposition to the emergency motion for entry of a temporary restraining order, preliminary injunction, and related relief (the "Motion"), ECF No. #3,[1] filed by the debtors/plaintiffs herein (the "Debtors" or "Plaintiffs"), and states as follows:

### I.    Introduction

The Motion asks this Honorable Court to enjoin collection efforts directed at non-estate assets held by a self-settled, revocable trust for the benefit of a non-debtor party. None of the Debtors are beneficiaries of the subject trust. The trust has been scantly mentioned in these bankruptcy cases. And neither the trust nor the trustee thereof are parties to this adversary proceeding. It necessarily follows that for reasons of a procedural, legal, and factual nature, the granting of such extraordinary relief is inappropriate.

This adversary proceeding arrives in an unusual posture: more than a year after petitioning for chapter 11 relief, the Debtors are yet to docket a proposed disclosure statement or meaningfully pursue confirmation of a plan of reorganization. Since the onset of these bankruptcy

---

[1] The Motion appears to have been filed at both ECF No. 2 and ECF No. 3.

2

cases, the Debtors have been aware that 434 N. Orange is pursuing collection from non-debtor guarantors. In fact, the Debtors even docketed a first day motion to enjoin such collection activity, promising "[u]nder Debtors' forthcoming plan of reorganization, Orange Investment's claim will be paid in full, thus obviating the need to pursue the Orlando Litigation." Main Case ECF No. 22 at 3:1-2. Yet the Debtors declined to pursue that first day motion or bring an adversary proceeding through which injunctive relief could be realized, for more than a year, and have instead gone on to propose plans of reorganization under which 434 N. Orange *might* be paid some ill-defined sum over a span of twenty years. *See* ECF No. 242 at § 3.8.2.1; ECF No. 284 at § 3.8.2.1. In the interim, the aforesaid "Orlando Litigation" progressed past entry of a judgment and to the point of enforcement. Now that 434 N. Orange stands on the precipice of actually collecting on a guaranty judgment against one of the Debtors' principals, the Debtors have found urgency in seeking the injunctive relief they declined to substantively pursue in May 2025.

The self-settled, revocable trust from which 434 N. Orange stands to collect monies is an entity heretofore largely unmentioned in this bankruptcy case. In fact, one of the Debtors' principals has been held in contempt of court (a contempt that is ongoing and unpurged) for failing to comply with Florida state law rigors governing the disclosure of assets. The trust in question is also not a party to this adversary proceeding. Yet the Debtors suggest—abruptly, paradoxically, and for seemingly the first time—that this trust is apparently the very lynchpin upon which successful reorganization relies.

The Motion merits denial not merely because of the extraordinary delay unilaterally occasioned by the Debtors and the paucity of good faith pegging an insider's self-settled trust to reorganization but, too, because of the objective lack of merit underlying the request for injunctive relief. Against the weight of long-established authority, the Debtors urge solely-pecuniary harm to give rise to irreparable injury sufficient to support entry of an injunction. Against the weight of

the Supreme Court ruling in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), the Debtors urge relatively ordinary facts to invite the imposition of extraordinary relief. And against the weight of both the Anti-Injunction Act and Ninth Circuit precedent interpreting that statutory enactment, the Debtors urge that injunctive relief is appropriate so as to alter the disbursement of monies to creditors of a bankruptcy estate.

Perhaps most potently, though, the Motion merits denial for the simple reason that the Debtors' contentions defy plausibility. Not only does the entry of an injunction turn on acceptance of a previously largely-overlooked trust being critical to reorganization but, too, entry of an injunction would require undue faith that the Debtor can actually confirm a plan of reorganization for which no disclosure statement has been docketed. Equity periodically permits non-debtor injunctions where a confirmable plan offers adequate protection to impacted creditors; here, the proposed plan is neither seemingly confirmable in the status quo posture of this case nor seemingly imbued with the variety of provisions that would come anywhere near offering protection to 434 N. Orange.

In essence, 434 N. Orange has discovered a collectible asset belonging to a principal of the Debtors, notwithstanding that individual's contemptuous obstruction of efforts to locate his assets. Rather than permit this asset to be seized in furtherance of collection on a state court judgment, the Debtors now ask that they be permitted to take charge of the asset and use it for their own purposes. The law simply does not support such a confiscatory proposition.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Motion be denied.

