Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Brenden J. Gougeon, Esq.
Nevada Bar No. 16874
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
Email: bgougeon@nvbankruptcyattorneys.com

*Attorneys for Plaintiffs/Debtors*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>VELOCITY ESPORTS, INC.,<br><br>☐ Affects Velocity Esports, Inc.<br>☐ Affects Velocity Esports Las Vegas Town Square, LLC<br>☐ Affects Velocity Esports Chicago Schaumburg, LLC<br>☐ Affects Velocity Esports Newport Kentucky, LLC<br>☐ Affects Velocity Esports Orlando Downtown, LLC<br>■ Affects All Debtors<br><br>                  Debtor(s). | Case No.: 25-12627-mkn<br><br>Jointly Administered with<br>Case No. 25-12628-mkn<br>Case No. 25-12629-mkn<br>Case No. 25-12630-mkn<br>Case No. 25-12631-mkn<br><br>Chapter 11<br><br>Adversary No.: 26-01075-mkn<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION, AND RELATED RELIEF PRESERVING COURT-SUPERVISED PLAN-SUPPORT FUNDING**<br><br>Hearing Date: June 5, 2026<br>Hearing Time: 11:00 a.m. |
| VELOCITY ESPORTS, INC., a Nevada corporation, VELOCITY ESPORTS LAS VEGAS TOWN SQUARE, LLC, a Nevada limited liability company, VELOCITY ESPORTS CHICAGO SCHAUMBURG, LLC, an Illinois limited liability company, VELOCITY ESPORTS NEWPORT KENTUCKY, LLC, a Kentucky limited liability company, and VELOCITY | |

ESPORTS ORLANDO DOWNTOWN, LLC,
a Florida limited liability company,

                    Plaintiffs,

v.

434 N. ORANGE INVESTMENT, LLC, a
Delaware limited liability company;

                    Defendant,

and

MERRILL LYNCH, PIERCE, FENNER &
SMITH INCORPORATED, solely as nominal
garnishee and stakeholder defendant for
purposes of notice and implementation of
injunctive relief,

                    Nominal Defendant.

## I.      INTRODUCTION

Orange's opposition confirms the need for temporary relief, not its absence. Orange asks the Court to let it take the identified Merrill/LRW Trust funds now and leave the bankruptcy consequences for later. That sequence would invert the process this Court is supervising. Orange has filed substantial estate claims; those claims remain disputed and subject to credits, offsets, and 11 U.S.C. § 502(b)(6), and Orange is simultaneously seeking a final garnishment judgment against the same limited pool of insider-support liquidity before this Court determines claim allowance or Plan treatment.

The Debtors do not contend that Orange's guaranty judgment is void, that the automatic stay already bars all non-debtor collection, or that the LRW Trust is categorically immune from creditor process. The Debtors filed this adversary proceeding precisely because temporary non-debtor enforcement relief must be requested under § 105(a), Rule 7065, and Rule 65. The requested order is narrow: it restrains Orange from converting the restricted Merrill/LRW Trust assets and Bank of America funds into unilateral collection proceeds before this Court adjudicates Orange's estate-side claims and before the Debtors can seek Court-supervised use of any available plan-support funding.

- 2 -

Nor is this a stagnant case. The Court approved the Las Vegas asset sale on April 27, 2026, including the APA, the free-and-clear transfer, assumption and assignment of the Town Square lease and specified equipment leases, a $633,431.00 partial payment to Newtek, payment in full of Pawnee Leasing Corporation in the amount of $101,000.00, and treatment of the NFS lease assignment and related credit. Main Case ECF No. 269; Kaplan Supp. Decl. ¶¶ 6-11. The Court approved the NFS compromise and directed its implementation. Main Case ECF No. 168; Kaplan Supp. Decl. ¶¶ 12-13. The Court also approved the Consumer Privacy Ombudsman's first and final fee application in the amount of $12,835.00 and directed payment within five days. Main Case ECF No. 286; Kaplan Supp. Decl. ¶ 11. Those are implementation milestones, not abstractions.

