Matthew I. Knepper, Esq.
Nevada Bar No. 12796
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
*Attorneys for Plaintiffs/Debtors*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.: 25-12627-mkn |
| VELOCITY ESPORTS, INC., | Jointly Administered with |
| | Case No. 25-12628-mkn |
| ☐ Affects Velocity Esports, Inc. | Case No. 25-12629-mkn |
| ☐ Affects Velocity Esports Las Vegas Town Square, LLC | Case No. 25-12630-mkn |
| | Case No. 25-12631-mkn |
| ☐ Affects Velocity Esports Chicago Schaumburg, LLC | Chapter 11 |
| ☐ Affects Velocity Esports Newport Kentucky, LLC | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| ☐ Affects Velocity Esports Orlando Downtown, LLC | |
| ■ Affects All Debtors | |
| Debtor(s). | |
| VELOCITY ESPORTS, INC., a Nevada corporation, VELOCITY ESPORTS LAS VEGAS TOWN SQUARE, LLC, a Nevada limited liability company, VELOCITY ESPORTS CHICAGO SCHAUMBURG, LLC, an Illinois limited liability company, VELOCITY ESPORTS NEWPORT KENTUCKY, LLC, a Kentucky limited liability company, and VELOCITY ESPORTS ORLANDO DOWNTOWN, LLC, a Florida limited liability company, | Adversary No.: 26-01075-mkn |
| | Hearing Date: TBD |
| | Hearing Time: TBD |
| Plaintiffs, | |
| v. | |
| 434 N. ORANGE INVESTMENT, LLC, a Delaware limited liability company; | |

- 1 -

Defendant,

and

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, solely as nominal garnishee and stakeholder defendant for purposes of notice and implementation of injunctive relief,

Nominal Defendant.

## I.    INTRODUCTION[1]

Orange's Opposition attacks a record that no longer exists. Before Orange filed the Opposition on July 23, 2026, the Debtors had filed their Joint Chapter 11 Plan of Reorganization #2, the Disclosure Statement, and a detailed Feasibility / Liquidation Analysis. Main Case ECF Nos. 284, 294, 294-1. The Court conditionally approved the Disclosure Statement on July 10, 2026, authorized solicitation, established an August 19 voting and objection deadline, and set a combined hearing on final approval and confirmation for September 15, 2026. Main Case ECF No. 297. Yet the Opposition says "no disclosure statement has graced the docket," while elsewhere citing the filed Disclosure Statement. Opp. at 7, 14. That factual premise is demonstrably wrong.

Orange's other central premise - that Leonard R. Wanger has made only an "illusory" promise of unspecified support - is also superseded by the developed record. Wanger already supplied his Supplemental Declaration in Support of Emergency Motion for Temporary Restraining Order and Preliminary Injunction, which directly undercuts Orange's contention:

---

[1] The Debtor requests the Court take judicial notice of the Debtor's Bankruptcy proceeding pursuant to Federal Rules of Evidence ("FRE") 201, made applicable in bankruptcy proceedings pursuant to Bankruptcy Rule 9017. All references to "ECF No.", "Proof of Claim No.," or "Claim No." are to the numbers assigned to documents filed in these Chapter 11 Cases as they appear on the jointly administered docket in Case No. 25-12627-mkn maintained by the Clerk of the Court and, as applicable, the Court's claims registry. Unless otherwise indicated, all references to the "Code," "Chapter," "§," and "Section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005). References to "Rule" or "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("FRCP").

10. I understand that the Court has approved the Las Vegas sale transaction, approved payment of the Consumer Privacy Ombudsman's fees in the amount of $12,835.00, and approved the NFS compromise. I also understand that the Debtors estimate reorganization counsel's professional fees through confirmation at approximately $350,000.00.

11. These administrative and implementation obligations require liquidity. The Debtors are not seeking to divert money to me. The Debtors seek to preserve the ability to ask the Court to supervise plansupport uses of available funds, including administrative obligations, professional fees, NFS-related obligations, Newport transaction costs, and Class 5/Class 6 payments or reserves.

