Matthew I. Knepper, Esq.
Nevada Bar No. 12796
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
*Attorneys for Plaintiffs/Debtors*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>VELOCITY ESPORTS, INC.,<br><br>☐ Affects Velocity Esports, Inc.<br>☐ Affects Velocity Esports Las Vegas Town Square, LLC<br>☐ Affects Velocity Esports Chicago Schaumburg, LLC<br>☐ Affects Velocity Esports Newport Kentucky, LLC<br>☐ Affects Velocity Esports Orlando Downtown, LLC<br>■ Affects All Debtors<br><br>        Debtor(s). | Case No.: 25-12627-mkn<br><br>Jointly Administered with<br>Case No. 25-12628-mkn<br>Case No. 25-12629-mkn<br>Case No. 25-12630-mkn<br>Case No. 25-12631-mkn<br><br>Chapter 11<br><br>**PLAINTIFFS' SUPPLEMENTAL MOTION TO APPROVE AND IMPLEMENT LEONARD R. WANGER'S BINDING IRREVOCABLE PLAN-SUPPORT CONTRIBUTION; TO AUTHORIZE SPECIFIED DIRECT DISBURSEMENTS FROM RESTRICTED MERRILL LYNCH AND BANK OF AMERICA FUNDS; AND FOR RELATED RELIEF** |
| VELOCITY ESPORTS, INC., a Nevada corporation, VELOCITY ESPORTS LAS VEGAS TOWN SQUARE, LLC, a Nevada limited liability company, VELOCITY ESPORTS CHICAGO SCHAUMBURG, LLC, an Illinois limited liability company, VELOCITY ESPORTS NEWPORT KENTUCKY, LLC, a Kentucky limited liability company, and VELOCITY ESPORTS ORLANDO DOWNTOWN, LLC, a Florida limited liability company,<br><br>        Plaintiffs,<br><br>v. | Adversary No.: 26-01075-mkn<br><br>Hearing Date: OST Requested<br>Hearing Time: OST Requested |

- 1 -

434 N. ORANGE INVESTMENT, LLC, a Delaware limited liability company;

Defendant,

and

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, solely as nominal garnishee and stakeholder defendant for purposes of notice and implementation of injunctive relief,

Nominal Defendant.

## I. INTRODUCTION[1]

Plaintiffs hereby move for entry of a funding order approving Leonard R. Wanger's binding contribution and authorizing the defined payments described below. The Joint Plan, Disclosure Statement, and Feasibility / Liquidation Analysis are filed; the Disclosure Statement has been conditionally approved and solicitation is underway; a confirmation hearing is set; the Consumer Privacy Ombudsman's award is allowed but unpaid; NBA's interim fee request has been reduced through an agreement with the United States Trustee; and Wanger has executed an immediately binding, irrevocable, non-reimbursable contribution commitment identifying the exact accounts, uses, sequence, and limitations. Wanger Decl. passim; Knepper Decl. ¶¶ 6-15.

The requested primary sequence is straightforward. Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill") would first pay the Court-allowed $12,835.00 Consumer Privacy Ombudsman

---

[1] Debtors request the Court take judicial notice of the Debtors' Bankruptcy proceeding pursuant to Federal Rules of Evidence ("FRE") 201, made applicable in bankruptcy proceedings pursuant to Bankruptcy Rule 9017. All references to "ECF No.", "Proof of Claim No.," or "Claim No." are to the numbers assigned to documents filed in these Chapter 11 Cases as they appear on the jointly administered docket in Case No. 25-12627-mkn maintained by the Clerk of the Court and, as applicable, the Court's claims registry. Unless otherwise indicated, all references to the "Code," "Chapter," "§," and "Section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005). References to "Rule" or "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("FRCP").

award. After entry of the separate order allowing NBA's interim compensation, Merrill would wire or otherwise forward the remaining authorized Merrill balance directly to Nevada Bankruptcy Attorneys, LLC, up to the allowed amount. Bank of America, N.A. ("Bank of America") would pay the resulting shortfall only if it consents, appears, or otherwise may lawfully be bound. If Bank of America cannot implement the shortfall payment, Merrill would pay the Ombudsman first and then pay its remaining restricted balance to NBA, with any unpaid NBA amount remaining to be collected from Debtors. Wanger Decl. ¶¶ 17-20; Knepper Decl. ¶¶ 13-15.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Original Motion and TRO Preserved the Funds and Expressly Contemplated Further Relief.

