Matthew I. Knepper, Esq.
Nevada Bar No. 12796
**NEVADA BANKRUPTCY ATTORNEYS, LLC**
5940 S. Rainbow Blvd., Suite 400, PMB 99721
Las Vegas, Nevada 89118
Telephone: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
*Attorneys for Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>VELOCITY ESPORTS, INC.,<br><br>☐ Affects Velocity Esports, Inc.<br>☐ Affects Velocity Esports Las Vegas Town Square, LLC<br>☐ Affects Velocity Esports Chicago Schaumburg, LLC<br>☐ Affects Velocity Esports Newport Kentucky, LLC<br>☐ Affects Velocity Esports Orlando Downtown, LLC<br>■ Affects All Debtors<br><br>Debtor(s). | Case No. 25-12627-mkn<br><br>Jointly Administered with<br>Case No. 25-12628-mkn<br>Case No. 25-12629-mkn<br>Case No. 25-12630-mkn<br>Case No. 25-12631-mkn<br><br>Chapter 11<br><br>**PLAINTIFFS' OPPOSITION TO ORANGE'S MOTION FOR RELIEF FROM FINAL ORDER**<br><br>Adversary No.: 26-01075-mkn<br><br>Hearing Date: September 29, 2026<br>Hearing Time: 9:30 a.m. |
| VELOCITY ESPORTS, INC., a Nevada corporation, VELOCITY ESPORTS LAS VEGAS TOWN SQUARE, LLC, a Nevada limited liability company, VELOCITY ESPORTS CHICAGO SCHAUMBURG, LLC, an Illinois limited liability company, VELOCITY ESPORTS NEWPORT KENTUCKY, LLC, a Kentucky limited liability company, and VELOCITY ESPORTS ORLANDO DOWNTOWN, LLC, a Florida limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>434 N. ORANGE INVESTMENT, LLC, a Delaware limited liability company;<br><br>Defendant, | |

and

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, solely as nominal garnishee and stakeholder defendant for purposes of notice and implementation of injunctive relief,

Nominal Defendant.

Orange had a separately noticed motion asking for a funding order, an August 18, 2026 order providing Orange express discovery authority, a September 1, 2026 opposition deadline, and setting that motion for hearing on September 15, 2026 hearing. Orange took no discovery, filed no opposition, and did not attend the hearing. The Court granted the motion and directed the specified Merrill funds toward the allowed administrative obligations. Orange now says it withheld opposition because the funding motion's concluding sentence proposed action "upon or contemporaneously with" a preliminary injunction. That proposed sequence did not make the separately requested contribution and payment authority disappear, and it does not turn a counseled decision not to oppose into surprise. The motion to rescind the Funding Order should be denied.

Nor did the Order award a new category of relief by directing Orange to file a Florida notice of dissolution. The complaint expressly sought a garnishment-release directive; the Funding Motion sought transfer of the very garnished accounts and invited conformity with Merrill's implementation requirements. Merrill's counsel then supplied the dissolution language in a tracked proposed order because Merrill required a clear release from the writ before transferring the money. Knepper Decl. ¶¶ 2–3, Exs. A–B. Orange had every opportunity to contest the contribution, the proposed transfer, its asserted lien, and its avoidance theory before entry; its motion identifies no newly discovered evidence or intervening law. The Court should enforce its funding determination, not reopen it to reward an unused opposition deadline.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On May 29, 2026, Plaintiffs commenced this adversary proceeding and moved for preliminary relief. Adv. Dkt. 1; Adv. Dkt. 3. The complaint's prayer specifically contemplated an order directing Orange, if necessary, to suspend, withdraw, release, or modify the Florida garnishment, and reserved a separately noticed request to use restricted funds for allowed administrative and professional expenses. Adv. Dkt. 1 at 23, prayer ¶¶ 3–5. And the complaint and PI motion both specified the relief requested:

> To the extent the Court determines that effective relief requires Orange to take affirmative action in the Florida Litigation, including filing a notice of suspension, withdrawal, release, modification, or continuance of the Florida garnishment proceedings, Plaintiffs request such relief in the alternative and submit that the facts and law clearly favor such relief.

