Matthew I. Knepper, Esq.
Nevada Bar No. 12796
**NEVADA BANKRUPTCY ATTORNEYS, LLC**
5940 S. Rainbow Blvd., Suite 400, PMB 99721
Las Vegas, Nevada 89118
Telephone: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
Attorneys for Plaintiffs

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re

VELOCITY ESPORTS, INC.,

☐ Affects Velocity Esports, Inc.
☐ Affects Velocity Esports Las Vegas Town Square, LLC
☐ Affects Velocity Esports Chicago Schaumburg, LLC
☐ Affects Velocity Esports Newport Kentucky, LLC
☐ Affects Velocity Esports Orlando Downtown, LLC
■ Affects All Debtors

Debtor(s).

VELOCITY ESPORTS, INC., a Nevada corporation, VELOCITY ESPORTS LAS VEGAS TOWN SQUARE, LLC, a Nevada limited liability company, VELOCITY ESPORTS CHICAGO SCHAUMBURG, LLC, an Illinois limited liability company, VELOCITY ESPORTS NEWPORT KENTUCKY, LLC, a Kentucky limited liability company, and VELOCITY ESPORTS ORLANDO DOWNTOWN, LLC, a Florida limited liability company,

Plaintiffs,

v.

Case No. 25-12627-mkn

Jointly Administered with
Case No. 25-12628-mkn
Case No. 25-12629-mkn
Case No. 25-12630-mkn
Case No. 25-12631-mkn

Chapter 11

**PLAINTIFFS' SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Adversary No.: 26-01075-mkn

Hearing Date: September 29, 2026
Hearing Time: 9:30 a.m.

| |
|---|
| 434 N. ORANGE INVESTMENT, LLC, a Delaware limited liability company;<br><br>Defendant,<br><br>and<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, solely as nominal garnishee and stakeholder defendant for purposes of notice and implementation of injunctive relief,<br><br>Nominal Defendant. |

Orange opposed the preliminary injunction on the premise that Wanger had made only an "illusory promise," the trust funds had no demonstrated role in reorganization, and a § 105(a) injunction could not outlast confirmation. Adv. Dkt. 37 at 5, 9. The record now contains Wanger's executed, irrevocable contribution, the Court's interim allowance, a separate order authorizing payment from the restricted Merrill accounts, and a confirmation hearing presently set for October 6.[1] Adv. Dkt. 42; ECF No. 335; Adv. Dkt. 51; ECF No. 353. Orange's own stated temporal limit matches the relief requested here: a preliminary injunction protecting the identified plan-support funding through confirmation. The Court should enter it at the September 29 hearing.

Orange has had months to test this showing. It filed its PI opposition on July 23, received Plaintiffs' August 5 reply, received the executed contribution on August 7, and then obtained an August 18 order expressly making discovery available and fixing a separate funding opposition deadline. Adv. Dkt. 37; Adv. Dkt. 38; Adv. Dkt. 42; Adv. Dkt. 46 at 2–3. It filed no funding opposition. Adv. Dkt. 51 at 2. While that silence alone does not prove every Rule 65 element;[2] the executed Wanger commitment, filed feasibility analysis, conditional order approving the Disclosure Statement, and threatened diversion of a defined administrative funding source do. Orange's post-order

[1] However, the hearing on the Disclosure Statement and Confirmation will need to be continued given the current judicial settlement conference posture between Plaintiffs and Woodfield Mall, as contemplated in Adv. Case #26-1031; *see e.g.,* Adv. Dkt #56.

[2] *But see*, LR 9014(b)(1)(D) (warns that the court *may rule against* a party that fails to respond).

reconsideration effort should not postpone adjudication of the PI on the record and briefing schedule the Court established.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

On May 28, 2026, the Debtors filed the amended Plan, which identifies guarantor support, cooperation, and separate funding orders as important to implementation without granting a permanent nondebtor release. ECF No. 284 §§ 4.1.3–4.1.4. On May 29, 2026, Plaintiffs commenced this adversary proceeding and moved for temporary and preliminary relief. Adv. Dkt. 1; Adv. Dkt. 3. The complaint expressly contemplated both preservation of the restricted accounts and later court-authorized administrative funding, including a notice releasing or modifying the Florida garnishment if necessary. Adv. Dkt. 1 at 23, prayer ¶¶ 3–5. The filed PI motion requested temporary enforcement relief "through confirmation or further order." Adv. Dkt. 3 at 16.

