Maurice B. VerStandig, Esq.
Nevada Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
(301) 444-4600
mac@mbvesq.com
*Counsel for 434 N. Orange Investment, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>VELOCITY ESPORTS, INC.,<br><br>□ Affects Velocity Esports, Inc.<br>□ Affects Velocity Esports Las Vegas Town Square, LLC<br>□ Affects Velocity Esports Chicago Schaumburg, LLC<br>□ Affects Velocity Esports Newport Kentucky, LLC<br>□ Affects Velocity Esports Orlando Downtown, LLC<br>■ Affects All Debtors | Case No. 25-12627-mkn<br><br>Jointly Administered with<br>Case No. 25-12628-mkn<br>Case No. 25-12629-mkn<br>Case No. 25-12630-mkn<br>Case No. 25-12631-mkn<br><br>Chapter 11 |
| VELOCITY ESPORTS, INC., a Nevada corporation, VELOCITY ESPORTS LAS VEGAS TOWN SQUARE, LLC, a Nevada limited liability company, VELOCITY ESPORTS CHICAGO SCHAUMBURG, LLC, an Illinois limited liability company, VELOCITY ESPORTS NEWPORT KENTUCKY, LLC, a Kentucky limited liability company, and VELOCITY ESPORTS ORLANDO DOWNTOWN, LLC, a Florida limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>434 N. ORANGE INVESTMENT, LLC, a Delaware limited liability company; | Adv. No. 26-01075-mkn<br><br>Hearing Date: OST Forthcoming<br>Hearing Time: OST Forthcoming |

Defendant,

and

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, solely as nominal garnishee and stakeholder defendant for purposes of notice and implementation of injunctive relief,

Nominal Defendant.

**MOTION FOR STAY PENDING APPEAL**

Comes now the 434 N. Orange Investment, LLC ("434 N. Orange" or the "Defendant"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 8007, and move this Honorable Court for a stay, pending appeal, of the (i) *Order Granting Plaintiffs' Motion for Preliminary Injunction* (the "Injunction Order"); and (ii) *Order Denying Defendant 434 N. Orange Investment, LLC's Motion to Reconsider* (the "Reconsideration Denial"), and in support thereof states as follows:

## I. Introduction

In what appears to be an unprecedent occurrence, this Honorable Court has granted a non-debtor injunction for reasons solely premised upon the pecuniary interests of the debtors and their estates being superior to those of a creditor yearning to collect upon a guaranty judgment. The Injunction Order has not been entered because a principal of the debtors needs to devote time to reorganization, or because the debtors may inure to some obligation to indemnify a principal if he is pursued. The Injunction Order, rather, is premised seemingly solely upon the notion that if a principal of the debtors has monies available, and wishes to donate those funds to the debtors, such is a higher and better purpose than allowing those funds to be garnished by a creditor.

This is a remarkable proposition and one that denotes a marked departure from the contours of extant case law. It is also a departure that occurs in the prism of a chapter 11 case where the debtors are so egregiously administratively insolvent—by their own admission—that a failure to commandeer the at-issue monies will result in the debtors' counsel going without post-petition compensation. Such matters mightily, not merely because of the questions necessarily summoned about why a chapter 11 estate is being permitted to push forward in such beleaguered condition but, too, because of the legal reality necessarily flowing therefrom: the debtors cannot—as a matter of law—satisfy the feasibility rigors provided for in title 11 of the United States Code, as part of their plan confirmation process. The plan they have proposed is one that feigns to pay 434 N. Orange in full. Yet the debtors have obtained the Injunction Order upon the merciful protestations that they have not the funds requisite to even compensate their own counsel. And such is of enormous moment because, under well-established case law, a so-called section 105 injunction ought not issue where, as here, there does not exist a viable reorganization in process.

Accordingly, with enormous respect for this Honorable Court, 434 N. Orange has appealed the Injunction Order (and, as a necessary compliment thereto, the Reconsideration Denial). In furtherance of those appeals, 434 N. Orange respectfully asks this Honorable Court for a stay of the Injunction Order—and relief from thee Reconsideration Denial—until such a time as a mandate may issue.

