Matthew I. Knepper, Esq.
Nevada Bar No. 12796
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, Nevada 89148-7700
(702) 660-4228
mknepper@nvbankruptcyattorneys.com
*Attorneys for Plaintiffs/Debtors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>VELOCITY ESPORTS, INC.,<br><br>☐ Affects Velocity Esports, Inc.<br>☐ Affects Velocity Esports Las Vegas Town Square, LLC<br>☐ Affects Velocity Esports Chicago Schaumburg, LLC<br>☐ Affects Velocity Esports Newport Kentucky, LLC<br>☐ Affects Velocity Esports Orlando Downtown, LLC<br>■ Affects All Debtors | Case No. 25-12627-mkn<br><br>Jointly Administered with<br>Case No. 25-12628-mkn<br>Case No. 25-12629-mkn<br>Case No. 25-12630-mkn<br>Case No. 25-12631-mkn<br><br>Chapter 11 |
| VELOCITY ESPORTS, INC., a Nevada corporation, VELOCITY ESPORTS LAS VEGAS TOWN SQUARE, LLC, a Nevada limited liability company, VELOCITY ESPORTS CHICAGO SCHAUMBURG, LLC, an Illinois limited liability company, VELOCITY ESPORTS NEWPORT KENTUCKY, LLC, a Kentucky limited liability company, and VELOCITY ESPORTS ORLANDO DOWNTOWN, LLC, a Florida limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>434 N. ORANGE INVESTMENT, LLC, a Delaware limited liability company; | Adv. No. 26-01075-mkn<br><br>Hearing Date: OST pending<br>Hearing Time: OST pending |

Defendant,

and

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, solely as nominal garnishee and stakeholder defendant for purposes of notice and implementation of injunctive relief,

Nominal Defendant.

**PLAINTIFFS' OPPOSITION TO MOTION FOR STAY PENDING APPEAL [ADV. DKT. 62]**

Orange seeks to withhold the very funding this Court found necessary to preserve a meaningful opportunity for reorganization. The requested stay would remain in place through issuance of the appellate mandate, rather than merely for the limited period necessary to pursue orderly appellate review. Orange nevertheless characterizes that delay as harmless while simultaneously arguing that the Debtors cannot confirm because they lack administrative funding. That position ignores both the binding contribution already established in the record and the limited payment authority this Court has already granted. Adv. Dkt. 42, ¶¶ 10, 12–26; Adv. Dkt. 51, pp. 2–4; Adv. Dkt. 62, pp. 6–8.

Orange therefore faces two related burdens. Under *Nken*, it must make a sufficient showing of appellate merit and probable irreparable injury, while also justifying the harm its requested restraint would impose on the Debtors, their creditors, and the reorganization process. Its merits showing must further demonstrate that this Court abused its discretion in granting the preliminary injunction and denying reconsideration. Because the Court applied the governing legal standards and grounded both rulings in the filed record, Orange cannot transform its disagreement with the Court's weighing of that record into a likelihood of reversal.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

1. The original temporary restraining order preserved identified Merrill Lynch and Bank of America funds while restraining Orange's collection efforts. It left the underlying guaranty judgment intact and contemplated further court authorization before restricted funds could be released. Adv. Dkt.

19, pp. 3–6.[1]

2. Wanger subsequently executed a contribution commitment in his individual capacity and as trustee of the LRW Revocable Trust. He identified the Merrill accounts, described his trustee authority, and expressly consented to this Court's personal jurisdiction and final adjudication of the commitment's enforceability and implementation. Adv. Dkt. 42, ¶¶ 2–7.

3. The commitment became binding and irrevocable upon execution, encompasses identified existing accounts, and remains binding during review proceedings according to its terms. Wanger receives no repayment claim, lien, equity, release, or required confirmation outcome in exchange. He acknowledged that payment reduces the pool against which Orange asserts collection rights; he did not admit the validity or priority of those rights. Adv. Dkt. 42, ¶¶ 8, 13–17, 21–29, 32.

4. Wanger's filed declaration identifies administrative solvency, transaction implementation, and reserve funding as purposes reflected in the feasibility materials. It identifies the unpaid $12,835 Consumer Privacy Ombudsman award and the proposed $375,536.15 NBA allowance, and explains their importance to administrative solvency and continued progress toward confirmation. Adv. Dkt. 42, ¶¶ 9–12, 25–26.