**II.    Standard: Temporary Restraining Order / Preliminary Injunction**

The standard for entry of both a temporary restraining order and a preliminary injunction is comprised of a familiar four prong, conjunctive assessment:

To qualify for a preliminary injunction or TRO, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that the balance of hardships favors the plaintiff; and (4) that the injunction is in the public interest.

*Reno-Sparks Indian Colony v. Haaland*, 663 F. Supp. 3d 1188, 1195 (D. Nev. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). *See also Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1094 (9th Cir. 2007) ("We hold that the usual preliminary injunction standard applies to stays of proceedings against non-debtors under § 105(a).").

In the Ninth Circuit, the first criterion—likelihood of success on the merits—is measured, in the context of a suit such as this, based on "the debtor's likelihood of success in reorganization. . ." *Id.* at 1089.

Rigorous application of these standards is of import, especially in the bankruptcy context, because "the automatic stay does not apply to suits against non-debtors," *id.* at 1095 (citing *Chugach Timber Corp. v. N. Stevedoring & Handling Corp.* (*In re Chugach Forest Prods., Inc.*), 23 F.3d 241, 246 (9th Cir. 1994), and "[t]he usual standard helps to ensure that stays would not be granted lightly," *Solidus*, 502 F.3d at 1095.

**III.    Relevant Factual Background**

1.      Leonard Wanger ("Mr. Wanger") and Philip Kaplan ("Mr. Kaplan"), two principals of the Debtors, executed a partial guaranty (the "Guaranty") of a lease between Velocity Esports Orlando Downtown, LLC (the "Orlando Debtor") and 434 N. Orange. *See* State Court Complaint, attached hereto as Exhibit A.

2.      The Guaranty caps the liability of Messrs. Wanger and Kaplan at $400,000.00. *Id.*

3.      The Guaranty does not require efforts be first made to collect from the Orlando Debtor. *Id.*

4. On April 7, 2025, 434 N. Orange brought suit—in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida—against Messrs. Wanger and Kaplan, seeking a judgment on the Guaranty. *Id.*

5. Judgment was thereafter entered by default, *see* ECF No. 3 at ¶ 5, following which 434 N. Orange has sought to collect the adjudicated sum, *id.* at ¶ 6.

6. Mr. Wanger has been held in contempt of court for failing to abide by rules governing the obligation of a judgment debtor to disclose her or his assets. *See* Contempt Order, attached hereto as Exhibit B.

7. 434 N. Orange learned, through post-judgment third-party discovery, that there exists a consortium of Merrill Lynch accounts, on which Mr. Wanger is listed as trustee, holding $386,454.20 (the "Merrill Accounts"), and two Bank of America accounts, in Mr. Wanger's personal name, holding $3,988.22. ECF No. 3 at ¶ 6.

8. The Merrill Accounts are held by Mr. Wanger as trustee of a self-settled, revocable trust, of which he is the beneficiary (the "LRW Trust"). *See* ECF No. 1 at ¶ 5.

9. 434 N. Orange has now sought to garnish those accounts, so as to collect upon the judgment obtained in state court. *See* ECF No. 3 at ¶ 8.

10. Shortly after petitioning for chapter 11 relief, the Debtors initially sought an injunction in the main bankruptcy case (something of a legal impossibility, *see* Fed. R. Bankr. P. 7001(g)), endeavoring to enjoin collection against Messrs. Wanger and Kaplan for the life of the bankruptcy case, *see* ECF No. 22, but that motion was never pursued, *see* Main Case Docket, *passim*.

11. Meanwhile, the Debtors have made scant discernable progress endeavoring to reorganize, with a plan first being proposed eleven months post-petition and then being amended on the eve of filing this adversary proceeding. *See* Main Case ECF Nos. 242, 282.

12.     While there are fleeting references to the LRW Trust in the Debtors' plans, *id.* at §§ 3.3.1, 3.9.1, nowhere is the LRW Trust identified as a funding source for either plan, *id.*, *passim*.[2]

13.     The Debtors are yet to file a proposed disclosure statement. *See* Main Case Docket, *passim*.

14.     The most recent plan proposed by the Debtors suggests 434 N. Orange will be paid a likely-reduced claim amount over the course of 20 years. *See* Main Case ECF No. 284 at § 3.8.2.1. The funding source for this payment is at-best unclear. *Id.*, *passim*.

**IV.     Argument: Injunctive Relief Should be Denied**

**a.   The Debtor is Not Likely to Succeed in Reorganizing**

These are procedurally unusual cases. The statutory exclusivity period appears to have lapsed long before a plan of reorganization was ever proposed. No creditors' committee was appointed. And while the Debtors have twice proposed a plan of reorganization, neither such document has been accompanied by a disclosure statement.