The Debtors acknowledge that a Disclosure Statement has not yet been filed. That fact should not be overstated. The Disclosure Statement is being finalized in tandem with the Newport membership-interest transaction and related Newport on the Levee landlord-resolution documents because those terms affect cash components, assumed obligations, liquidation analysis, and feasibility disclosures. The Debtors anticipate filing both the Disclosure Statement and the motion to approve the Newport Membership Interest Purchase Agreement ("MIPA") within the next fourteen days. Kaplan Supp. Decl. ¶¶ 14-16. The absence of a filed Disclosure Statement today is not a license for Orange to capture a disputed funding source before this Court can supervise the claim and plan process.

Orange faces only a delay and participation in the bankruptcy case. The Debtors and the estate face loss of a specific funding source needed for administrative claims, approximately $350,000.00 in projected reorganization counsel fees through confirmation, the approved Consumer Privacy Ombudsman fee, NFS-related obligations and guaranty-supported payment streams, Newport transaction costs, and Class 5/Class 6 payments or reserves. Kaplan Supp. Decl. ¶¶ 17-20; Wanger Supp. Decl. ¶¶ 8-12. The Court should enter a short, narrow restraint, or at minimum a bridge order, preserving the funds until the Court can conduct any further hearing it deems necessary.

## II.    LEGAL STANDARD

Section 105(a) authorizes orders necessary or appropriate to carry out the Bankruptcy Code, and Bankruptcy Rule 7065 makes Civil Rule 65 applicable in adversary proceedings. Fed. R. Bankr. P. 7065 also permits a debtor or debtor in possession to obtain a temporary restraining order or preliminary injunction without complying with Rule 65(c)'s security requirement. A TRO or preliminary injunction must be specific

and bind only the parties, their agents, and persons in active concert or participation who receive actual notice. Fed. R. Civ. P. 65(d).

Under *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), the movant must show likelihood of success, likely irreparable harm, favorable equities, and public interest. The Ninth Circuit's serious-questions formulation permits relief where serious questions go to the merits, the balance of hardships tips sharply toward the movant, and irreparable harm and public interest are shown. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). For a § 105(a) injunction temporarily restraining non-debtor enforcement activity, the Chapter 11 success inquiry focuses on whether the debtor has a reasonable likelihood of successful reorganization. *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1094-96 (9th Cir. 2007).

This relief is different from a permanent non-debtor discharge. *In re American Hardwoods, Inc.*, 885 F.2d 621, 623-27 (9th Cir. 1989), and *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02 (9th Cir. 1995), bar permanent injunctions that function as non-debtor discharges; they do not bar temporary enforcement restraints through confirmation or further order. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), addressed nonconsensual plan releases and does not eliminate temporary § 105(a) relief preserving a live reorganization. The closest local analogue remains *In re PTI Holding Corp.*, 346 B.R. 820, 826-34 (Bankr. D. Nev. 2006), where this District entered temporary § 105(a) relief against guaranty litigation where the creditor had filed a proof of claim and the litigation threatened the debtor's reorganization.

**III. ARGUMENT**

**A.      Orange's opposition confirms the need for temporary sequencing relief.**

Orange has invoked this Court's claim-allowance jurisdiction by filing Proof of Claim No. 2 against Velocity Orlando for $5,810,321.22 and Proof of Claim No. 11 against Velocity Esports, Inc. for $2,377,910.22. The Verified Complaint places allowance, amount, reconciliation, credits, offsets, duplication, and statutory limitation of those claims directly at issue under §§ 502(b)(1) and 502(b)(6). Verified Compl. ¶¶ 2-3, 10, 35-44, 85-103. The Florida Guarantor Judgment does not adjudicate any of those estate-side issues; it is a capped personal-guaranty judgment against Kaplan and Wanger individually.

Orange is correct that filing a proof of claim does not automatically extend the automatic stay to non-debtors. That is not the Debtors' argument. The point is that Orange voluntarily invoked this Court's

claim-allowance process, and the Debtors now seek the formal temporary relief required by Rule 65 to prevent Orange from preempting that process through final garnishment relief. The Florida Guarantor Judgment may remain intact while this Court preserves the timing, accounting, and plan-treatment issues that only this Court can decide.