12. If Orange obtains final garnishment judgment and causes the Merrill funds to be transferred or committed to Orange before this Court acts, the Debtors will lose the opportunity to seek Court-supervised use of that liquidity for plan implementation. A later credit to Orange's claim would not restore the timing, liquidity, or implementation opportunities lost if the funds are taken first.

Adv. Dkt. 17-2 at ¶¶10-12.

Debtors are also filing a separately noticed supplemental motion seeking approval and implementation of Wanger's binding and irrevocable contribution commitment (the "Supplemental Funding Motion") and Wanger's declaration in his individual capacity and as trustee of the LRW Revocable Trust (the "Wanger Contribution Declaration"). The commitment is effective and irrevocable upon execution, identifies the restricted accounts, fixes the permitted uses, creates no reimbursement or other claim against the Debtors, and is not conditioned on a release, discharge, settlement, equity interest, or confirmation outcome.

The Debtors are not asking the Court to direct Merrill Lynch to wire funds based on this Reply. The separately filed Supplemental Funding Motion supplies the particularized request, notice, evidentiary record, Rule 65 findings, payment conditions, and implementation language required for any direct disbursement. This Reply addresses the pending preliminary injunction motion and explains why the final injunction should preserve the residual restricted funds, prevent Orange from defeating the Court-supervised contribution process, and expressly permit compliance with any separate order approving specified administrative-expense payments.

The requested injunction does not extend the automatic stay, vacate the Florida judgment, adjudicate ownership or reachability of the LRW Trust, discharge Wanger or Kaplan, or permanently bar Orange from collecting. Orange retains its judgment, proofs of claim, objections, trust-reachability positions, appellate

rights, and right to seek modification for cause. The injunction is temporary and process-protective: it preserves the Court's ability to decide estate-side claim allowance, plan treatment, and a separately noticed plan-support contribution before Orange converts the identified fund into irreversible collection proceeds.

This is the kind of temporary sequencing relief recognized by *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086 (9th Cir. 2007), and *In re PTI Holding Corp.*, 346 B.R. 820 (Bankr. D. Nev. 2006). Orange's arguments may support careful tailoring, a defined duration, and meaningful safeguards. They do not support allowing Orange to take the fund first and forcing this Court to address the bankruptcy consequences after the only identified near-term plan-support liquidity is gone.

## II.    LEGAL STANDARD

A preliminary injunction requires a likelihood of success, likely irreparable harm, a favorable balance of equities, and consistency with the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In a section 105(a) request restraining action against a non-debtor, the ordinary Rule 65 standard applies, with likelihood of success measured by the debtor's reasonable likelihood of a successful reorganization. *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1094-96 (9th Cir. 2007). The Debtors satisfy that standard without relying on a relaxed or alternative formulation.

Orange acknowledges the controlling *Excel Innovations* rule and preserves an appellate argument that the Ninth Circuit is wrong. Opp. at 4-5 & n.1. That preservation argument does not alter the law this Court must apply. *Excel Innovations* expressly declined the conflicting Seventh Circuit approach on which Orange relies, and Orange's nonbinding *FiberTower* authority cannot override controlling Ninth Circuit precedent.

The closest District of Nevada authority is *PTI Holding*. There, after the creditor filed a proof of claim and pursued guaranty litigation against non-debtor principals, the court asked whether the outside action would affect the estate or reorganization in a legally cognizable manner, whether reorganization was reasonably likely, and how the competing harms should be balanced. 346 B.R. at 826-34. Once a cognizable effect was shown, the court emphasized practical tailoring: limited duration, progress conditions, preservation of creditor rights, and restrictions protecting the disputed assets. *Id.* at 827, 831-34. Rule 7065

also permits a debtor in possession to obtain preliminary relief without the security otherwise required by Civil Rule 65(c).