1. Orange obtained a Florida guaranty judgment against Wanger and Philip Kaplan and caused writs of garnishment to issue to Merrill and Bank of America. Merrill's Answer identifies accounts ending 0011, 0012, 0014, and 1628, with an aggregate reported value of approximately $386,454.20 as of March 9, 2026. The record also identifies approximately $3,988.22 at Bank of America.  Wanger Decl. at ¶ 4.

2. The original preliminary-injunction motion, ECF No. 3, sought preservation of those funds while the Debtors developed the reorganization record and requested that Merrill and Bank of America not be compelled to release funds absent a further order. The Court entered the June 5, 2026 TRO at Adv. Dkt. No. 19, maintained the existing account restrictions, and likewise stated that no release, liquidation, transfer, or payment was authorized absent further order or sufficient release. The TRO did not preapprove the payments requested here. Knepper Decl. ¶ 3.

3. The Court entered stipulated extension orders at Adv. Dkt. Nos. 28, 32, and 39. The parties anticipate that the TRO will remain effective only through the August 12, 2026 hearing and will then expire or be superseded by the Court's preliminary-injunction ruling. Knepper Decl. ¶ 4.

4. 434 N. Orange Investment, LLC's ("Orange") Opposition to Preliminary Injunction principally argues that the funds are non-estate trust assets; Wanger had made no binding contribution; the reorganization record was insufficient; the asserted injury was monetary; the Trust was not a party; and the Court could not impair Orange's state-law remedies. Opp. at 2-16. This Supplemental Motion presents the

additional evidence and the separate affirmative request necessary for the Court to decide them after notice and hearing.

**B.** **The Filed Plan Record Identifies the Contribution and Its Administrative-Solvency Function.**

5. The Debtors filed Joint Chapter 11 Plan of Reorganization #2 at Main Case ECF No. 284. The Plan permits Allowed Administrative Claims to be paid on a date fixed by the Court and provides that voluntary insider funding does not create repayment, reimbursement, contribution, subrogation, indemnity, administrative-expense, or similar rights. Plan §§ 2.2.1, 3.9.2.3.

6. The Debtors filed the Disclosure Statement and Feasibility / Liquidation Analysis at Main Case ECF Nos. 294 and 294-1. The Court conditionally approved the Disclosure Statement for solicitation, established an August 19, 2026 voting and objection deadline, and set the combined final-approval and confirmation hearing for September 15, 2026. Main Case ECF No. 297; Knepper Decl. ¶¶ 6-7.

7. The Feasibility / Liquidation Analysis identifies approximately $386,454.00 in restricted Merrill value as a Wanger non-debtor guarantor contribution subject to Court order and models non-debtor support as a source for administrative and professional payments, transaction implementation, and reserves. It further explains that the commitment may be formalized by declaration, agreement, Plan Supplement, budget, or Court order. Main Case ECF No. 294-1, Ex. 1, Tables 3, 6, and 7; Wanger Decl. ¶¶ 9-12.

8. The filed record therefore does not ask the Court to preserve a hypothetical future donation. It identifies existing restricted accounts, a disclosed implementation function, a fixed confirmation schedule, and an executed contribution agreement. The Court may still scrutinize feasibility and confirmation; the point here is that the contribution is concrete enough to be evaluated and enforced now.

**C.** **The Allowed and Requested Administrative Payments Are Defined.**

9. NBA filed its First Interim Fee Application at Main Case ECF No. 302. The application states that NBA may be paid only from lawfully available funds and that the Debtors would seek separate authority in this adversary proceeding for use of the restricted accounts. NBA does not ask this Supplemental Motion to determine fee allowance.