ECF No. 1 at ¶ 76; ECF 3; *See also* ECF No. 3 at 17:2-7.

The PI motion likewise identified a possible Florida notice or release "only to the extent necessary" to effectuate relief and explained that Merrill required a judicially adequate basis to transfer the money. Adv. Dkt. 3 at 17:2-7. On June 5, 2026, the Court entered a TRO preserving the funds but not authorizing payment. Adv. Dkt. 19.

On July 8, 2026, Plaintiffs filed the Disclosure Statement and Feasibility/Liquidation Analysis, which identified the restricted Merrill value as proposed Wanger support for administrative and implementation costs. ECF No. 294; ECF No. 294-1 at 15, 17, 25. On July 23, 2026, Orange opposed the PI and insisted that Wanger had "not actually committed to funding the Debtor with those monies (or any monies at all)." Adv. Dkt. 37 at 9. It also argued that a temporary § 105(a) injunction could not extend beyond confirmation. *Id.* at 5. On August 5, 2026, Plaintiffs' reply distinguished temporary preservation from later affirmative funding authority. Adv. Dkt. 38 at 3, 8–9, 13.

---

[1] Plaintiffs request judicial notice of the existence, filing dates, and contents of the identified bankruptcy dockets, filings, and orders, not the truth of reasonably disputed assertions within them. Fed. R. Evid. 201(b)–(c); Fed. R. Bankr. P. 9017; *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957–58 (9th Cir. 1989). Citations to Adv. Dkt. refer to this adversary; citations to ECF No. refer to Case No. 25-12627-mkn. Page references identify docket pagination unless otherwise stated. Section references identify title 11.

On August 7, 2026, Plaintiffs filed the Supplemental Funding Motion and Wanger's executed contribution declaration. Adv. Dkt. 41; Adv. Dkt. 42. The motion identified the accounts, recipients, payment cap, custody safeguards, and the need for a separate order authorizing use of funds that the TRO had only preserved. Adv. Dkt. 41 at 2–5, 10–11. It also stated that Merrill's provisions could be conformed to Merrill's written implementation requirements before entry. *Id.* at 11. Its conclusion proposed approval "upon or contemporaneously with entry of the preliminary injunction." *Id.* at 11–12. Wanger's executed commitment, however, was immediately binding and expressly was not conditioned on an injunction or confirmation outcome; a court order was required for performance, not for the commitment to exist. Adv. Dkt. 42 ¶¶ 13–16, 23.

On August 18, 2026, the Court allowed NBA's first interim fees and expenses of $375,536.15, the order reserved Plan, Disclosure Statement, solicitation, and confirmation work for later application. ECF No. 335 at 2–3. That day the Court separately set the Funding Motion for September 15, made discovery available, fixed September 1 for opposition and September 8 for reply, and continued the PI and TRO. Adv. Dkt. 46 at 2–3. Orange's counsel approved the form of the order. *Id.* at 5. Plaintiffs filed notice of the funding hearing and certificates of service. Adv. Dkt. 44; Adv. Dkt. 45; Adv. Dkt. 48.

On September 17, 2026, the Court continued the PI hearing to September 29, allowed Orange to file supplemental PI briefing by September 22, allowed Plaintiffs to reply by September 28, and extended the TRO through that hearing. Adv. Dkt. 50 at 2–3. As of September 24, the adversary docket reflected no Orange supplemental PI filing by the September 22 date; the order permitted but did not require one. The main-case Disclosure Statement and confirmation hearing is now set for October 6; the adversary funding hearing was separately set and was not thereby continued. ECF No. 353; Adv. Dkt. 46 at 2–3. On September 23, 2026, the Court entered the Funding Order after the September 15 hearing, expressly recording that no opposition had been filed. Adv. Dkt. 51 at 2. The Order approved the contribution, required Orange to file the dissolution notice within five business days, and directed Merrill to liquidate within seven business days and wire within fourteen business days after the later of entry or dissolution. *Id.* at 2–3. NBA receives the money as trust custodian and may disburse only within the allowed awards and aggregate cap. *Id.* at 3–4.