On June 5, 2026, the Court entered a TRO preserving the funds while withholding authority to liquidate or distribute them. Adv. Dkt. 19. On July 8, 2026, the Debtors filed the Disclosure Statement and Feasibility/Liquidation Analysis. ECF No. 294; ECF No. 294-1. The analysis identified approximately $386,454 in restricted Merrill value and modeled guarantor support against administrative costs, including a projected shortfall without that bridge. ECF No. 294-1 at 15, 17, 25. Those are July projections, not a representation that the same balances remain today.

On July 23, 2026, Orange opposed the PI, arguing that Wanger had made no binding financial commitment and that the accounts were merely his non-estate property. Adv. Dkt. 37 at 7–10. It said any § 105(a) injunction must end by confirmation. *Id.* at 5. On August 5, 2026, Plaintiffs replied, separating preservation from separately noticed funding authority and acknowledging that disbursement, unlike a simple freeze, affects Orange's asserted collection pool. Adv. Dkt. 38 at 3, 8–9, 13.

---

[3] Plaintiffs request judicial notice of the existence, filing dates, and contents of the identified bankruptcy dockets, filings, and orders, not the truth of reasonably disputed assertions within them. Fed. R. Evid. 201(b)–(c); Fed. R. Bankr. P. 9017; *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957–58 (9th Cir. 1989). Citations to Adv. Dkt. refer to this adversary; citations to ECF No. refer to Case No. 25-12627-mkn. Page references identify docket pagination unless otherwise stated. Section references identify title 11.

On August 7, 2026, Plaintiffs filed the Supplemental Funding Motion and Wanger's executed declaration. Adv. Dkt. 41; Adv. Dkt. 42. Wanger bound himself individually and as trustee, identified the restricted accounts, waived reimbursement and consideration, and provided that his commitment was not conditioned on an injunction or confirmation outcome. Adv. Dkt. 42 ¶¶ 13–24. On August 18, 2026, the Court allowed NBA's first interim compensation, subject to a lawful payment source and later review, and expressly reserved confirmation-related work. ECF No. 335 at 2–3.

On August 18, 2026, the Court continued the PI, extended the TRO, separately set the Funding Motion for September 15, made discovery available, and fixed September 1 and September 8 as funding opposition and reply deadlines. Adv. Dkt. 46 at 2–3. Orange's counsel approved the form of that order. *Id.* at 5. On September 17, 2026, the Court continued the PI hearing to September 29, allowed Orange supplemental PI briefing by September 22, allowed Plaintiffs' reply by September 28, and extended the TRO to the hearing. Adv. Dkt. 50 at 2–3. As of September 24, the adversary docket reflected no Orange supplement by the September 22 date; the supplemental filing was an opportunity, not an obligation. The main-case confirmation hearing is set for October 6. ECF No. 353.

On September 23, 2026, the Court granted the Funding Motion, finding that no opposition had been filed. Adv. Dkt. 51 at 2. The Order authorizes defined Merrill liquidation and transfer to NBA's trust account, directs allowed Ombudsman payment first, caps NBA's recovery at the allowed interim amount, and segregates excess funds. *Id.* at 2–4. Merrill's counsel had requested the order's Florida dissolution notice as an implementation step for that transfer; Knepper received the tracked edits and accepted them except for shortening Merrill's proposed seven-day period to five business days. Declaration of Matthew I. Knepper ("Knepper Decl.") ¶¶ 1–2, Exs. A–B. The requested PI protects whatever identified plan-support interests remain exposed to Orange's collection while allowing only transactions the separate Funding Order authorizes.