**II. Standard**

The considerations governing a stay pending appeal are, somewhat fittingly, markedly similar to those governing entry of a preliminary injunction. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008)). This is "not because the two are one and the same, but because similar concerns arise whenever a court order may allow or

disallow anticipated action before the legality of that action has been conclusively determined." *Nken*, 556 U.S. at 434.

Specifically, the four factors to be considered in assessing whether or not to grant a stay pending appeal are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). *See also Golden Gate Rest. Ass'n v. City of S.F.*, 512 F.3d 1112, 1115 (9th Cir. 2008) (accord).

**III. Argument: A Stay Pending Appeal is Appropriate**

As noted *supra*, the Injunction Order appears to be unprecedented. Prior non-debtor injunctions have been seemingly uniformly tied to some subjective reorganizational benefit; the orders now on appeal, by contrast, are manifestations of unfettered bankruptcy exceptionalism. This Honorable Court has determined that a debtor's estate (or, as it is, counsel) needs money more than a creditor needs money, and has thusly commandeered funds from the grasp of a creditor and into the ambit of a bankruptcy estate. Perhaps this notion will survive appeal (it is assuredly not lost on 434 N. Orange that the overwhelming majority of trial court orders do survive appeal). But unless and until such success is realized, the injunction ought to be stayed—especially given the *de minimis* prejudice that will flow therefrom.

Vis a vis likelihood of success on the merits: 434 N. Orange respectfully submits that it is likely to prevail on appeal because of (i) the aforementioned unprecedented nature of the relief afforded in this case; and (ii) the wholesale improbability of the debtors' current plan of reorganization proving confirmable. The former matters for the self-evident reason that this appears to have morphed into a case testing the elasticity of extant law. The latter matters because

Ninth Circuit precedent is well settled that likelihood of success on the merits, in the context of a petition for a non-debtor stay, is measured by "the debtor's likelihood of success in reorganization. . ." *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1089 (9th Cir. 2007).[1]

The unprecedented nature of the relief granted *sub judice* is manifest from a review of the very cases invoked by the parties in these proceedings, with each such case having some non-pecuniary rationale for the entry of a non-debtor injunction. *See, e.g.*, *In re Am. Hardwoods*, 885 F.2d 621, 624 (9th Cir. 1989) ("Without an interest in the company, the Keelers would have little incentive to operate American and maintain the reorganization plan."); *Homestead Holdings, Inc. v. Broome & Wellington (In re PTI Holding Corp.)*, 346 B.R. 820, 824 (Bankr. D. Nev. 2006) ("Both brothers introduced their personal calendars for the next several months, which showed solid booking of business events and necessary international travel. In addition, most, if not all, of the personal wealth of the Greensteins is tied up in London Fog Group; if it or its constituent parts cannot reorganize, their testimony is that they have no way to respond or pay any judgment Broome & Wellington might obtain."); *Excel Innovations*, 502 F.3d at 1091 ("In the affidavit, Hoffman offered three reasons why permitting arbitration against him would adversely impact Excel."); *In re Fed. Shopping Way*, Inc., 717 F.2d 1264, 1274 (9th Cir. 1983) ("We refuse to adopt the position, urged upon us by the appellees, that an injunction should issue simply because the state court action might affect the allocation of assets among claimants in the bankruptcy.").

There is no such rationale in this case. The injunction here is not to allow someone to continue to work on the affairs of their business, or even to spare that business liability for

---

[1] 434 N. Orange preserved, in this Honorable Court, an argument that this standard should be overturned and a more traditional merits-based analysis, of an accompanying adversary proceeding cause of action, should control. 434 N. Orange stands by this argument but also recognizes the instant motion is neither the time nor place to advance that argument.

potential indemnity obligations. The injunction is, rather, a naked interdiction of monies located and garnished by a creditor, on the theory that such monies are better expended paying the debtors' counsel than they are utilized to help honor a guaranty in favor of a pre-petition creditor.

The unconfirmable nature of the debtors' current plan, meanwhile, is ironically self-evident from these proceedings: whilst dangling a plan that promises to pay the multimillion dollar claim of 434 N. Orange in full (alongside the claims of myriad other creditors), the debtors are protesting such potent poverty as to be without monies to pay their own reorganization counsel. This is, *per se*, an absolute bar to plan confirmation. *See* 11 U.S.C. § 1129(a)(11).