5. On September 23, 2026, the Court entered the Funding Order, granting the supplemental motion after hearing the unopposed funding motion on September 15, 2026. The Order expressly records that no opposition was filed. Orange later explained that it deliberately did not oppose the funding procedures because it understood implementation to follow entry of a preliminary injunction, while preserving its opposition to the injunction itself. Adv. Dkt. 51, p. 2; Adv. Dkt. 52, p. 3.

6. The Funding Order approves the voluntary, non-reimbursable contribution and requires Orange to file a Notice of Dissolution of the Florida writ within five business days of entry. It separately directs Merrill to liquidate within seven business days and transfer within fourteen business days after the later of entry or Orange's filing of the Dissolution. The operative amount is the actual account proceeds, rather than a historical estimate. Adv. Dkt. 51, pp. 2–3.

---

[1] Plaintiffs request judicial notice of the existence, filing dates, and operative terms of the cited federal and state court records under Fed. R. Evid. 201(b), (c), and (e), applied through Fed. R. Bankr. P. 9017. *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). This request does not treat disputed allegations as established facts or submitted proposed orders as entered orders.

7. NBA receives those proceeds as a trust-account custodian and disbursing agent. The Order requires payment of the Ombudsman first, then permits payment of NBA's unpaid allowance under ECF No. 335, capped at $375,536.15. Aggregate authorized disbursements may not exceed $388,371.15; surplus remains segregated, and later-accrued fees and insider payments are not authorized. Adv. Dkt. 51, pp. 3–4. Wanger's commitment also recognizes applicable final fee review and disgorgement. Adv. Dkt. 42, ¶ 28.

8. The Funding Order modifies the prior restraints only for the specified implementation, expressly makes itself immediately enforceable, and overrides any otherwise applicable Rule 62(a) delay. Adv. Dkt. 51, pp. 4–5.

9. Orange filed its reconsideration motion on September 24, 2026. Its counsel acknowledged the five-business-day deadline and requested a hearing before that period expired. Its application expressly contemplated seeking a stay at that hearing if reconsideration failed and Orange was not relieved of compliance. The resulting OST scheduled the hearing and permitted oral opposition; it did not stay the Funding Order. Adv. Dkt. 52; Adv. Dkt. 53, pp. 2–3; Adv. Dkt. 53-1, ¶ 4; Adv. Dkt. 54, p. 2.

10. At the September 29, reconvened hearing, the Court orally granted preliminary injunctive relief and denied reconsideration. On October 2, 2026, the Court entered the Order Denying Reconsideration and the Order Granting Preliminary Injunction. The Preliminary Injunction Order finds at least serious questions concerning confirmation, sharply tipping hardships, likely irreparable harm if the identified funding becomes unavailable, and sufficient public-interest support for preserving the confirmation process. The Reconsideration Order denies Rule 60 relief and provides that the Funding Order remains in effect according to its terms, subject to any stay or further order. Adv. Dkt. 65, pp. 2–3; Adv. Dkt. 66, pp. 3–5.

11. Orange's October 1, 2026 notice expressly identifies both September 29 oral rulings and invokes Rule 8002(a)(2). Its stay motion seeks suspension through mandate; its OST requests an October 2 or October 5 hearing. Plaintiffs agreed to shortened-time consideration. Adv. Dkt. 60, p. 2; Adv. Dkt. 62, p. 8; Adv. Dkt. 63, p. 3; Adv. Dkt. 63-2, p. 2.

12. On October 1, 2026, Orange filed the Notice of Dissolution contemplated by the Funding

Order in the Florida garnishment proceeding. Florida Docket, Ex. A.

**II. GOVERNING LEGAL STANDARD**

Rule 8007 authorizes the bankruptcy court to consider a stay and other appropriate protection during appeal. A stay is discretionary, not a consequence of filing a notice. The relevant factors are the applicant's showing of likely success, probable irreparable injury absent a stay, injury to other interested parties, and the public interest. The first two are the most critical. *Nken v. Holder*, 556 U.S. 418, 433–35 (2009); Fed. R. Bankr. P. 8007(a), (e).

The Ninth Circuit does not require an applicant invariably to prove that appellate success is more likely than not. A substantial case on the merits may suffice when the balance of hardships tips sharply toward a stay. But probable irreparable injury remains a threshold requirement; a mere possibility of harm cannot be offset by the other factors. *Leiva-Perez v. Holder*, 640 F.3d 962, 965–68, 970–71 (9th Cir. 2011). Plaintiffs oppose the requested relief under either formulation.