The absence of a disclosure statement is particularly problematic insofar as, to an outsider coming to this case at this juncture, it is genuinely difficult to understand just what is actually being proposed in the most recent plan iteration. The Debtors place palpable emphasis on "the Las Vegas transaction" and the "Newport transaction." *See* ECF No. 284 at 1:9-10, §§ 1.1.46, 3.7.1.1, 3.7.2.2, 3.7.2.4, 4.1.3, 4.1.4, 5.1, 5.3, 5.4, 10.4.2, 11.1.22, Schedule 5.1. Yet neither such term is anywhere defined. *Id.*, *passim*. So while the Debtors posit that their "proposed

---

[2] Should an evidentiary hearing on a preliminary injunction be held, 434 N. Orange is prepared to present evidence materially rebutting certain contentions intimated in the Motion. The Debtors' contentions about the putative centrality of the LRW Trust to confirmation are objectively at odds with evidence discovered by 434 N. Orange through the taking of third-party discovery in furtherance of collection.

restructuring depends materially on consummation of the Las Vegas transaction and the Newport transaction," *id.* at 1:9-10, there is a general lack of clarity as to just what transactions are being contemplated by the Debtors.

Two of the Debtors appear to have recently sold property pursuant to section 363 of title 11 of the United States Code. *See* Main Case ECF No. 269. Yet the various filings associated therewith indicate the transaction does *not* affect "Velocity Esports Orlando Downtown, LLC," the entity with whom 434 N. Orange is in privity. *Id*.

Meanwhile, the Debtors insist their plan is reliant upon the "Non-Debtor Guarantors' Plan Contributions and continued support, cooperation, and services," from Messrs. Wanger and Kaplan, *see* ECF #6 at ¶ 10. Still, the plan itself does not actually quantify such "Non-Debtor Guarantors' Plan Contributions," instead vaguely defining such as, *inter alia*, "cash or other monetary funding contributed or made available, directly or indirectly, by one or both of the Non-Debtor Guarantors. . ." Main Case ECF No. 284 at § 1.1.46.

In short, it is truly unclear how the Debtors believe they can reorganize, just as it is unclear what—if any—contributions from Messrs. Wanger and Kaplan are actually a material part of that reorganization. There has been no attempt to furnish adequate information about either plan iteration, 11 U.S.C. § 1125, and the docket in the Debtors' case seemingly does not contain a material discussion of the LRW Trust or how the monies held by that trust will factor into reorganization.

**b. There is No Irreparable Harm**

The near-wholesale absence of prior references to the LRW Trust speaks, just as potently, to the absence of irreparable harm. 434 N. Orange is pursuing collection of a judgment and has located—through extensive legal due diligence—a self-settled trust for the benefit of Mr. Wanger.

While the Debtors now proclaim, for seemingly the first time, that this trust is critical to reorganization, neither the record nor governing law support this notion.

As a starting point, the only harm that will be occasioned through garnishment of the Merrill Lynch accounts is a diminution of monies available to the LRW Trust, while the only harm to be occasioned through garnishment of the Bank of America accounts is a diminution of Mr. Wanger's personal funds. Yet "monetary injury is not normally considered irreparable." *Doe v. Trump*, 957 F.3d 1050, 1060 (9th Cir. 2020) (quoting *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 993 (9th Cir. 2019) (quoting *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980))). *See also Jaye v. Jaye,* 2014 U.S. Dist. LEXIS 5845, at *9 (D. Nev. Jan. 16, 2014) ("Mere monetary harm 'will not usually support injunctive relief,' because '[s]uch injury can be remedied by a damage award.'") (quoting *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057 (9th Cir. 2009); *Rent-A-Center v. Canyon Televison and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).

Moreover, and of particularized import, even if injunctive relief were permitted to avoid monetary harm, it is altogether unclear what monetary harm garnishment would occasion on the *Debtors*. Yes, Mr. Wanger will lose funds in his self-settled trust. But, as noted *supra*, Mr. Wanger has not actually committed to funding the Debtor with those monies (or any monies at all). Even if a plan were somehow confirmed, there is only an illusory promise that Mr. Wanger will furnish some variety of aid to the reorganized Debtor—not a sum certain buttressed by a measurable economic commitment. And it is difficult to square the centrality of such illusory aid with irreparability when the plan makes clear that success is not dependent upon Mr. Wanger's generosity but, rather, on the success of the ill-defined Las Vegas transaction and Newport transaction—two transactions that, as best 434 N. Orange can tell, have absolutely nothing to do with the depth of endowment of Mr. Wanger's self-settled trust.