Orange's own state-court complaint confirms the distinction. Orange sued Kaplan and Wanger on a guaranty capped at $400,000.00, plus attorneys' fees and costs, based on alleged obligations arising from the Orlando lease. It did not obtain an allowance determination against Velocity Orlando or the Holding Company. Orange also relies on lease documents reflecting a $54,000.00 security deposit and $53,557.21 in prepaid rent, amounts that remain relevant to allowance, crediting, offset, and double-recovery prevention. Orange may litigate its guaranty rights, but its estate claims and all credits remain for this Court.

Orange's collect-first-credit-later proposal is the wrong sequence. A later credit may prevent double recovery, but it cannot restore lost plan liquidity, transaction timing, administrative solvency, or the Debtors' ability to seek Court-supervised use of available funding. This Court should preserve the funds while it determines the Orange Claims, rather than let one disputed Class 6 creditor overtake the bankruptcy process.

**B.     The record shows actual implementation progress and a reasonable likelihood of reorganization.**

Orange's no-progress narrative ignores the docket. The Las Vegas sale was not hypothetical. The Court approved the APA, the sale, the free-and-clear transfer, the Town Square lease assumption and assignment, certain equipment-lease assumptions and assignments, a partial Newtek distribution of $633,431.00, payment in full to Pawnee Leasing Corporation of $101,000.00, and NFS lease assignment treatment. Main Case ECF No. 269; Kaplan Supp. Decl. ¶¶ 6-11. That order is concrete evidence of transaction implementation and value preservation.

The same is true for NFS. The Court approved the NFS compromise, found the settlement fair and equitable and in the best interests of the Debtors, their estates, and creditors, and authorized and directed the Debtors to implement and consummate it. Main Case ECF No. 168; Kaplan Supp. Decl. ¶¶ 12-13. Kaplan and Wanger remain personally exposed on NFS-related guaranty and support obligations. Wanger Supp. Decl. ¶ 8. That Court-approved structure is not mere speculation; it is an existing implementation obligation requiring ongoing payment discipline and access to support liquidity.

The Newport transaction is also not a placeholder. The Debtors are finalizing a Newport membership-interest purchase agreement and related NOTL landlord-resolution documents. The transaction documents address membership-interest transfer mechanics, NOTL resolution conditions, continuing occupancy, landlord amounts, equipment obligations, pledge mechanics, insider consideration issues, and required Court approval. Kaplan Supp. Decl. ¶¶ 14-16. The fact that those documents are being finalized alongside the Disclosure Statement shows that feasibility disclosures are being coordinated with the transaction's actual economics.

The Debtors' projected plan-funding needs are real. They include administrative expenses, the approved Consumer Privacy Ombudsman fee of $12,835.00, approximately $350,000.00 in estimated reorganization counsel fees through confirmation, NFS-related obligations and arrearage/catch-up components, transaction-consummation costs, and Class 5/Class 6 payments or reserves. Verified Compl. ¶¶ 45-48; Kaplan Supp. Decl. ¶ 17; Wanger Supp. Decl. ¶¶ 9-12. A plan can rely on multiple implementation sources; it need not identify a single mandatory guarantor check at the TRO stage.

The question today is not whether Plan #2 is ready for confirmation tomorrow. It is whether there is a concrete reorganization path sufficient to prevent Orange from seizing a specific funding source before this Court can supervise that path. There is.

**C.     The harm is irreparable because it is harm to the Chapter 11 process, not a simple money dispute.**

Orange says this is only monetary harm to Wanger or the LRW Trust. That ignores the bankruptcy nexus. Merrill has already restricted accounts with an approximate value of $386,454.20, and Orange seeks final garnishment judgment for those funds plus $3,988.22 from Bank of America. Verified Compl. ¶¶ 55-63; Wanger Decl. ¶¶ 9-20; Wanger Supp. Decl. ¶¶ 4-7. If Orange obtains final garnishment judgment and receives the funds, the Debtors lose a material potential plan-support funding source before this Court can determine whether and how that liquidity should be used.

That harm cannot be repaired by damages or a later accounting entry. The funds are needed for Administrative Claims, Professional Fee Claims, the approved Consumer Privacy Ombudsman fee, NFS-related obligations, transaction costs, and Plan payments or reserves. Verified Compl. ¶¶ 9, 45-48, 63, 70-72; Kaplan Supp. Decl. ¶¶ 17-20; Wanger Supp. Decl. ¶¶ 9-12. A failed confirmation timeline, missed

Newport or NFS implementation milestone, or inability to fund administrative obligations cannot be undone by crediting Orange later. The timing is the harm.