### III. ARGUMENT

#### A. Orange's opposition rests on factual premises contradicted by the filed record.

Orange says the Debtors have made "scant discernable progress," that the Disclosure Statement does not identify the LRW Trust or explain funding, and later that no Disclosure Statement had been filed. Opp. at 7-9, 14. The chronology is the opposite. The Plan was filed at ECF No. 284. The Disclosure Statement and Feasibility / Liquidation Analysis were filed at ECF Nos. 294 and 294-1 on July 8. The Conditional Approval Order was entered at ECF No. 297 on July 10. Orange filed the Opposition on July 23. The Court-authorized solicitation process is underway, with the confirmation record set to mature on a fixed schedule. The Disclosure Statement, Plan, and Feasibility Analysis directly addresses the funding issue Orange says is absent. The Disclosure Statement expressly states that:

> The Plan is materially dependent on support, cooperation, and plan contributions from Philip N. Kaplan and Leonard R. Wanger or their affiliates. Those contributions are intended to help bridge liquidity needs, facilitate the transactions contemplated by the Plan, and support payment of obligations required for plan consummation. The Plan characterizes such contributions as new value or capital contributions rather than as distributions on account of insider debt.

ECF No 294 at 17.  In turn the Plan provides that:

> The Debtors' proposed restructuring depends materially on consummation of the Las Vegas transaction and the Newport transaction and on the continued availability of support, cooperation, and Non-Debtor Guarantors' Plan Contributions from Philip N. Kaplan and Leonard R. Wanger.

ECF No. 284 at 1. *See also id.* at 32 (4.1.3 Non-Debtor Guarantors' Plan Contributions and 4.1.4 Material Dependence on Support, Cooperation, and Contributions).

The Disclosure Statement's consolidated implementation table identifies the restricted Merrill funds as an anticipated $386,454 Wanger contribution, identifies administrative claims and professional fees as a near-term implementation use, and explains that non-debtor guarantor support is intended to provide transaction funding, management continuity, claim-reconciliation support, and liquidity. Main Case ECF No. 294-1 at 13, 15, 17, 22, Tables 1, 3, 5. The narrative likewise explains that guarantor contributions may

be formalized by declaration, agreement, Plan Supplement, budget, or Court order before confirmation. *Id.* at 3 ("potential voluntary funding from the NonDebtor Guarantors is a material component of Plan implementation and consummation"), 5 ("Table 3, by contrast, is an implementation liquidity bridge that assumes . . . approval and availability of Non-Debtor Guarantors' Plan Contributions").

The docket also reflects completed and pending implementation milestones. The Las Vegas sale closed after Court approval, with proceeds applied to secured and transaction obligations. Main Case ECF No. 269; ECF No. 294-1, Ex. 1 at 2, 13. The NFS compromise was approved and remains part of the Plan's implementation structure. Main Case ECF No. 168. The Newport MIPA and NOTL resolution are expressly identified as continuing implementation components, not undisclosed concepts. Main Case ECF No. 294 at 16; ECF No. 294-1, Ex. 1 at 2-4, 13-15. Orange may challenge those matters at confirmation, but it cannot fairly characterize them as nonexistent.  And Motion to approve the Newport MIPA and NOTL Resolution at pending before this Court. ECF Nos. 299, 326, respectively.

**B.      The Debtors have shown a reasonable likelihood of a successful reorganization.**

Orange treats the preliminary injunction as a confirmation trial. *Excel Innovations* requires a reasonable likelihood of successful reorganization, not proof that every disputed claim, transaction, classification, feasibility assumption, and plan term will survive confirmation unchanged. 502 F.3d at 1096-97. *PTI Holding* likewise asks whether the debtor is a likely candidate for reorganization and has taken meaningful steps toward that result. 346 B.R. at 830-31. The Plan, Disclosure Statement, conditional approval, solicitation schedule, completed Las Vegas sale, approved NFS compromise, pending Newport transactions, and fixed September 15 combined hearing readily satisfy that interim standard.

Orange's section 1129(a)(7) argument also applies the wrong comparison. The best-interests test compares the distribution an impaired creditor would receive under the Plan with what that creditor would receive in a hypothetical chapter 7 liquidation of the relevant Debtor's estate. It does not add a non-debtor guarantor's personal or trust assets to the Debtor's chapter 7 estate. Orange's asserted ability to collect from Wanger may affect satisfaction, credits, and the amount remaining due; it does not become the chapter 7 comparator under section 1129(a)(7). The filed Liquidation Analysis separately excludes non-debtor guarantor assets unless actually contributed and concludes that no residual chapter 7 distribution is projected for Class 6. Main Case ECF No. 294-1, Ex. 1 at 5, 9.