10. After consultation, the United States Trustee filed the Notice of Voluntary Reduction at Main Case ECF No. 324. NBA's reduced request is $373,249.45 in fees and $2,286.70 in expenses, for a total of

$375,536.15. The United States Trustee does not object to the reduced request while preserving rights concerning later applications. The fee application is set for August 12, 2026, at 11:00 a.m. Knepper Decl. ¶¶ 10-12.

11. The Court previously allowed Alan Chapell's first and final compensation as Consumer Privacy Ombudsman in the amount of $12,835.00 at Main Case ECF No. 286. The award remains unpaid, and Chapell has agreed to defer collection pending the Court's ruling on this Supplemental Motion. Knepper Decl. ¶¶ 8-9.

12. The reduced NBA request and Ombudsman award total $388,371.15. Using the account values presently in the record, the Merrill value alone is approximately $1,916.95 short, while the identified Bank of America funds are sufficient to cover the modeled difference. Account values remain subject to market fluctuation and final implementation calculations. Wanger Decl. ¶¶ 4-6, 17-20; Knepper Decl. ¶ 13.

13. The preferred structure is direct payment. Merrill would wire the Ombudsman award to Chapell and, after entry of the fee order, wire the remaining authorized Merrill amount to NBA's account under secure written instructions acceptable to Merrill. Bank of America would be used only for the remaining shortfall and only if it consents, appears, or otherwise may lawfully be bound. Knepper Decl. ¶ 14.

### D. Wanger Has Executed a Presently Binding and Irrevocable Contribution Commitment.

14. Wanger is the settlor and trustee of the LRW Revocable Trust and represents that he has authority to direct and contribute the Trust's interest in the identified Merrill accounts without additional approval. He commits the entire restricted Bank of America value to the permitted uses to the extent those funds are owned or controlled by him. Wanger Decl. ¶¶ 2, 6.

15. The commitment is effective, binding, and irrevocable upon execution. Entry of an authorizing order is a condition to performance because the accounts are restricted, not a condition to the existence or enforceability of the commitment. Wanger will not revoke, withdraw, countermand, transfer, or further encumber the committed interests while the request or any review remains pending. Wanger Decl. ¶¶ 13-16.

16.    The agreement identifies the property, maximum sources, permitted recipients, primary sequence, fallback, and implementation authority. It is not a loan, is not offered as judicial new value, is not conditioned on a release, settlement, claim treatment, equity, governance rights, or confirmation outcome, and creates no repayment, contribution, subrogation, indemnity, lien, priority, administrative claim, or other right against a Debtor. Wanger Decl. ¶¶ 17-28.

17.    Wanger reserves ownership, trust-reachability, attachment, and priority defenses not necessary to the voluntary contribution; consents to this Court's jurisdiction over enforcement of the commitment; and consents to limited-purpose joinder or intervention if the Court determines formal party status is required. Wanger Decl. ¶¶ 3, 29-31.

## III.    JURISDICTION AND LEGAL STANDARD

The Court has jurisdiction under 28 U.S.C. §§ 1334 and 157. The pending adversary proceeding, the Court's consideration of preliminary injunctive relief, administration of the Chapter 11 cases, and allowance and payment of administrative claims arise in or relate to the Chapter 11 cases. 28 U.S.C. § 157(b)(2)(A), (B), and (O). At a minimum, the requested relief is related to the cases because its outcome directly affects administrative solvency, professional continuity, and implementation of the solicited Plan. *In re American Hardwoods, Inc.*, 885 F.2d 621, 623-27 (9th Cir. 1989). To the extent the Court determines that a discrete state-law attachment or priority issue is non-core or beyond its constitutional authority to decide finally without consent, Plaintiffs alternatively request proposed findings and conclusions under 28 U.S.C. § 157(c)(1).