Merrill's counsel sent Knepper tracked proposed-order edits on September 18, 2026; those edits supplied the dissolution mechanism for Merrill's transfer. Knepper Decl. ¶¶ 2–3, Exs. A–B. Knepper accepted Merrill's edits except that he shortened Orange's proposed seven-day dissolution period to five business days, as his September 24 email states; the entered Order specifies five business days. Knepper Decl. ¶ 2, Ex. A; Adv. Dkt. 51 at 2. On September 24, 2026, Orange's reconsideration motion acknowledged that it chose not to oppose the Funding Motion because it understood the proposal to depend on PI entry. Motion for Relief from Final Order ("Reconsideration Mot.") at 3. It asserts surprise, broader relief, fraudulent transfer, economic injury, and unlikelihood of confirmation, but its supporting declaration supplies no new financial or transfer evidence. *Id.* at 3–5; VerStandig Decl. ¶¶ 3–4.

## II. LEGAL STANDARDS

A bankruptcy court may issue orders necessary or appropriate to carry out the Code, but § 105(a) does not create substantive rights or override statutory limits. *Law v. Siegel*, 571 U.S. 415, 421 (2014). Sections 330 and 331 permit allowance and interim compensation; a separate lawful source and authorization remain necessary for payment from restricted third-party funds. Fed. R. Bankr. P. 7065 incorporates Civil Rule 65 in this adversary proceeding. A mandatory directive affecting a creditor's garnishment interest requires adequate notice, a proper substantive basis, and terms specific enough to satisfy Rule 65(d). *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009).

Bankruptcy Rules 9023 and 9024 incorporate Civil Rules 59 and 60. Rule 59(e) relief generally requires newly discovered evidence, clear error, or intervening controlling law; it is not a chance to present an argument that could have been made before judgment. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009); *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890–91 (9th Cir. 2000). Rule 60(b)(1) encompasses judicial legal mistake as well as a party's mistake, while Rule 60(b)(6) requires extraordinary circumstances and cannot substitute for a ground within (b)(1). *Kemp v. United States*, 596 U.S. 528, 533–35 (2022).

The District of Nevada's LR 9014(d) normally requires a written opposition fourteen days before hearing; a court-ordered schedule controls instead where one is entered. Adv. Dkt. 46 at 3; Bankr. D. Nev. LR 9014(d)(1), (3). A party's deliberate litigation choice ordinarily does not establish "surprise" or excusable neglect under Rule 60(b). *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1100–01 (9th Cir. 2006).

Florida law gives service of a garnishment writ potential lien consequences and requires the garnishee to retain covered property pending lawful disposition. Fla. Stat. § 77.06(1)–(2). Dissolution therefore has legal consequences; it is not a meaningless clerical act. But the distinction between Orange's underlying guaranty judgment and the separate writ matters: the record identifies a writ and restrained assets, not a final garnishment judgment awarding Merrill's funds to Orange. Adv. Dkt. 37 at 6; Adv. Dkt. 51 at 2–3. The Court must evaluate the authorized disposition on the actual notice and record, not on the premise that ordering a release notice creates an unrelated form of relief.

## III. ARGUMENT

### A. The Court should deny reconsideration because Orange had notice of the separately filed and noticed funding relief and consciously declined to oppose it.

The premise of "surprise" is incompatible with the record Orange itself describes. The Funding Motion requested an order approving a specified contribution and direct payments from the restricted accounts. The August 18 order gave it a separate hearing, discovery, and an express opposition date. Orange could have disputed the PI-related timing, demanded proof of ownership and reachability, raised avoidance and priority, or objected to any affirmative garnishment directive. It did none of those things by September 1. Its present explanation—that it did not wish to be "obstructionist"—describes strategy, not inability to litigate. Reconsideration Mot. at 3; Adv. Dkt. 41 at 2–5, 11–12; Adv. Dkt. 46 at 2–3.

Orange made timing an equitable objection to Plaintiffs' injunction request, charging "extraordinary delay unilaterally occasioned by the Debtors" and arguing that Plaintiffs "waited—even longer—for 434 N. Orange to stand on the brink of collecting on that judgment." Adv. Dkt. 37 at 3, 12–13. But Orange's approach toward collection is what made the threatened loss of committed administrative funding imminent and supplied the basis for Plaintiffs to seek injunctive relief.