/ / /

**II. LEGAL STANDARDS**

Section 105(a) permits relief necessary or appropriate to carry out the Code but cannot override its substantive limits. 11 U.S.C. § 105(a); *Law v. Siegel*, 571 U.S. 415, 421 (2014). The automatic stay does not ordinarily protect nondebtors, and temporary reorganization protection differs from a permanent nondebtor discharge. *In re Am. Hardwoods, Inc.*, 885 F.2d 621, 624–27 (9th Cir. 1989). Bankruptcy Rule 7065 incorporates Civil Rule 65, including its requirement that an injunction describe restrained conduct specifically. The bankruptcy court may grant preliminary protection of a nondebtor only on the established injunction showing, not merely because it has related-to jurisdiction. *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1094–96, 1098–99 (9th Cir. 2007).

A preliminary injunction requires likelihood of success, likely irreparable injury, a favorable balance of equities, and consistency with the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). In this § 105(a) setting, likelihood of success asks whether the debtors have a reasonable likelihood of successful reorganization; *Excel Innovations* also requires concrete proof of threatened reorganization harm and careful consideration of the creditor's lost collection rights. 502 F.3d at 1095–99. The Ninth Circuit described a stay until confirmation as the maximum temporary relief available on that record. *Id.* at 1095.

The Court may consider the developed record, including later evidence bearing on the PI standard, but it must distinguish factual proof from a conclusory prediction. *Excel Innovations*, 502 F.3d at 1097–99. The PI must remain tied to the threatened harm; a mandatory directive to release a garnishment has different consequences from an order preserving the remaining funding source. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009). The separate Funding Order supplies the affirmative transfer authorization; this reply asks for the temporary collection restraint needed to preserve the plan-support structure through confirmation.

## III. ARGUMENT

### A. The Court should enter a PI through confirmation because that is the reorganization-linked term the motion requested and Orange itself recognized.

The requested end point answers Orange's principal objection to indefinite nondebtor protection. The original PI motion sought temporary enforcement relief through confirmation or further order; Plaintiffs now seek a preliminary injunction that lasts through entry of an order confirming the Plan, not a permanent release or postconfirmation bar. Adv. Dkt. 3 at 16; ECF No. 284 §§ 4.1.3–4.1.4. Orange argued that a § 105(a) injunction "may not extend beyond the date of confirmation." Adv. Dkt. 37 at 5. That is the same outer limit described by *Excel Innovations*, 502 F.3d at 1095. The parties differ over whether the factual showing warrants relief, not over whether through-confirmation protection is categorically too long.

Orange's "no permanent nondebtor injunction" argument targets relief Plaintiffs do not seek. The Plan provisions identify guarantor support and separate funding orders; they do not purport to discharge Orange's guaranty judgment. ECF No. 284 §§ 4.1.3–4.1.4. *Am. Hardwoods* forbids using § 105(a) to insulate a guarantor permanently from the creditor's claim. 885 F.2d at 626–27. *Excel Innovations* nonetheless recognizes temporary preconfirmation protection when the usual injunction elements are met. 502 F.3d at 1094–96. Orange's invocation of *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), addresses nonconsensual plan releases, not the pending temporary injunction that expires at confirmation.

The Court should set a functional end point, not substitute the presently scheduled hearing date for confirmation itself. The confirmation hearing is now calendared for October 6, but a hearing date is not necessarily entry of an order confirming the Plan. ECF No. 353. Protection ending merely because a calendar setting concludes could allow the committed source to be diverted during a short interval when the Court's decision is being memorialized. A Rule 65 order should therefore identify the accounts and prohibited collection acts and remain effective through entry of the confirmation order. Fed. R. Civ. P. 65(d); *Excel Innovations*, 502 F.3d at 1095.

The limited duration is neither a permanent guarantor discharge nor a request for an indefinite stay. It is the very through-confirmation protection the filed PI motion identified and Orange's own briefing treated as the permissible maximum.

**B. The Court should reject Orange's "illusory promise" premise because the executed commitment supplies the missing funding proof.**

The strongest factual premise of Orange's July opposition has been overtaken by sworn, binding evidence. Orange said Wanger "has not actually committed" any money and described only an "illusory promise" lacking a measurable economic commitment. Adv. Dkt. 37 at 9. Wanger then executed a declaration making his commitment immediately binding and irrevocable, identifying the accounts and allowed uses, and disclaiming reimbursement, equity, or any requirement that PI or confirmation first occur. Adv. Dkt. 42 ¶¶ 13–24. The Court approved implementation on September 23. Adv. Dkt. 51 at 2.