In terms of irreparable injury: the debtors have been open in noting their principals to be bound for their own bankruptcy proceedings, as urged by the debtors' own counsel during oral argument on the preliminary injunction. The debtors, meanwhile, have no funds to pay 434 N. Orange, as discussed immediately above. And this is thusly a scenario where it appears 434 N. Orange will *never* be able to collect upon the debt owed it—either by the debtors or by the non-debtor guarantors—if the Injunction Order stays in place.

True, if the orders now on appeal are overturned, 434 N. Orange can then endeavor to unwind the loss of monies occasioned in the interim. But, by all accounts, such will require clawing monies back from a law firm. And while 434 N. Orange has entirely too much respect for the bar of this Honorable Court and its various practitioners to speculate as to the ease, *vel non*, of such an effort, it may be safely posited that collecting a money judgment against a bankruptcy firm is a task that can prove enormously difficult in many (albeit not all) circumstances.

By contrast, issuing a stay will *not* injure any other party in interest. The monies at issue will remain restricted in a fiduciary account (in fact, it even appears they may accrue interest). The debtors will be able to show, at confirmation, that these monies are available for distribution

as soon as a plan is confirmed and an appeal is won. No monies will be lost. No chances of reorganizing will be impaired or improved. The funds will simply sit where they already pend, awaiting further judicial instruction, to be ultimately claimed by a prevailing party.

Finally, the public interest does favor a stay in this case. The Supreme Court has made clear that third party injunctions—outside the asbestos arena—are enormously disfavored in bankruptcy. *See Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 222 (2024) (quoting 11 U.S.C. § 524(g)(4)(A)(ii); citing *Bittner* v. *United States*, 598 U. S. 85, 94 (2023); *AMG Capital Management, LLC* v. *FTC*, 593 U. S. 67, 77 (2021)). Yet the orders instantly on appeal work to expand case law, allowing a non-debtor injunction on solely pecuniary grounds.

Injunctions and appeals have a devilish tendency to invite hyperbole and there is some import in avoiding such here. Yet the existence of a proverbial slippery slope is not hard to grasp on the facts *sub judice*: the Injunction Order establishes that whenever a debtor's principal would rather monies go to counsel, than to a pesky creditor, such funds may be judicially stripped of a creditor's grasp (even when the principal did not even disclose the existence of the monies in the first instance). This is an enormously troubling precedent and one that may well work some violence upon the equities of the bankruptcy process. And the public interest, accordingly, certainly favors the entry of a stay whilst this new concept is tested on appeal.

Similarly, a stay pending appeal will allow the debtors to prove 434 N. Orange wrong. If the debtors can confirm a plan, despite the feasibility (and other) concerns raised by 434 N. Orange and other creditors, such will be a boon to the debtors' arguments concerning a probability of success on the merits. Again, the money will pend in a protected state if a stay is entered.[2] And

---

[2] It ought not be overlooked that this is an outcome passingly mused—if not outright suggested—by this Honorable Court during oral argument. Unfortunately, it is one to which the debtors would not consent.

the funds will thusly be available to implement a plan if one is confirmed and an appeal is won. But to not issue a stay would be to risk the irretrievable loss of the funds whilst novel issues of law are tested on appeal and whilst a seemingly unconfirmable plan begets one confirmation extension after another.

## IV. Conclusion

WHEREFORE, 434 N. Orange respectfully prays this Honorable Court (i) stay both the Injunction Order and the Reconsideration Order,[3] pending the sending down of a mandate; and (ii) afford such other and further relief as may be just and proper.

Dated: October 1, 2026

Respectfully submitted

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Nevada Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
(301) 444-4600
mac@mbvesq.com
*Counsel for 434 N. Orange Investment, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2026, the foregoing brief was filed using the CM/ECF system, which served a NEF on all parties receiving such service in this case.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

[3] The Reconsideration Order is appealed simply for the reasons manifest therefrom: absent a reversal of this order, the injunction risks becoming moot. Suffice it to posit, 434 N. Orange is confident there is an overwhelming likelihood of success on the appeal of this order, insofar as the debtors obtained relief materially broader than that sought in an underlying motion and, in so doing, essentially garnered backdoor injunctive relief through the uploading of a putatively "unopposed" order.