Likelihood of success must be evaluated against the standards governing the appeal itself. The Ninth Circuit reviews the grant of a preliminary injunction for abuse of discretion, reviews underlying legal conclusions de novo, and reviews factual findings for clear error. *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1187 (9th Cir. 2026); *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1093 (9th Cir. 2007). Under the en banc formulation in *United States v. Hinkson*, an appellate court first asks de novo whether the trial court identified the correct legal rule; if it did, reversal requires an application of that rule or factual determination that is illogical, implausible, or without support in inferences that may be drawn from the record. 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc); see also *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1123 (9th Cir. 2014). Denial of Rule 60(b) relief is likewise reviewed for abuse of discretion. *Marroquin v. City of Los Angeles*, 112 F.4th 1204, 1211 (9th Cir. 2024). Rule 60(b)(6) does not apply to circumstances covered by another Rule 60 ground and, in any event, is reserved for extraordinary circumstances. *Id.* at 1217.

## III. ARGUMENT

### A. Orange cannot show likely appellate success because the PI applies controlling law and rests on supported findings.

Orange's principal merits theory begins with the wrong appellate lens. The Court identified the correct legal framework: Rule 65, *Winter*, the Ninth Circuit's serious-questions formulation under *Alliance for the Wild Rockies*, and the reorganization-specific inquiry required by *Excel*. Adv. Dkt. 66, p. 3. That satisfies the first step of *Hinkson*. Orange's contention that prior nondebtor-injunction cases involved different factual mechanisms—management distraction, indemnity exposure, or similar nonpecuniary effects—does not establish legal error because *Excel* treats those facts as applications of the injunction standard, not exclusive elements of section 105 relief. 502 F.3d at 1094–96.

The Court's application of that law is also supported by the record. Wanger identified the contributor, the existing restricted accounts, his authority to bind himself and the Trust, the purposes of the contribution, and the absence of repayment, lien, equity, release, or other insider consideration. Adv. Dkt. 42, ¶¶ 2–17, 21–26, 32. Based on that record, the Court found serious questions concerning confirmation; found that loss of the identified funds could limit or eliminate the ability to confirm; found likely irreparable harm because the absence of funds needed to satisfy confirmation requirements may end an otherwise viable reorganization effort; and found the balance of hardships tipped sharply toward Plaintiffs. Adv. Dkt. 66, pp. 3–4. Those findings are neither illogical nor implausible and plainly draw support from the filed record. *Hinkson*, 585 F.3d at 1261–62.

Nor does *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 227–32 (2024), supply the missing abuse of discretion. *Purdue* rejected nonconsensual plan releases that permanently discharged claims against nondebtors. The entered injunction here is temporary, account-specific, leaves Orange's guaranty judgment intact, does not adjudicate Orange's claims against Wanger, Kaplan, or the Trust, and terminates upon denial of confirmation unless the Court orders otherwise. Adv. Dkt. 66, pp. 4–5. The Ninth Circuit's current approach likewise reviews both the issuance and scope of preliminary injunctive relief for abuse of discretion while requiring tailoring to the harm found. *Los Angeles Press Club*, 171 F.4th 1179. Orange has not shown that this Court applied an incorrect legal rule or fashioned relief untethered to its supported findings. Its first *Nken* showing therefore fails.

**B. Orange's feasibility theory cannot establish abuse because it substitutes Orange's confirmation forecast for the Court's supported preliminary findings.**

Orange's feasibility argument asks the appellate court to decide confirmation now rather than review what this Court actually decided at the preliminary-injunction stage. The entered Order did not adjudicate every requirement of section 1129. It found at least serious questions concerning confirmation and found that removing the identified funding could limit, if not eliminate, the Debtors' ability to confirm. Adv. Dkt. 66, p. 3. Under *Excel* and *Alliance for the Wild Rockies*, that was the appropriate preliminary inquiry. Orange's contrary prediction about eventual confirmation does not make the Court's narrower determination legally erroneous.

The statutory premise is likewise overstated. Section 1129(a)(9)(A) addresses effective-date treatment of specified administrative claims, subject to agreement by the holder, while section 1129(a)(11) requires the Court to determine feasibility on the plan and funding actually proposed. Neither provision creates Orange's asserted per se rule that a debtor presently dependent on committed outside funding cannot confirm. Adv. Dkt. 62, p. 6. Here the record contains identified, existing accounts and an executed commitment that remains binding during the review process. Wanger attests to his authority and ability to perform from those accounts, subject to lawful release and the Court-ordered payment limits. Adv. Dkt. 42, ¶¶ 3–6, 13–17, 26, 32; Adv. Dkt. 51, pp. 2–4.