9

Consideration of this criterion actually grows even more strained in the prism of the Motion, where the Debtors insist that "[i]f Orange obtains that relief, Merrill and/or Bank of America may be ordered to transfer funds to Orange before this Court adjudicates the Orange Claims, before required credits and offsets are determined, and before the Debtors can seek Court-supervised plan-support use." ECF No. 3 at § IV(C). Or, stated otherwise, 434 N. Orange might collect on its guaranty judgment before the Debtors have an opportunity to endeavor to lessen the allowed claims of 434 N. Orange in the bankruptcy case—something expressly contemplated in the text of the Guaranty itself.

Yet the prospect of seeing the claims of 434 N. Orange reduced is all the more reason to allow collection from a guarantor—not to forbear from so doing. As the Debtors seemingly recognize, the judgment obtained by 434 N. Orange is not subject to collateral attack in this case. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); 28 U.S.C. § 1738. So 434 N. Orange is left to collect what it can from the limited guaranty of Messrs. Wanger and Kaplan while also endeavoring to collect what it can from a seemingly-insolvent collective of chapter 11 estates.[3] Lessening 434 N. Orange's rights in connection with the guarantors, so as to bolster the Debtors' position in endeavoring to degrade the size of 434 N. Orange's allowed claims, would be economically irrational and seemingly punitive as well.

### c. The Balance of Hardships Supports Denial of Injunctive Relief

As noted *supra*, there is a presumption against entry of non-debtor stays in chapter 11 cases. The automatic stay enshrined in section 362 of title 11 of the United States Code does not

---

[3] The Motion intimates that monies may be needed, from outside sources, to pay administrative expenses. ECF No. 3 at ¶ 14. If such is true, and the Debtors are either administratively insolvent or even just without the funds to pay administrative expense claims, such speaks all the more vividly to the lack of confirmability of a plan of reorganization. *See* 11 U.S.C. § 1129(a)(9).

touch upon non-debtors and even the elastic provisions of chapter 13 are not applicable in corporate reorganization (or liquidation) cases. This makes it all the more difficult for the Debtors to show equities tip in favor of injunctive relief. The Motion does not overcome this hurdle.

As long-ago observed by the Ninth Circuit Bankruptcy Appellate Panel: "The automatic stay under section 362(a) only extends to debtors under the Code. . . We hold that section 362(a) does not authorize stays to co-debtors. . ." *In re Rohnert Park Auto. Parts*, 113 B.R. 610, 614-15 (B.A.P. 9th Cir. 1990) (cleaned up).

The Supreme Court has recently clarified that even the discharge—itself a form of injunctive relief, *see* 11 U.S.C. § 524(a)(2-3)—cannot be extended to non-debtors except in certain narrow circumstances correlative to asbestos cases:

> For asbestos-related bankruptcies—and only for such bankruptcies—Congress has provided that, "[n]otwithstanding" the usual rule that a debtor's discharge does not affect the liabilities of others on that same debt, §524(e), courts may issue "an injunction . . . bar[ring] any action directed against a third party" under certain statutorily specified circumstances.  That the code *does* authorize courts to enjoin claims against third parties without their consent, but does so in only *one* context, makes it all the more unlikely that §1123(b)(6) is best read to afford courts that same authority in *every* context.

*Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 222 (2024) (quoting 11 U.S.C. § 524(g)(4)(A)(ii); citing *Bittner* v. *United States*, 598 U. S. 85, 94 (2023); *AMG Capital Management, LLC* v. *FTC*, 593 U. S. 67, 77 (2021)) (emphasis in original).

While *Purdue* addresses injunctive relief in the form of non-debtor discharges, the rationale set forth therein is equally applicable here. Title 11 of the United States Code (the "Bankruptcy Code") expressly authorizes involuntary, third-party injunctions in precisely one circumstance: asbestos claims. The Supreme Court has concluded that specific enumeration is to the necessary exclusion of third-party discharge injunctions in plans of reorganization. And it is thusly difficult to surmise that what a bankruptcy court is no longer permitted to do through the

plan confirmation process may still, nonetheless, be accomplished through a garden variety injunction.