Orange's contempt exhibit does not change that analysis. The Florida contempt order held Wanger in contempt for failing to provide a Florida Fact Information Sheet and failing to appear at a contempt hearing, and awarded $2,230 in fees. It did not adjudicate the Orange Claims, § 502(b)(6), credits, offsets, Plan treatment, trust ownership, trust reachability, or the propriety of temporary § 105(a) relief. Wanger does not ask this Court to excuse any obligation to comply with lawful orders; the bankruptcy question is whether Orange should obtain final turnover before this Court decides claim allowance and plan treatment. Wanger Supp. Decl. ¶ 14.

Nor is the harm speculative. Orange has a scheduled June 8, 2026 garnishment hearing and seeks final relief against identified funds. The existing Merrill restriction already interferes with liquidity, and final garnishment would convert that interference into unilateral collection. That is enough to justify a short preservation order pending further hearing.

**D.      The Rule 19 and trust arguments are curable and do not justify allowing the June 8 garnishment to proceed.**

Orange argues that the LRW Trust or Wanger as trustee is a necessary party. That objection overstates the immediate relief requested. The Debtors do not ask the Court to immediately bind the LRW Trust, adjudicate title to trust property, order the Trust to transfer funds, or compel Merrill to release funds. The immediate order can run in personam against Orange: Orange should not prosecute, obtain, enforce, or receive proceeds from final garnishment relief before this Court determines Orange's estate claims, credits, offsets, and Plan treatment.

The order would not create a new freeze on the LRW Trust. Orange's own writ already caused Merrill to restrict the accounts. The requested relief preserves the existing restraint from becoming payment to Orange, while protecting Merrill and Bank of America from competing directives. Any order should state that neither garnishee must release, transfer, liquidate, or disburse funds absent further order of this Court, order of the Florida court, or a written release, withdrawal, or stipulation sufficient under applicable law.

If the Court concludes that Wanger in his capacity as trustee or the LRW Trust should be joined for later preliminary-injunction proceedings, trust-reachability adjudication, or Court-supervised use relief, the

Debtors will promptly amend the complaint to join Wanger as trustee and/or the LRW Trust as nominal or limited-purpose defendants. Wanger Supp. Decl. ¶ 13. That curable issue is not a reason to let Orange obtain final garnishment judgment on June 8.

### E. Purdue, § 524(e), and the Anti-Injunction Act do not bar this limited relief.

Orange characterizes the Motion as a forbidden non-debtor injunction. It is not. The Debtors do not seek a plan-based release, a discharge of Kaplan or Wanger, or a permanent injunction lasting through the twenty-year Class 6 payment term. Plan #2 expressly preserves creditor rights against Non-Debtor Guarantors and provides that Non-Debtor Guarantors' Plan Contributions are not conditioned on any release, discharge, injunction, stay, or limitation of creditor rights. Verified Compl. ¶¶ 8, 38-40, 75-80. The requested relief is temporary, enforcement-only, and subject to further order.

Orange's Anti-Injunction Act argument should be addressed directly. The Debtors do not contend that § 2283 can be avoided merely by drafting an order against Orange rather than the Florida court; *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287 (1970), cautions otherwise. The answer is that, in bankruptcy, § 2283 either does not apply or is satisfied. The Ninth Circuit has held that a bankruptcy court is not a 'court of the United States' within 28 U.S.C. § 451. *Perroton v. Gray (In re Perroton)*, 958 F.2d 889, 893 (9th Cir. 1992). The Ninth Circuit BAP later recognized the resulting tension with *Matter of Federal Shopping Way, Inc.* and noted that it is unclear whether the Anti-Injunction Act applies to bankruptcy courts at all. *In re Birting Fisheries, Inc.*, 300 B.R. 489, 497 n.7 (B.A.P. 9th Cir. 2003).