Orange's own arithmetic further undercuts its assertion of a certain $400,000 recovery. The reported Merrill and Bank of America balances cited in the Opposition total approximately $390,442.42, not $400,000; the Merrill accounts include securities subject to fluctuation; and entitlement to reach trust assets has not been finally adjudicated. Opp. at 6-8. Orange is entitled to litigate its garnishment position, but a disputed, fluctuating collection prospect cannot be substituted for the statutory best-interests analysis.

The 20-year Class 6 treatment, present-value issues, feasibility projections, and Orange's claim amount remain proper subjects for confirmation and claim-allowance litigation. The Debtors do not ask the Court to decide them now. The Plan expressly conditions Class 6 payments on allowance and all required reductions and credits; preserves Orange's non-debtor guaranty rights absent a separate order or agreement; and requires credit for guarantor recoveries to prevent double recovery. Main Case ECF No. 284 §§ 3.8.2.1, 4.1.3-4.1.4; ECF No. 294 at 15, 25; ECF No. 294-1, Ex. 1 at 3, 10, 15-20. Those provisions show a structured process, not the absence of one.

The Court's Conditional Approval Order did not adjudicate confirmation, and the Debtors do not suggest otherwise. It did, however, determine that the Disclosure Statement contained adequate information for solicitation and established a concrete path to a September 15 combined hearing. Main Case ECF No. 297 at 2-7. That is powerful evidence that a real reorganization process is underway.

District of Nevada authority confirms that a filed disclosure statement, solicitation process, and scheduled confirmation hearing are meaningful reorganization milestones even though final adequacy and confirmation remain open. See *In re Islet Sciences, Inc.*, 640 B.R. 425 (Bankr. D. Nev. 2022); *In re Islet Sciences, Inc.*, 2021 WL 2005462 (Bankr. D. Nev. Mar. 17, 2021). The present case has moved beyond a hypothetical plan and into Court-supervised solicitation on a defined evidentiary schedule.

**C.    The threatened injury is to the reorganization process, not merely to Wanger's balance sheet.**

The Debtors accept the general rule that an ordinary monetary loss, recoverable through damages, ordinarily is not irreparable. The broader rule remains uncontroversial. The issue is whether the threatened injury here is only a loss of money to Wanger. It is not.

The Wanger's commitment to contribute the Merrill funds converts the restricted fund from a speculative possibility into a specifically identified source of implementation liquidity, subject to Court

approval. The Court has already allowed the Consumer Privacy Ombudsman's $12,835 compensation, which remains unpaid. Main Case ECF No. 286; Wanger Contribution Decl. ¶ 12. NBA's pending interim application, after an agreed voluntary reduction, seeks $373,249.45 in fees and $2,286.70 in expenses, and the United States Trustee does not object to the reduced request while preserving final-review rights. Main Case ECF Nos. 302, 324. These are identifiable administrative obligations tied to continued administration and confirmation, not an abstract preference for holding cash.

Loss of a funding source at the point it is needed to pay allowed administrative expenses and maintain the confirmation process is structurally different from an ordinary damages claim. *American Hardwoods* likewise recognized the legally cognizable effect that guaranty enforcement may have on a debtor's reorganization, even though it ultimately prohibited permanent discharge-like relief. 885 F.2d 621, 623-27 (9th Cir. 1989). *PTI Holding* applied that distinction to grant temporary relief where guaranty enforcement threatened the reorganization and claims process. 346 B.R. at 827-34.

Recent bankruptcy decisions illustrate the distinction. *In re Eachpole, Inc.*, denied injunctive relief where the asserted financial injuries could be remedied by a damages judgment and debtors were in a liquidation bankruptcy, where no ongoing reorganization funding mechanism would be destroyed. 2025 WL 351823 *121 (Bankr. D. Nev. Jan. 24, 2025). *In re Woodside Group, LLC*, by contrast, found irreparable harm as to non-debtor shareholders whose identified funds were tied to a concrete transaction requiring cash, while declining relief as to others supported only by generalized dissipation concerns. 427 B.R. 817, 849 (Bankr. C.D. Cal. 2010). Wanger's executed, irrevocable commitment and the specified administrative uses place this case on the concrete side of that line.