This Supplemental Motion is filed under 11 U.S.C. § 105(a), Federal Rules of Bankruptcy Procedure 7007, 7019, 7024, and 7065, Federal Rules of Civil Procedure 7, 19, 24, and 65, and Bankr. D. Nev. LR 9006 and 9014. Section 105(a) permits orders necessary or appropriate to carry out specific Bankruptcy Code functions but does not create substantive rights or permit disregard of express Code limitations. *Law v. Siegel*, 571 U.S. 415, 421 (2014). The contribution agreement supplies the voluntary property-transfer authority; Rule 65 supplies the standard for restraining Orange and defining the scope of the preliminary injunction; and the requested funding order supplies the particularized implementation authority.

A preliminary injunction requires a likelihood of success, likely irreparable harm, a favorable balance of equities, and consistency with the public interest. *Winter v. Natural Resources Defense Council,*

*Inc.*, 555 U.S. 7, 20 (2008). In a section 105(a) request affecting action against a non-debtor, the ordinary Rule 65 standard applies, and likelihood of success is measured by the Debtors' reasonable likelihood of a successful reorganization. *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1094-96 (9th Cir. 2007); *In re PTI Holding Corp.*, 346 B.R. 820, 826-34 (Bankr. D. Nev. 2006). Plaintiffs do not rely on a relaxed standard.

Relief affecting a creditor's collection rights must be tailored in duration and scope, remain effective only while necessary, and be supported by an actual balancing of the competing hardships. *In re Brotby*, 303 B.R. 177, 190-91 (B.A.P. 9th Cir. 2003). Any injunction also must state the reasons for issuance, state its terms specifically, and describe in reasonable detail the acts restrained or required. Fed. R. Civ. P. 65(d).

Allowance of professional compensation and identification of a lawful non-debtor payment source are analytically distinct. *C.f. In re U.S.A. Dawgs, Inc.*, 657 B.R. 98,  (B.A.P. 9th Cir. 2024). Plaintiffs therefore rely on the separate fee order only to establish the amount NBA may receive; they rely on Wanger's binding agreement and the funding order to determine whether and how this non-debtor source may make that payment.

A binding, voluntary contribution of non-estate property may properly serve as a Chapter 11 funding source where the contribution is concrete, presently available, and sufficiently committed to support reorganization. The Ninth Circuit has recognized that "the infusion of new capital from a source outside the bankruptcy estate, even if the source is a former equity holder, is an independent act" rather than a diversion of estate property. *In re Bonner Mall P'ship*, 2 F.3d 899, 909 (9th Cir. 1993). Consistent with that principle, courts within the Ninth Circuit have approved plans funded by insider contributions used specifically to pay administrative and priority claims where the contribution was binding, supported by evidence of the contributor's ability to perform, and structured as an equity contribution rather than a loan. *See In re Two Bros. XI, Inc.*, No. 10-23048, 2013 WL 12624788, at *7-8 (Bankr. D. Ariz. Jan. 16, 2013).

The Ninth Circuit BAP likewise treats nondebtor contributions as potentially valid feasibility support when the record establishes the nondebtor's "ability, motivation, and unqualified commitment" to contribute a specific amount, *In re Lee*, 655 B.R. 340, 357-58 (B.A.P. 9th Cir. 2023), while cautioning that speculative or conditional promises are insufficient. *See In re Curiel*, 651 B.R. 548, 563-65 (B.A.P. 9th Cir. 2023); *In re Trans Max Techs., Inc.*, 349 B.R. 80, 92-93 (Bankr. D. Nev. 2006). Thus, the relevant inquiry is not

whether the proposed funding originated as property of the estate, but whether the third-party commitment is genuine, specific, presently realizable, and sufficiently established to support the Debtors' reorganization and administrative solvency.

Those requirements are satisfied here. Wanger, in his capacity as trustee of the LRW Revocable Trust, is not offering future services, speculative financing, or a conditional promise; he is irrevocably committing identified, liquid funds presently held in the restricted Merrill Lynch accounts, together with the identified Bank of America funds, for specified Court-approved reorganization purposes. The contribution is expressly not a loan, creates no reimbursement, contribution, subrogation, indemnity, administrative, secured, priority, or similar claim against the Debtors, and is not conditioned upon any release, discharge, retained equity interest, settlement, or other consideration flowing to Wanger or the Trust. The proposed use of those funds to satisfy the already-allowed Consumer Privacy Ombudsman expense and, subject to separate Court allowance, the Debtors' restructuring professionals directly supports administrative solvency and the feasibility showing required under § 1129(a)(11). This therefore presents the type of concrete, binding outside-capital commitment recognized in *Bonner Mall*, *Two Brothers XI*, and *Lee*, rather than the speculative third-party funding rejected in *Curiel* and *Trans Max*.