Orange's present delay has no comparable justification. After receiving the Funding Motion, a separate hearing date, express discovery authority, and a September 1 opposition deadline, Orange let that deadline pass and filed nothing before the September 15 hearing. Adv. Dkt. 41; Adv. Dkt. 46 at 2–3; Adv. Dkt. 51 at 2. By the standard Orange urged, the equities favor the party that sought relief when the threat became imminent—not the party that withheld its objections until after the Court entered an order.

The Court's separate scheduling order defeats any supposed ambiguity. On August 18, 2026, the Court did not condition Orange's funding opposition on a future PI ruling; it set a concrete deadline and made discovery available. Adv. Dkt. 46 at 2–3. Orange's counsel approved that order's form. *Id.* at 5. Approval of form is not substantive consent to every eventual term, but it defeats the notion that the separate funding calendar and deadline were hidden or ambiguous. Orange also could have asked the Court to clarify any perceived condition before choosing silence. *Kona* and *Latshaw* do not bar correction of actual legal error; they do bar treating that choice as an entitlement to a second first opposition.

Orange cannot derive a five-day wire deadline from the Order it attacks. The five-business-day period applies to its own Notice of Dissolution. Merrill's liquidation and wire deadlines run seven and fourteen business days after the later of entry or the notice. Adv. Dkt. 51 at 2–3. The motion's assertion that the Order directs transfer "within five business days" is not what the decretal language says. Reconsideration Mot. at 3–4. The misreading magnifies asserted surprise while eliding the staged implementation Merrill requested.

Orange had the opportunities it faults Plaintiffs for failing to use. Its deliberate nonopposition, without new evidence or intervening law, does not justify rescinding the Funding Order.

**B. The dissolution directive should remain because it implements the noticed Merrill transfer rather than awarding a different kind of relief.**

Orange's scope objection asks whether directing it to file a notice dissolving the Florida writ granted relief beyond what Plaintiffs requested and Orange had notice of. It did not. The complaint expressly contemplated a garnishment-release notice, and the Funding Motion sought direct payment from the same restrained Merrill accounts while allowing the proposed order to conform to Merrill's

written implementation requirements. Adv. Dkt. 1 at 23, prayer ¶¶ 3–5; Adv. Dkt. 3 at 17–18; Adv. Dkt. 41 at 2–5, 11. The Order directs dissolution "so that Merrill may effectuate the payment," then specifies how Merrill must liquidate and transfer the funds and how NBA must hold and disburse them. Adv. Dkt. 51 at 2–4. The dissolution directive thus makes the requested transfer possible despite the existing writ; it does not introduce a new funding source, recipient, payment purpose, or amount. The motion's proposed timing relative to a preliminary injunction is a separate sequencing issue, not a change in the scope of the funding relief Orange had every opportunity to address.

The stakeholder's own contemporaneous edits confirm that implementation function. On September 18, 2026, Merrill's counsel sent proposed tracked changes containing the dissolution requirement. Knepper Decl. ¶¶ 2–3, Exs. A–B. Knepper accepted that mechanism, changing Orange's proposed seven-day notice period to five days; the entered Order uses five business days. Knepper Decl. ¶ 2, Ex. A; Adv. Dkt. 51 at 2. This correspondence does not prove Orange consented or extinguish whatever interest Florida law gives it. The requested wording instead links the notice to Merrill's ability to effectuate the ordered payment despite the separate writ. Knepper Decl. ¶ 3, Ex. B; Adv. Dkt. 51 at 2. The Funding Motion specifically told Orange that Merrill would be given implementation input. Adv. Dkt. 41 at 11.

The directive has real consequences, but those consequences were inherent in the requested transfer. Section 77.06 recognizes a lien upon service of a writ on property within its scope and directs the garnishee to retain it. Fla. Stat. § 77.06(1)–(2). That is precisely why a court-approved transfer of the restrained funds cannot sensibly leave the garnishment directive unaddressed. Calling the notice "procedural" does not erase Orange's asserted lien; calling it "new relief" ignores the pleaded release remedy and the requested use of those same funds. Whether Orange's writ reached the Trust's accounts was itself disputed, and the record identifies no final garnishment judgment awarding those accounts to Orange. Adv. Dkt. 37 at 6, 15–16; Adv. Dkt. 42 ¶ 29. The Order resolves the conflict for this specified payment; it does not vacate Orange's underlying guaranty judgment. Adv. Dkt. 1 at 23; Adv. Dkt. 51 at 2–4.