The financial model shows why that commitment matters to the estates. On July 8, 2026, the filed analysis listed approximately $386,454.00 in Merrill value and modeled a guarantor bridge for administrative/professional payments and implementation; without the modeled $429,341.88 bridge it projected a $263,770.13 shortfall. ECF No. 294-1 at 15, 17, 25. The model is historical and does not establish today's exact balance or guarantee feasibility. It does establish a concrete use and causal exposure: Orange's collection of the committed funds would remove a disclosed source that the reorganization has relied on for allowed administrative obligations. Adv. Dkt. 42 ¶¶ 17–20; ECF No. 335 at 2–3.

The contribution is not an undisclosed device to protect Wanger's personal wealth. The Disclosure Statement and analysis were filed July 8; Orange discussed the Disclosure Statement in its July 23 opposition. ECF No. 294; ECF No. 294-1; Adv. Dkt. 37 at 7. Wanger later formalized the commitment, and the Funding Order restricts trust-account disbursements to the allowed Ombudsman award and NBA's interim allowance, subject to caps and segregation. Adv. Dkt. 42 ¶¶ 13–24; Adv. Dkt. 51 at 3–4. These are verifiable reorganization uses, not a general assertion that Plaintiffs would "make better use" of Wanger's assets.

The executed commitment, Court-allowed obligations, and disclosed cash-flow consequences satisfy the evidentiary point Orange said was missing; they support the reasonable-likelihood and irreparable-harm findings *Excel Innovations* requires.

**C. The PI should protect the committed source because Orange's immediate collection would defeat an identified, nonreplaceable reorganization function.**

The injury to the Debtors is not merely that Wanger might lose money. It is that a committed source of administrative and plan-support liquidity would be intercepted before the Debtors can complete confirmation and the Court-supervised payment structure. Adv. Dkt. 42 ¶¶ 13–24; ECF No. 294-1 at 17, 25. A later claim credit could reduce Orange's allowed claim but would not replenish cash needed to pay already allowed obligations or preserve the implementation bridge at the relevant time. Orange's threatened collection therefore presents a causal reorganization harm, not simply a damages claim. *Excel Innovations*, 502 F.3d at 1098–99.

The balance of hardships requires an honest description of Orange's position. Orange holds a Florida guaranty judgment and a writ; Florida law may give a lien upon service on covered property. Fla. Stat. § 77.06(1)–(2); Adv. Dkt. 37 at 6. Preservation and the Funding Order impose different effects: the former delays collection; the latter authorizes limited disbursement and a notice releasing the writ so Merrill can comply. The bankruptcy court has already considered the separately noticed transfer request and imposed trust custody, payment caps, segregation, and the fee allowance's later review/disgorgement terms. Adv. Dkt. 41 at 2–5; Adv. Dkt. 51 at 2–4; ECF No. 335 at 3. Those safeguards do not erase Orange's asserted lien, but they ensure the injunction is tied to specified reorganization obligations rather than unrestricted insider benefit.

The public interest favors an adjudicated, limited restraint over unilateral disruption of the Court-supervised process. The Code authorizes interim compensation, and § 105(a), as construed in *Excel Innovations*, permits temporary protection when nondebtor collection threatens a viable reorganization. 11 U.S.C. §§ 105(a), 331; 502 F.3d at 1094–99. The requested order need not invalidate the Florida guaranty judgment, decide Orange's ultimate claim allowance, or determine

every Florida priority issue. It must preserve only the identified reorganization-linked interests through confirmation while specifying the prohibited collection acts under Rule 65(d).

Because loss of the committed source threatens administration and confirmation in a way a later damages remedy cannot repair, the balance and public interest support the requested through-confirmation PI.