Those facts make the Court's preliminary findings at least plausible and supported by record inferences, which is enough to defeat Orange's attempt to establish likely reversal under *Hinkson*. 585 F.3d at 1261–62. Confirmation objections remain for confirmation, where Orange may challenge feasibility, best interests, treatment, and any other preserved issue. But Rule 8007 does not permit Orange to manufacture likely appellate success by assuming away the very funding that the Court found relevant to whether the Chapter 11 process can reach that determination. This point therefore reinforces, rather than undermines, the Court's exercise of discretion.

**C. Orange cannot show abuse of discretion in the reconsideration denial because the Court applied Rule 60 and the sequencing premise has now been adjudicated.**

The reconsideration appeal is subject to the same threshold problem. Denial of Rule 60(b) relief is reviewed for abuse of discretion. *Marroquin*, 112 F.4th at 1211. The entered Reconsideration Order

expressly identifies Rule 60(b)(1) and Rule 60(b)(6), made applicable by Rule 9024, places the burden on Orange, and denies relief in light of the separately entered preliminary injunction and the reasons stated on the record. Adv. Dkt. 65, pp. 2–3. The Court therefore identified the governing rule; Orange must show that the resulting disposition was legally erroneous or fell outside the range of supported, permissible outcomes.

Orange's own motion confirms that its central reconsideration complaint was sequencing and surprise, not lack of notice that the identified accounts and payment mechanism were before the Court. Orange emphasized that the supplemental motion contemplated implementation upon or contemporaneously with entry of a preliminary injunction and explained that it elected not to oppose on that understanding. Adv. Dkt. 52, p. 3. Plaintiffs do not contend that entry of the PI retroactively cures every conceivable notice objection. The narrower point is that, after a fully contested PI proceeding, the Court actually entered the ruling Orange said should precede implementation. It was not illogical, implausible, or unsupported for the Court to consider that development when deciding whether Rule 60 relief from the Funding Order remained warranted.

Rule 60(b)(6) does not improve Orange's appellate posture. The Ninth Circuit has recently reiterated that subsection (b)(6) does not apply where the asserted circumstances are covered by another Rule 60 ground and, even when available, requires extraordinary circumstances. *Marroquin*, 112 F.4th at 1217. Orange's asserted mistake or surprise falls naturally within Rule 60(b)(1), and the Reconsideration Order preserves Orange's right to seek a Rule 8007 stay while leaving the Funding Order subject to any stay or further order. Adv. Dkt. 65, p. 3. Orange therefore identifies neither an incorrect Rule 60 standard nor a record application that satisfies *Hinkson*'s abuse-of-discretion threshold. Its likelihood-of-success showing on reconsideration fails as well.

**D. Orange loses on irreparable harm because its recovery theory remains speculative.**

Even a substantial appellate question would not dispense with *Nken*'s independent requirement of probable irreparable injury. Orange's concern deserves a direct answer: authorized disbursements would reduce the particular fund against which it asserts garnishment rights. Plaintiffs do not describe that consequence as mere collection delay or pretend the pool will remain intact after payment. Adv. Dkt. 42, ¶ 8. But probable irreparable injury requires more than an assumption that every court-

authorized payment will be impossible to recover. *Nken*, 556 U.S. at 434–35; *Leiva-Perez*, 640 F.3d at 968–69.

The Funding Order identifies the recipients, caps payments, requires NBA's initial receipt in trust, prohibits insider diversion and later-fee payments, and segregates surplus. Adv. Dkt. 51, pp. 3–4. Wanger's declaration expressly recognizes applicable fee review and disgorgement. Adv. Dkt. 42, ¶ 28. In contrast, Orange points to difficulty collecting from bankruptcy firms generally rather than evidence concerning NBA's ability to comply with any eventual restitution or disgorgement order. Adv. Dkt. 62, p. 6. Its OST declaration identifies no additional recipient-specific recovery facts. Adv. Dkt. 63-1, ¶¶ 3–5.

Orange bears the burden to establish probable, not conjectural, irreparable injury on the existing record. The identifiable recipients, payment caps, trust-account mechanics, segregated surplus, and continuing fee-review obligations distinguish this case from an untraceable transfer beyond judicial supervision. Orange's generalized recovery concern therefore cannot carry the second *Nken* factor, particularly when weighed against the specific reorganization injury the Court has now found in Adv. Dkt. 66.