To be sure, prior to *Purdue*, the Ninth Circuit did recognize exceedingly limited circumstances in which a non-debtor stay may be entered. *See In re Am. Hardwoods*, 885 F.2d 621, 624-25 (9th Cir. 1989). Yet not only has that precedent not been significantly retested post-*Purdue* but, too, that precedent was uniformly utilized in cases far more factually compelling—and rich with non-economic considerations—than the matter *sub judice*.

In *Am. Hardwoods*, the court found "that American's efforts to confirm and administer a reorganization plan would likely fail" if a state court judgment was enforced. *Id.* at 622. And, even there, the bankruptcy court was affirmed in denying permanent injunctive relief. *Id.* at 627.

Even in *Solidus Networks*, the Ninth Circuit recognized the availability of preliminary injunctive relief but overturned the subject injunction because a showing the debtor's principal "was actively marketing [the debtor's] products in his consulting position" was insufficient to demonstrate an actual likelihood of reorganization. *Solidus Networks*, 502 F.3d at 1097. The same court recognized that depriving a creditor of its contractually bargained-for right to pursue remedies against non-debtors is a significant harm impacting the four-prong injunctive relief analysis. *Id.* The Ninth Circuit even went so far as to find that a risk of the debtor's principal disclosing privileged information, belonging to the debtor, is insufficient to support a finding of irreparable harm capable of tipping the balance of equities. *Id.*

Nothing as compelling as the *Solidus Networks* considerations has been presented by the Debtors in this case. Yet even the *Solidus Networks* considerations proved inadequate to support the entry of injunctive relief.

### d. Public Interest Disfavors Injunctive Relief

As noted throughout this brief, precedent urges third party injunctions are an extraordinary remedy. The automatic stay does not apply to non-debtors and a relatively-Herculean showing is required to garner a third-party injunction, to the extent such relief is even still available post-*Purdue*. This is all the truer where, as here, the obligation in question is a state court judgment.

The Debtors did not bring this adversary proceeding when they sought chapter 11 relief. Rather, they filed a motion in the main case, abandoned that motion, waited for a judgment to be obtained, and then waited—even longer—for 434 N. Orange to stand on the brink of collecting on that judgment. If a well-concealed self-settled trust had not been discovered, this adversary proceeding likely never would have been brought. And such speaks not merely to the optically-unseemly nature of the Motion but, too, to a larger problem: the injunction being sought does not seek to prohibit litigation from proceeding but, rather, a judgment from being enforced.

The United States Code provides, *inter alia*: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. And while there exists some debate as to whether or not section 105 of the Bankruptcy Code constitutes an express codified authorization within the ambit of the foregoing statute, precedent is clear that even if injunctions are permitted, they ought not be entertained in circumstances such as those instantly present: "We refuse to adopt the position, urged upon us by the appellees, that an injunction should issue simply because the state court action might affect the allocation of assets among claimants in the bankruptcy." *In re Fed. Shopping Way, Inc.*, 717 F.2d 1264, 1274 (9th Cir. 1983).

At core, the rationale rejected by the *Fed. Shopping Way* Court is precisely the logic being utilized by the Debtors here: the LRW Trust is better applied to the Debtors' reorganization (even

if the Debtors are not actual beneficiaries of that trust) than to paying the guaranty judgment held by 434 N. Orange. Implicit in this argument is that the Debtors will make better use of the funds than will 434 N. Orange—to the extent the Debtors make use of the funds at all.

Excepting cases where a readily confirmable plan, with 100% creditor payments of relative assuredness, sits on the docket, it is difficult to find significant precedent for entering an injunction where a debtor's chief argument is that it will make better use of a third-party's funds than would a creditor. Much of the topical field of case law concerns non-economic factors—the time expended defending forthcoming litigation, the risk of trade secrets being compromised in litigation, the potential for insurance policies to be drained in third party litigation. Not coincidentally, these are all primarily non-pecuniary detriments. *See Trump*, 957 F.3d at 1060. Yet very little of the applicable precedent centers on a theory of pure economic utility—something that would, no doubt inadvertently, fringe on urging a sort of bankruptcy exceptionalism.

The Debtors cannot suggest allowing 434 N. Orange to collect on the judgment obtained in state court will distract from reorganization, since the hard work of obtaining a judgment has already been completed and Mr. Wanger has already been held in contempt of court. Nor may the Debtors seriously suggest—no matter their best efforts otherwise—that the LRW Trust is the backbone of their plan, when the trust was previously a scantly-identified legal entity (quite likely because there was a desire fort 434 N. Orange to not discover the trust's existence). Nor do the Debtors appear well-equipped to seriously urge they have proposed a confirmable plan, when no disclosure statement has graced the docket.