Even if the Anti-Injunction Act applies, § 105(a) is an expressly authorized bankruptcy exception when used to carry out specific Code provisions. Under *Mitchum v. Foster*, 407 U.S. 225, 237-38 (1972), Congress need not recite § 2283 by name if it creates a specific federal right enforceable in equity that would be frustrated without injunctive power. Section 105(a), together with the claims-allowance process under § 502 and plan-confirmation process, supplies that authority here. See *In re Birting Fisheries, Inc.*, 300 B.R. at 497 n.7; *In re Parker*, 499 F.3d 616, 627-28 (6th Cir. 2007). Orange also filed proofs of claim, thereby triggering the allowance and disallowance process and subjecting itself to this Court's equitable power over that process. *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) ("by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power") (internal citations and quotations omitted).

*Matter of Federal Shopping Way, Inc.* is materially different. There, the bankruptcy court had sold the property, had no possession or jurisdiction over the title dispute after sale, had never adjudicated title, and had expressly reserved the title question for other proceedings. 717 F.2d 1264, 1272 (9th Cir. 1983). Here, this Court has active jurisdiction over Orange's proofs of claim, the § 502(b)(6) cap, credits, offsets, and plan treatment; no order has reserved those issues for Florida; and the requested relief preserves this Court's ability to decide them. The injunction is necessary to carry out specific Bankruptcy Code functions, not to supervise a state-court title dispute after the bankruptcy court has relinquished jurisdiction.

The limiting principle is clear. The Debtors do not seek to vacate the Florida Guarantor Judgment, adjudicate trust reachability, command the Florida court, or compel Merrill, Bank of America, or the LRW Trust to release funds. They seek a temporary restraint on Orange's receipt of garnishment proceeds until this Court can decide the bankruptcy issues Orange itself placed before the Court.

**F.      The equities, public interest, and bond analysis favor a short restraint or bridge order.**

Orange's injury is mere delay. Orange keeps its Florida Guarantor Judgment, its proofs of claim, its trust-reachability arguments, its claim-objection defenses, and its right to seek modification for cause. The Debtors and the creditor body face a different risk: loss of a specific potential funding source at the moment the Debtors are paying and preparing to pay concrete implementation obligations.

The public interest favors centralized claim allowance, prevention of double recovery, preservation of a feasible reorganization, and a sequence that lets this Court supervise any use of the funds. The public interest also respects valid judgments. The requested relief honors both interests by temporarily delaying enforcement without releasing the judgment, discharging non-debtors, or transferring funds to the Debtors, absent a further order.

No bond should be required. Bankruptcy Rule 7065 permits a debtor or debtor in possession to obtain TRO or preliminary-injunction relief without security under Rule 65(c). A substantial bond would undermine the Motion's liquidity-preservation purpose. If the Court determines that protection is appropriate, the better protection is narrow duration, prompt evidentiary hearing, preservation of the existing Merrill restriction, no release of funds to the Debtors absent further order, and at most nominal security calibrated to Orange's actual temporary-delay risk.

At minimum, if the Court wants a fuller evidentiary record, the proper answer is not to deny interim relief and allow Orange to take the funds first. A bridge order is still injunctive relief and the Debtors

- 9 -

recognize they must satisfy Rule 65; they have done so. The Court can enter a short bridge order restraining Orange from prosecuting or enforcing final garnishment relief until an evidentiary hearing, and may condition further proceedings on prompt joinder of Wanger as trustee or the LRW Trust if the Court deems that necessary. That approach preserves due process without allowing the June 8 Florida hearing to overtake this Court's jurisdiction.

## IV.    CONCLUSION

Orange filed claims in this Court and then sought to collect from the same underlying Orlando lease obligations through a separate garnishment path before allowance, credits, § 502(b)(6), Class 6 treatment, and plan implementation can be addressed. The Debtors ask only for a narrow, temporary, enforcement-only order that stops Orange from taking the money while preserving the Debtors' ability to seek Court-supervised use of the funds for plan implementation. The Court should grant the requested TRO, or at a minimum, a short bridge order, and require Orange to suspend or refrain from prosecuting the June 8, 2026, Florida garnishment hearing pending further order of this Court.

Respectfully submitted on June 4, 2026.

*/s/ Matthew I. Knepper, Esq.*
Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Brenden J. Gougeon, Esq.
Nevada Bar No. 16874
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228

*Attorneys for Plaintiffs/Debtors*