Nor would a later credit against Orange's estate claim cure that injury. A credit can prevent double recovery. It cannot restore liquidity after Orange has collected it, compel Orange to fund the case, or reverse a failed transaction or confirmation process. The Opposition's "collect now, credit later" proposal therefore addresses accounting but not irreparable timing harm.

**D.    The balance of hardships and public interest favor a carefully tailored injunction, not an indefinite restraint.**

A preliminary injunction delays enforcement of a valid Florida judgment, and, if the separately noticed Supplemental Funding Motion is granted, the specified payments would substantially reduce the

- 8 -

fund against which Orange asserts garnishment rights. That is real prejudice. It is also why the Debtors are not attempting to obtain disbursement through a reply memorandum and why instead the forthcoming Supplemental Funding Motion requests independent Rule 65 findings, particularized notice, a binding contribution record, and implementation safeguards.

The proposed safeguards materially narrow the burden. Orange retains its judgment and all unresolved garnishment, priority, claim, and appellate arguments. No non-debtor release or discharge is requested. No funds are paid to Wanger, the Trust, Kaplan, or another insider. Payment to NBA remains conditioned on a separate fee order and subject to final review and disgorgement.

The preliminary injunction itself can be limited to the earlier of confirmation, dismissal or conversion, or further order; can preserve Orange's right to seek modification for cause; and can require periodic status reporting if the Court considers that useful. It should preserve the residual fund while expressly providing that nothing in the injunction prohibits compliance with a separate order approving the Wanger contribution and specified payments. This is the kind of narrow tailoring required by *PTI Holding* and the Supreme Court's instruction that equitable relief be molded to the exigencies of the particular case. 346 B.R. at 827, 834; *Trump v. International Refugee Assistance Project*, 582 U.S. 571, 580 (2017).

The public interest independently favors short, reviewable preservation. In *In re Station Casinos, Inc.*, the court recognized successful reorganization and continued operation as public interests worthy of protection. 2010 WL 11820664 (Bankr. D. Nev. Jan. 29, 2010). Here, preserving administrative solvency and a Court-supervised confirmation process protects the creditor body and the remaining operating platform; it does not establish that the Debtors will prevail at confirmation or permanently displace Orange's collection rights.

Orange's delay argument does not tip the equities. The initial first-day motion was not an adjudication and did not waive later relief through the proper adversary procedure. The immediate threat materially changed when Orange moved from a contingent guaranty action to final garnishment of identified accounts. The Debtors sought relief when collection became imminent. Since entry of the TRO, Orange twice stipulated to continuation of the hearing and executed a third stipulation extending the status quo through August 12, which remains pending entry. ECF Nos. 27, 31; Third Stipulation Pending. That history is inconsistent with a claim that temporary preservation has imposed intolerable or surprise prejudice.

No bond should be required. Rule 7065 expressly permits a debtor or debtor in possession to obtain preliminary injunctive relief without complying with Rule 65(c). If the Court nevertheless concludes that protection is appropriate, narrow duration, retention of residual restrictions, a prompt confirmation schedule, a stay opportunity, and continuing disgorgement exposure are better calibrated than a substantial bond that would itself consume scarce implementation liquidity.

E.   ***Purdue* does not eliminate temporary preconfirmation relief recognized by binding Ninth Circuit law.**

Orange extends *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), beyond its holding. *Purdue Pharma* addressed a plan that permanently released and enjoined claims against non-debtor owners without the affected claimants' consent. It did not decide whether a bankruptcy court may enter a temporary preliminary injunction preserving a reorganization while rights remain intact. The relief here neither discharges Orange's judgment nor releases Wanger, Kaplan, or the Trust. It expires no later than confirmation unless a different lawful and separately supported order is entered.