**IV. ARGUMENT**

    **A.    The Supplemental Motion Should Be Granted Because Wanger Has Made a Binding, Irrevocable Contribution and Court Authorization Is Now Necessary to Carry That Commitment Into Effect.**

This Supplemental Motion does not ask the Court to revisit the showing supporting entry of the preliminary injunction. The question presented by this Supplemental Motion is narrower: whether, while Orange remains restrained from completing collection against the identified accounts, the Court should recognize Wanger's binding and irrevocable contribution of those non-estate funds and authorize the financial institutions to implement the specified Court-approved administrative payments. Accordingly, the relief here implements the contribution that supplies the concrete reorganization nexus underlying preservation of the funds while expressly preserving Orange's judgment, claims, and all rights not specifically affected by the Court-authorized disbursements.

**B.    A Binding Voluntary Contribution of Non-Estate Funds Is a Permissible Source of Chapter 11 and Administrative Funding.**

As set out in Section III, the non-estate character of the Merrill and Bank of America funds does not itself disqualify them from serving as voluntary Chapter 11 funding. The Court should recognize and implement Wanger's voluntary transfer direction, which is the independent source of payment authority, and to permit that contribution to satisfy defined administrative obligations.

Orange may continue to assert its ownership, attachment, reachability, and priority positions to the extent preserved by the requested order. But the fact that the committed funds began as non-estate property does not prevent Wanger from binding himself and the Trust to contribute them for the specified reorganization purposes, subject to the Court's separate determination whether the restricted accounts may be used to perform that commitment.

**C.    Wanger's Commitment Satisfies the Standards for Reliable Third-Party Funding.**

Orange characterized the prospective Wanger support as an unspecified and illusory promise. Opp. at 7-9, 14. That criticism no longer describes the record. Wanger has executed a presently binding instrument that identifies existing accounts, fixes the maximum source, specifies the recipients and sequence, restricts transfers and additional encumbrances, waives all repayment and insider rights, and submits the commitment to this Court's enforcement jurisdiction. Wanger Decl. ¶¶ 13-32.

The commitment is not dependent on plan confirmation or a release and does not recreate the administrative burden through a reimbursement claim. It is therefore materially different from a contingent, revocable, or undocumented promise. See *In re Lee*, 655 B.R. 340 (B.A.P. 9th Cir. 2023); *In re Eletson Holdings Inc.*, 664 B.R. 569 (Bankr. S.D.N.Y. 2024). The Court may enforce the commitment according to its terms if the defined payments are authorized.

**D.    The Contribution Is Material to Administrative Solvency and Plan Implementation.**

The contribution is tied to the Chapter 11 record already before the Court, not to an abstract future plan. The Plan and Disclosure Statement are filed, the Court has conditionally approved the Disclosure Statement for solicitation, solicitation is underway, and the combined final-approval and confirmation hearing is set for September 15, 2026. The Feasibility / Liquidation Analysis identifies the restricted Merrill value as a Wanger non-debtor contribution subject to Court order and models non-debtor support as a source

for administrative and professional payments, transaction implementation, and reserves. Knepper Decl. ¶¶ 6-7; Wanger Decl. ¶¶ 9-10.

The near-term administrative uses are likewise fixed. The Court has already allowed the Consumer Privacy Ombudsman's $12,835.00 award, which remains unpaid. NBA's reduced interim request is $375,536.15 after the United States Trustee's voluntary-reduction process and remains subject to the separate fee order. Together, those obligations total $388,371.15, against approximately $386,454.20 in identified Merrill value and approximately $3,988.22 in identified Bank of America funds. Knepper Decl. ¶¶ 8-13; Wanger Decl. ¶¶ 4-6, 11-12.