Orange cites primarily to out-of-circuit, unpublished bankruptcy court decisions; each is readily distinguishable because they concern relief untethered to a pleading or motion; this record

supplies both. Orange's authorities involve relief that departed from the claims or requests actually presented. *See Contour Design, Inc. v. Chance Mold Steel Co.*, No. 09-cv-451-JL, 2010 U.S. Dist. LEXIS 121761, 2010 WL 4774283, at *3 (D.N.H. Oct. 22, 2010), *report and recommendation adopted*, No. 09-CV-451-JL, 2010 WL 4736428 (D.N.H. Nov. 12, 2010), *aff'd*, 649 F.3d 31 (1st Cir. 2011)at *9 (D.N.H. Oct. 22, 2010) (declining to add an additional mouse product and return of production tooling to a preliminary injunction where those requests first appeared in a proposed order, and the additional product was scarcely discussed at the hearing); *Rockette v. Carpenter Mgmt.*, No. 3:23-CV-406-MPM-RP, 2025 U.S. Dist. LEXIS 224420, at *4, 2025 WL 3187514, at *2 (N.D. Miss. Nov. 14, 2025) (N.D. Miss. Nov. 14, 2025) (denying an injunction compelling police to accept reports where the amended complaint requested only damages and disqualification of officials from public office, and the movant had delayed more than three years after the alleged obstruction began); *Temple v. Reliance First Capital, LLC*, No. 2:24-cv-634-ACA, 2025 WL 1584706, at *3 (N.D. Ala. June 4, 2025) (denying requests to correct credit reports and halt statutory violations where the amended complaint sought no injunction on those claims and the statutes supplied damages, not injunctive relief); *Noble Prestige Ltd. v. Galle*, 83 F.4th 1366, 1382–83 (11th Cir. 2023) (vacating an interim asset freeze where the petition sought only final money judgments confirming arbitral awards, not a final equitable remedy concerning the frozen funds); *Giaimo v. MacKinnon*, No. 00-389-JD, 2000 WL 1745171, at *4 & n.7 (D.N.H. Oct. 20, 2000) (denying an injunction principally under *Younger* abstention and observing in a footnote that the motion targeted police conduct generally while the complaint sought relief limited to enforcement of one municipal ordinance); *Greenlaw v. United States*, 554 U.S. 237, 243 (2008) (applying the party-presentation principle to bar an appellate court from increasing a criminal sentence when the government had filed no appeal or cross-appeal seeking that result).

Ninth Circuit law requires a sufficient nexus between requested injunctive relief and the complaint. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633–36 (9th Cir. 2015). The complaint here named the garnishment, contemplated its release, and identified later authorized administrative payments. Adv. Dkt. 1 at 23, prayer ¶¶ 3–5, ¶ 76. Unlike an order introduced only by a late proposed form, the Funding Motion supplied accounts, payees, monetary limits, and a proposed

transfer; Merrill's edit specified the release step necessary to make that transfer. The operative restraint already existed under the TRO, and the Funding Order furnished the further payment authorization the TRO had withheld. Adv. Dkt. 19; Adv. Dkt. 41 at 3, ¶ 2; Adv. Dkt. 51 at 2–4.

Plaintiffs do not evade the motion's proposed "upon or contemporaneously with" language. Adv. Dkt. 41 at 11–12. That sentence proposed timing; it did not retract the separately filed and noticed motion's request for a funding order or impose an "if and only if" condition on Wanger's commitment. *Id.* at 2–5; Adv. Dkt. 42 ¶¶ 13–16, 23. The preliminary-injunction motion asks whether Orange's collection efforts should be restrained while confirmation remains pending. The Funding Motion asks whether the identified guarantor contribution may be made and disbursed for the specified bankruptcy purposes. The existing TRO maintained the funds when the Court heard funding, and the Court entered a separate order authorizing their defined use. Adv. Dkt. 50 at 2–3; Adv. Dkt. 51 at 2–4. The sequence differs from Plaintiffs' proposal, but the relief's subject, source, beneficiaries, and limited purpose do not. A different sequence is not, without a showing of legal error or actual unfairness, grounds to rescind the order Orange elected not to oppose.