**D. The Court should decide the PI now because Orange had a full chance to develop and present its objections.**

The procedural record supports adjudication at the set hearing, not another deferral. Orange filed a detailed PI opposition on July 23 and obtained Plaintiffs' reply on August 5. Adv. Dkt. 37; Adv. Dkt. 38. The August 18 order made discovery available and gave Orange a separate written opposition deadline on the Funding Motion. Adv. Dkt. 46 at 2–3. The September 17 order permitted another Orange PI brief by September 22 and a Plaintiffs' reply by September 28. Adv. Dkt. 50 at 2–3. Nothing in those orders made completed discovery a condition precedent to deciding the PI. Indeed, none has taken place.

Orange's own delay rhetoric reinforces the need to use the procedures already supplied. In its PI opposition Orange accused Plaintiffs of "extraordinary delay unilaterally occasioned by the Debtors," saying they "waited—even longer" until Orange neared collection. Adv. Dkt. 37 at 3, 12–13. Orange now had the exact contribution it said was absent, discovery authority, an opposition deadline, and a continued PI briefing schedule. Adv. Dkt. 42; Adv. Dkt. 46; Adv. Dkt. 50. The same interest in timely resolution that Orange invoked against Plaintiffs weighs against postponing a merits determination because Orange chose not to contest the funding motion by September 1.

The funding nonopposition is not a shortcut around Rule 65. The Court still must make findings on reasonable likelihood of reorganization, threatened harm, equities, and public interest. *Winter*, 555 U.S. at 20; *Excel Innovations*, 502 F.3d at 1095–99. But it may make those findings on the developed record, including Wanger's declaration, the filed model, the interim allowance, the Funding Order, and the adversary briefing. Adv. Dkt. 42; ECF No. 294-1; ECF No. 335; Adv. Dkt. 51. Orange has

been heard on the PI and had opportunities to test the later contribution evidence. No additional period of restraint under the TRO is a substitute for the preliminary-injunction ruling now due.

The Court should apply the required standard at the September 29 hearing and enter the PI, not use Orange's missed funding opposition as a reason to defer the injunction again.

**E. The PI preserves unresolved merits questions because it is temporary and does not decide them by implication.**

Orange's avoidance, trust-reachability, priority, and § 1129(a) do not justify denying temporary protection of the funding source on speculation alone. Orange lodged them in opposition to plan confirmation, not the PI or Funding Motion. ECF No. 341. Those issues should, accordingly, be decided at confirmation.

Section 1129(a)(7) compares each holder's Plan recovery with what it would receive from the relevant Debtor in a hypothetical Chapter 7 liquidation; Wanger's personal or trust assets do not automatically become estate property under § 541 merely because Orange may pursue them on a guaranty. ECF No. 294-1 at 5, 10; 11 U.S.C. §§ 541(a), 1129(a)(7). Orange's outside collection rights and corresponding claim credits remain relevant to the equities and confirmation analysis, but they are not an automatic additional Chapter 7 estate distribution. Likewise, Wanger consented to limited joinder if the Court requires it. Adv. Dkt. 42 ¶ 31. None of these issues requires the Court to deny a specifically bounded PI through confirmation.

The PI can be entered without converting this hearing into final adjudication of Orange's guaranty, lien, avoidance, or confirmation objections, as Orange preserved those issues for briefing on confirmation.

**IV. CONCLUSION**

Orange asked the Court to treat Wanger's proposed contribution as illusory and to refuse an injunction that would outlast confirmation. The first premise is overtaken by his executed, nonrecourse commitment and the Funding Order; the second is not Plaintiffs' request. The filed financial analysis ties the identified funds to allowed administrative obligations and the path to confirmation. Orange has had its PI opposition, a reply, discovery authority, a separate funding-opposition deadline, and an

additional PI briefing opportunity. The Court can decide the Rule 65 elements on that developed record now.

Plaintiffs request entry of a preliminary injunction at the September 29 hearing restraining Orange's collection against the identified plan-support funding through entry of the order confirming the Plan, while permitting only the transactions separately authorized by Adv. Dkt. 51, and leaving unresolved substantive claims for later adjudication at confirmation.

Dated: September 25, 2026

Respectfully submitted,
**NEVADA BANKRUPTCY ATTORNEYS, LLC**
By: s/ *Matthew I. Knepper*
Matthew I. Knepper, Esq.
Nevada Bar No. 12796
*Attorneys for Plaintiffs*