**E. A stay would injure the creditor body because the Court found the funding necessary before confirmation.**

The requested stay would withhold administrative funding during the period in which Plaintiffs must prepare for and litigate confirmation. Orange's assurance that the money can wait until a plan is confirmed and the appeal is won leaves that present need unanswered. Adv. Dkt. 62, pp. 6–8. More importantly, the Court has now made the contrary finding: loss of the identified funds could limit or eliminate the ability to confirm, and the absence of interim relief is likely to cause irreparable harm to the Debtors' confirmation efforts. Adv. Dkt. 66, pp. 3–4. The third stay factor protects all interested parties, not only the judgment creditor seeking appellate relief. *Nken*, 556 U.S. at 434; *Leiva-Perez*, 640 F.3d at 970.

The evidentiary record supports those findings. Wanger's declaration connects the restricted Merrill funds to administrative solvency, transaction implementation, reserve funding, the unpaid Ombudsman award, and restructuring compensation necessary to continued progress toward

confirmation. Adv. Dkt. 42, ¶¶ 10–12, 25–26. The Funding Order channels payment only to those authorized obligations, prohibits insider diversion, and grants Wanger no repayment or priority claim. Adv. Dkt. 51, pp. 2–4. The PI Order further identifies section 1129(a)(9), section 1129(a)(11), best-interests issues under section 1129(a)(7), and the legal and administrative costs of confirmation as components of the threatened harm. Adv. Dkt. 66, pp. 3–4.

Orange may disagree with the weight the Court assigned that evidence, but disagreement is not a showing that the findings are illogical, implausible, or unsupported. *Hinkson*, 585 F.3d at 1261–62. The creditor body has an interest in a viable, supervised process capable of reaching confirmation and resolving the remaining objections on their merits. A mandate-length freeze would impose the precise interim injury the Court found while giving Orange the practical benefit of appellate relief before it has shown either likely reversal or probable irreparable harm. The third *Nken* factor therefore weighs against a stay.

**F. The equities favor continued implementation because Orange has filed the Dissolution and the Court-supervised funding process is now underway.**

Orange has now filed the Notice of Dissolution contemplated by the Funding Order. That development eliminates any need to litigate the timing of that ministerial filing and sharpens the present question: whether the Court should interrupt the implementation sequence it already authorized after separately denying reconsideration and granting preliminary injunctive relief. Adv. Dkt. 51, pp. 2–5; Adv. Dkt. 65; Adv. Dkt. 66. The relevant status quo is therefore not an indefinite freeze at Merrill, but a court-supervised funding process proceeding under entered orders unless a stay is affirmatively granted. That sequence remains carefully bounded. The Reconsideration Order expressly leaves the Funding Order in effect according to its terms, subject to an actual stay or further order. Adv. Dkt. 65, p. 3. The PI Order leaves Orange's Florida guaranty judgment intact, limits the injunction to the identified Merrill and Bank of America assets, preserves Orange's right to seek Rule 8007 relief, and terminates the injunction upon entry of an order denying confirmation unless the Court orders otherwise. Adv. Dkt. 66, pp. 4–5. Those limitations protect appellate review without making appellate mandate a prerequisite to all administrative funding.

The Court's calibration of those competing interests is itself a discretionary judgment supported

by the record. Under *Hinkson* and *Los Angeles Press Club*, an appellate court does not replace that judgment merely because Orange would prefer a different balance; it asks whether the Court applied the correct rule and whether the resulting factual application lacks logical or record support. Nothing in Orange's stay motion makes that showing. The equities therefore favor allowing the entered orders to operate unless Orange first satisfies Rule 8007's demanding stay requirements.

The same conclusion follows from the public interest. The PI Order expressly finds a sufficient Chapter 11 public interest in preserving a meaningful opportunity to reorganize, including employment, creditor payments, and investment value, while recognizing that the interest is not overwhelming. Adv. Dkt. 66, p. 4. That measured finding is supported by the record and further counsels against replacing the Court's limited injunction with a mandate-length suspension.

**IV. CONCLUSION**

Orange has preserved appellate review, but it has not shown likely reversal under the standards that govern that review. The Court identified the correct preliminary-injunction and Rule 60 rules, applied them to a developed record, and entered findings that are logical, plausible, and supported by record inferences. Orange likewise has not established probable irreparable injury, while the Court has already found that a prolonged funding freeze threatens the Debtors' ability to reach confirmation and the interests of the creditor body in that process. The Court should deny Adv. Dkt. 62 and permit Adv. Dkt. 51 and Adv. Dkt. 66 to operate according to their terms.

Respectfully submitted on October 2, 2026 by,

NEVADA BANKRUPTCY ATTORNEYS, LLC
/s/ *Matthew I. Knepper, Esq.*
Matthew I. Knepper, Esq.
Nevada Bar No. 12796
*Attorneys for Plaintiffs/Debtors*