All of which informs the absence of a public policy rationale for entering the injunction instantly sought. Congress has urged federal courts ought not enjoin the business of state courts. The Ninth Circuit has held bankruptcy courts are not to enter injunctions aimed at prohibiting a reallocation of assets. And yet that is precisely what is sought here.

14

No doubt, the Debtors do not much wish to see a principal deprived of money held in a self-settled trust. Such, however, is not the foundation of a strong argument for injunctive relief unless Mr. Wanger wishes to do what Congress has clearly contemplated: file his own petition for bankruptcy relief, thereby availing himself of the automatic stay.

## V.    Argument: The Trust Has Not Been Made a Party Hereto

Finally, the failure of the Debtors to actually make the LRW Trust (or even Mr. Wanger, in his capacity as trustee thereof) a party to this suit is troubling. While such may ultimately speak more to a motion to dismiss, the absence of an indispensable party is, unto itself, grounds to deny injunctive relief because the absence of an indispensable party ultimately invokes jurisdictional concerns.

The Motion is very careful to urge "[t]he LRW Trust is not a judgment debtor, and Wanger will testify that he does not own the restricted Merrill accounts individually." ECF No. 3 at 4:13-14. Yet the Motion nonetheless urges that monies held by the LRW Trust, at Merrill Lynch, be frozen pending further order of this Honorable Court.

Rule 19 requires joinder, in litigation, of a person, in whose absence, "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). *See also* Fed. R. Bankr. P. 7019 (making Rule 19 applicable to adversary proceedings). Failure to join such a party creates jurisdictional problems in equity. *See California v. Arizona*, 440 U.S. 59, 62 (1979); *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005). Assessment of the necessity and indispensability of a party turns on a three-factor test:

> First, under Rule 19(a), the court determines whether a party is "necessary." If the court finds that the absent party is a necessary party, the court must then determine whether joinder of the party is feasible. Finally, if joinder is not feasible, the court determines whether the case can proceed without the absent party or whether the absent party is an "indispensable" party such that the court must dismiss the action.

15

*Wright v. Incline Vill. Gen. Improvement Dist.*, 597 F. Supp. 2d 1191, 1204 (D. Nev. 2009) (citing *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005)).

Here, it is difficult to conceive of a how a trust—or, more precisely, a trustee—is not a necessary party to a suit seeking to enjoin alienation of the trust's property. The injunction being sought concerns an asset of the LRW Trust; assuredly the LRW Trust (or its trustee) ought to be a party to the relevant proceeding.

Similarly, joinder would seem readily feasible insofar as the subject trustee is a principal of the Debtors. This is not a case involving an off-shore trustee where minimum contact and service issues abound, *see Henry v. Rizzolo*, 2011 U.S. Dist. LEXIS 79846, at *14 (D. Nev. July 21, 2011); this is a case where the LRW Trust's trustee has availed himself of this Honorable Court's jurisdiction in myriad voluntary fashions.[4]

There are several reasons the Debtors—sympathetic to Mr. Wanger and the preservation of his self-settled trust—may not wish to see the LRW Trust made a party hereto. If nothing else, there may be a desire to avoid having discovery taken from the LRW Trust. There may also be a desire to avoid the expense of engaging separate counsel, since the Debtors' general reorganization attorneys would be presumably conflicted from representing the LRW Trust. Yet these are not reasons sufficient to look beyond the dictates of Rule 19. If an injunction is being sought, to freeze the assets of a trust, that trust assuredly ought to be haled into court alongside 434 N. Orange and Merrill Lynch.

## VI.    Conclusion

WHEREFORE, 434 N. Orange respectfully prays this Honorable Court (i) deny the Motion; (ii) in the alternative, set a full evidentiary hearing on a preliminary injunction if a

---

[4] Since joinder is possible, the third criterion need not be reached: there is no need to contemplate the pursuit of this case in the absence of the LRW Trust.

temporary restraining order is to be entered; and (iii) afford such other and further relief as may be just and proper.

Dated: June 4, 2026                          Respectfully submitted


/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Nevada Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
(301) 444-4600
mac@mbvesq.com
*Counsel for 434 N. Orange Investment, LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2026, the foregoing brief was filed using the CM/ECF system, which served a NEF on all parties receiving such service in this case.

/s/ Maurice B. VerStandig
Maurice B. VerStandig