Binding Ninth Circuit law already distinguishes temporary process-protective relief from permanent non-debtor discharges. *Excel Innovations* recognizes temporary section 105(a) injunctions and requires the ordinary preliminary-injunction showing. 502 F.3d at 1094-96. *American Hardwoods* recognized related-to jurisdiction and the availability of temporary relief while rejecting a permanent injunction that functioned as a discharge. 885 F.2d at 623-27. *Purdue Pharma* did not overrule those holdings. Orange's contention that all temporary third-party injunctions silently disappeared in 2024 cannot be reconciled with the limited question the Supreme Court decided.

Nor does *In re Linda Vista Cinemas, L.L.C.*, 442 B.R. 724 (Bankr. D. Ariz. 2010), erase that distinction. *Linda Vista* rejected a plan provision that barred guaranty enforcement for the duration of the plan while the guarantors performed over time. The injunction requested here ends at confirmation, does not dictate postconfirmation treatment, and preserves Orange's judgment and collection rights absent a later lawful order.

F.   **The Anti-Injunction Act and *Federal Shopping Way* do not bar the requested relief.**

The Debtors do not rely solely on the proposition that an order directed to Orange rather than the Florida court falls outside 28 U.S.C. § 2283, and they do not invoke section 105(a) as a roving power to

override explicit Code limitations. Assuming the Anti-Injunction Act applies, bankruptcy authorities recognize that section 105(a), when tied to specific Bankruptcy Code functions and applied through Rule 7065, may supply express congressional authorization and may support relief necessary in aid of bankruptcy jurisdiction. *In re Birting Fisheries, Inc.*, 300 B.R. 489, 497 n.7 (B.A.P. 9th Cir. 2003); *In re City of San Bernardino, California*, 566 B.R. 46 (Bankr. C.D. Cal. 2017). There is also a threshold Ninth Circuit issue because a bankruptcy court is not a "court of the United States" as that phrase is defined in 28 U.S.C. § 451. *Perroton v. Gray (In re Perroton)*, 958 F.2d 889, 893 (9th Cir. 1992).

This case does not present federal interference merely because a state action may alter the allocation of assets. Orange filed substantial proofs of claim against Velocity Orlando and Velocity Esports, Inc.; those claims remain subject to allowance, duplication analysis, credits, offsets, § 502(b)(6), and Plan treatment under § 502. Filing those proofs of claim does not automatically stay guaranty collection or waive Orange's judgment, but it does place the estate claims within this Court's claims-allowance process. The Court also has an active Plan, a conditionally approved Disclosure Statement, an ongoing solicitation, and a fixed confirmation hearing. The injunction protects those specific bankruptcy functions rather than asserting a generalized preference for bankruptcy over state-law collection.

*Matter of Federal Shopping Way, Inc.*, 717 F.2d 1264 (9th Cir. 1983), is materially different and does not control the different record here. In *Federal Shopping Way*, the bankruptcy court had sold the property, had not adjudicated the underlying title dispute, and lacked an active reorganization nexus sufficient to support the injunction. 717 F.2d at 1270-74. Here, the estate-side Orange claims, the Plan, administrative solvency, and the proposed contribution are all presently before this Court. The effect is concrete.

The requested injunction also leaves the Florida judgment intact. It does not command the Florida court to vacate or reconsider anything. It temporarily restrains Orange's enforcement while this Court performs bankruptcy functions and considers a separately noticed voluntary contribution. That relief fits the recognized bankruptcy exception far more closely than the generalized asset-allocation theory rejected in *Federal Shopping Way*.

**G.      Rule 19 does not require denial of the preliminary injunction.**

Orange's Rule 19 argument conflates restraint of Orange with adjudication of the Trust's rights. The preliminary injunction can afford complete relief among the existing parties by restraining Orange from prosecuting, enforcing, receiving, or taking affirmative action to defeat the preserved status quo. It need not adjudicate whether the LRW Trust is reachable, determine title, impose liability on the Trust, or compel the Trust to transfer property. Those issues remain expressly reserved.

The developed record also eliminates any practical risk that the Trust's interests are being adjudicated without its knowledge or consent. In support of the forthcoming Supplemental Funding Motion, Wanger appears in his trustee capacity in the Wanger Contribution Declaration, confirms his authority to bind the Trust, consents to this Court's jurisdiction over enforcement of the commitment, reserves all ownership, reachability, attachment, and priority defenses not necessary to the voluntary contribution, and consents to limited-purpose joinder or intervention if the Court determines that formal party status is required. Wanger Contribution Decl. ¶¶ 2-8, 13-17, 27-33.