The funding request therefore addresses a defined administrative-solvency need during solicitation and before confirmation. Approval does not establish feasibility or predetermine confirmation; it implements one disclosed funding source so the Debtors may continue the process on the record already presented to creditors and the Court.

### E.    The Court Has Jurisdiction and Authority to Authorize the Defined Disbursements.

Plaintiffs agree that sections 330, 331, and 503(b)(2), the United States Trustee's non-objection, and the fee order do not independently make the restricted accounts available. Those authorities determine allowance and administrative status. The independent payment basis is Wanger's voluntary and enforceable instruction as owner and trustee, coupled with the Court's funding order and the Rule 65 relief necessary to permit performance without Orange defeating the authorized transfer before it can occur.

Wanger appears in the capacity relevant to the contribution. He confirms his trustee authority, voluntarily binds the Trust, consents to enforcement jurisdiction, reserves unrelated defenses, and consents to limited-purpose joinder or intervention if required. Wanger Decl. ¶¶ 2-3, 29-31. The Trust therefore is not an unrepresented absentee whose property rights are being adjudicated without knowledge or consent.

If the Court nevertheless determines that formal party status is required before affirmative relief may be entered, joinder is feasible and should be permitted rather than used as a basis to deny the requested implementation relief. *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990); *Alto v. Black*, 738 F.3d 1111, 1125-27 (9th Cir. 2013). Plaintiffs request leave for immediate limited-purpose joinder or intervention and continuation of the restraint during that cure.

**G.      The Proposed Payment Sequence and Rule 65(d) Implementation Terms Are Narrowly Tailored and Administratively Workable.**

The direct-payment structure carries out the contributor's limited instruction, and directs the NBA amount wired to NBA. NBA will provide any supplemental compensation disclosure required by Bankruptcy Rule 2016. Merrill and Bank of America will receive the complete papers and an opportunity to state implementation requirements, and the requested Merrill provisions may be conformed to Merrill's written requirements before entry. Relief against Bank of America remains conditional on consent, appearance, or another lawful basis for binding it. Wanger Decl. ¶¶ 17-20, 27-28; Knepper Decl. ¶¶ 13-14.

**H.      The Alternative Merrill-Only Treatment Provides a Narrower Fallback if Bank of America Relief Is Unavailable.**

If Bank of America does not consent or cannot be bound on the present record, the Court should still authorize the Merrill-only fallback: pay the Ombudsman first and pay the remaining Merrill balance to NBA up to the amount separately allowed. Any unpaid NBA balance will remain allowed but unpaid, subject to further order. Wanger Decl. ¶ 20.

If the Court determines that a discrete state-law issue, stakeholder implementation requirement, or limited joinder question prevents immediate entry of some portion of the requested relief, the Court should preserve the preliminary injunction and establish an expedited implementation process for that discrete issue rather than deny the contribution structure in its entirety. The procedural answer to a curable implementation issue is not to permit the preserved fund to be dissipated before the Court's ruling can become meaningful.

**V.      CONCLUSION**

The original TRO preserved the restricted funds through the preliminary-injunction hearing; it did not authorize their use. The Emergency Motion and Reply supply the Rule 65 showing for continued preservation of residual funds; this Supplemental Motion addresses the separate implementation question. The Plan and Disclosure Statement are filed, solicitation is underway, the feasibility analysis identifies the contribution and its administrative-solvency function, the Ombudsman award is allowed and unpaid, NBA's interim request has been reduced through the United States Trustee process, and Wanger has executed a binding and non-recourse contribution agreement. Plaintiffs respectfully request that, upon or contemporaneously with entry of the preliminary injunction, the Court approve the contribution, authorize

the specified direct payments subject to the stated safeguards, and grant the related and alternative relief requested herein.

Respectfully submitted on August 5, 2026.

/s/ Matthew I. Knepper, Esq.
Matthew I. Knepper, Esq.
Nevada Bar No. 12796
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228