Because the release mechanism was pleaded, contemplated in the motion, and required by Merrill for the ordered transfer, the dissolution provision should remain in force.

**C. The Court should reject Orange's belated merits theories because the existing record supports the approved preconfirmation contribution.**

Orange's reconsideration motion mostly repeats theories it could have raised before September 1. It now invokes an avoidable transfer, purely pecuniary injury, and an unconfirmable plan. Reconsideration Mot. at 4–5. Those assertions do not supply new evidence or a legal basis to erase the funding approval. The Court had an executed commitment, a filed feasibility analysis, an interim fee allowance, and a specific payment mechanism. Adv. Dkt. 42; ECF No. 294-1 at 15, 17, 25; ECF No. 335 at 2–3; Adv. Dkt. 41 at 2–5. The pending PI requires its own Rule 65 findings, but its pendency does not make every separate funding determination legally nonexistent.

Orange's own PI opposition shows why the intervening record matters. On July 23, it dismissed Wanger's proposed funding as an "illusory promise" without "a sum certain buttressed by a measurable economic commitment." Adv. Dkt. 37 at 9. On August 7, Wanger executed a binding,

irrevocable commitment identifying accounts, allowed recipients, caps, no reimbursement, and no injunction or confirmation condition. Adv. Dkt. 42 ¶¶ 13–24. On August 18, the Court allowed the interim compensation, independently of the reserved confirmation work. ECF No. 335 at 2–3. Orange received those materials and the chance to test them; its reconsideration motion does not make the now-executed promise illusory again.

Orange's belated fraudulent-transfer theory does not justify reconsideration. The Funding Motion identified the contributor, accounts, recipients, and proposed transfers before Orange's September 1 opposition deadline. Adv. Dkt. 41 at 2–5; Adv. Dkt. 46 at 3. Orange filed nothing. Adv. Dkt. 51 at 2. Its motion now invokes NRS 112.180 without identifying newly discovered evidence, intervening law, or clear error in the Funding Order. Reconsideration Mot. at 4–5. Reconsideration is not a first opportunity to litigate an issue Orange could have conducted discovery on and raised at the scheduled hearing. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). The Court should reject that theory as a basis for disturbing the Order and deny the motion without reopening the record or delaying implementation. Nor does the fee order make confirmation a prerequisite to payment. The August 18 allowance is a first interim award and expressly excludes later Plan, Disclosure Statement, solicitation, and confirmation work. ECF No. 335 at 2–3. The Funding Motion identified administrative solvency through confirmation as the immediate need. Adv. Dkt. 41 at 10. Section 331 permits interim compensation before a confirmed plan, subject to lawful source authorization and later review. Orange may contest plan feasibility at confirmation and oppose the PI under *Excel Innovations*; neither future merits question converts the preconfirmation interim allowance into an unauthorized award.

Orange's renewed merits assertions were available before the funding hearing and do not establish error in the funding determination that was actually made.

## IV. CONCLUSION

Orange was given a distinct funding hearing, the motion and supporting commitment, access to discovery, and a firm opposition date. Its choice to file nothing does not transform the Court's funding order into an unforeseen adjudication. The complaint and motion identified the garnishment and the requested Merrill transfer; Merrill supplied the dissolution language to make that transfer

executable. The Order sets a staged timetable, safeguards the funds in trust, and limits disbursement to previously allowed amounts. Orange's belated theories do not show newly discovered evidence, intervening law, or clear error.

Plaintiffs request that the Court deny Orange's Motion for Relief from Final Order in full and leave Adv. Dkt. 51 effective according to its terms.

Dated: ____________________, 2026
Respectfully submitted,
**NEVADA BANKRUPTCY ATTORNEYS, LLC**
By: ______________________________
Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Attorneys for Plaintiffs