If the Court concludes that formal party status is required before affirmative contribution relief may be entered, Rule 19 supplies a curable procedural issue, not a basis to deny all interim relief. Joinder is feasible, and Wanger expressly consents to limited-purpose joinder or intervention in his trustee capacity. Wanger Contribution Decl. ¶ 32. The Court may permit prompt amendment, intervention, or limited-purpose joinder while preserving the injunction against Orange. See *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (describing Rule 19's sequential, pragmatic inquiry); *Alto v. Black*, 738 F.3d 1111, 1125-26 (9th Cir. 2013). Orange itself concedes joinder is readily feasible. Opp. at 15-16. The remedy for a readily curable issue is joinder, not immediate dissipation of the disputed fund.

**H.      Rooker-Feldman, full faith and credit, and Wanger's ability to file bankruptcy do not answer the motion.**

The Debtors agree that this Court is not sitting as an appellate court over the Florida default judgment. The judgment remains valid and enforceable subject to lawful stays and injunctions. The Debtors do not seek to reduce it through a claim objection or to relitigate Wanger's personal guaranty liability. The separate question is the amount and treatment of Orange's claims against the Debtors' estates and the temporary effect of enforcement on reorganization. Determining an estate claim under section 502, applying

- 12 -

section 502(b)(6), and requiring legally appropriate credits do not constitute appellate review of the Florida judgment.

Nor is a personal bankruptcy by Wanger a statutory prerequisite to relief. If that were the exclusive mechanism, *Excel Innovations*, *American Hardwoods*, and *PTI Holding* would have no field of operation. Section 105(a) and Rule 7065 exist precisely because the automatic stay ordinarily does not protect non-debtors and because temporary relief may nevertheless be necessary in a sufficiently supported chapter 11 case.

Orange is not being singled out merely because the Debtors dislike its collection efforts. Orange is the creditor that filed substantial claims arising from the same Orlando lease and then pursued immediate garnishment of the specifically identified fund now committed to implementation. That combination creates the legally cognizable nexus absent from ordinary guaranty enforcement. The Court can preserve Orange's rights while preventing the collection sequence from overtaking the bankruptcy process.

## IV.    REQUESTED RELIEF

The Court should grant the Motion for Preliminary Injunction as supplemented by the developed record. The injunction should remain effective until the earlier of the Confirmation Date, dismissal or conversion of the Chapter 11 cases, or further order; restrain Orange and persons bound under Rule 65(d)(2) from prosecuting, obtaining, enforcing, or receiving turnover of the restricted Merrill and Bank of America funds; preserve Orange's right to seek modification or a stay; and preserve all rights concerning the Florida judgment, trust reachability, garnishment attachment and priority, Orange's proofs of claim, and confirmation.

The injunction should also state that it does not prohibit compliance with a separate order approving Wanger's contribution and authorizing specified payments after notice and independent findings. The Debtors do not ask the Court to order those payments through this Reply. The Supplemental Funding Motion is the procedural vehicle for that affirmative relief. If the Court concludes that further joinder or evidence is required, it should preserve the injunction for the short period necessary to complete that process rather than allow Orange to collect first.

- 14 -

## V.   CONCLUSION

Orange's Opposition depends on three propositions: no filed disclosure statement, no concrete reorganization path, and no binding Wanger contribution. The docket and concurrent evidence answer each one. The Plan and Disclosure Statement are filed; solicitation is underway; confirmation is scheduled; the feasibility record identifies the restricted funds and their implementation function; and Wanger has executed an irrevocable, non-recourse contribution commitment. The remaining legal objections support a narrow order with safeguards, not denial. The Court should grant the preliminary injunction and preserve its ability to decide the separately noticed contribution and disbursement request on a complete record.

Respectfully submitted on August 5, 2026.

*/s/ Matthew I. Knepper, Esq.*
Matthew I. Knepper, Esq.
Nevada Bar No. 12796
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228

- 14 -