Matthew I. Knepper, Esq.
Nevada Bar No. 12796
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, Nevada 89148-7700
(702) 660-4228
mknepper@nvbankruptcyattorneys.com
*Attorneys for Plaintiffs/Debtors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>VELOCITY ESPORTS, INC.,<br><br>☐ Affects Velocity Esports, Inc.<br>☐ Affects Velocity Esports Las Vegas Town Square, LLC<br>☐ Affects Velocity Esports Chicago Schaumburg, LLC<br>☐ Affects Velocity Esports Newport Kentucky, LLC<br>☐ Affects Velocity Esports Orlando Downtown, LLC<br>■ Affects All Debtors | Case No. 25-12627-mkn<br><br>Jointly Administered with<br>Case No. 25-12628-mkn<br>Case No. 25-12629-mkn<br>Case No. 25-12630-mkn<br>Case No. 25-12631-mkn<br><br>Chapter 11<br><br>PLAINTIFFS' RESPONSE TO ORANGE'S BRIEF ON MOOTNESS [ADV. DKT. 79] |
| VELOCITY ESPORTS, INC., a Nevada corporation, VELOCITY ESPORTS LAS VEGAS TOWN SQUARE, LLC, a Nevada limited liability company, VELOCITY ESPORTS CHICAGO SCHAUMBURG, LLC, an Illinois limited liability company, VELOCITY ESPORTS NEWPORT KENTUCKY, LLC, a Kentucky limited liability company, and VELOCITY ESPORTS ORLANDO DOWNTOWN, LLC, a Florida limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>434 N. ORANGE INVESTMENT, LLC, a Delaware limited liability company; | Adv. No. 26-01075-mkn<br><br>Hearing Date: OST pending<br>Hearing Time: OST pending |

Defendant,

and

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, solely as nominal garnishee and stakeholder defendant for purposes of notice and implementation of injunctive relief,

Nominal Defendant.

---

Orange's Brief on Mootness establishes, at most, that relief pending appeal remains available for consideration. It does not establish that Orange is entitled to that relief. Plaintiffs do not contend that the October 19 transfer or the authorized payment to the Consumer Privacy Ombudsman automatically moots the appeal. But Orange now requests affirmative restraints on counsel, Nevada Bankruptcy Attorneys, LLC ("NBA"), and the ombudsman, together with an accounting, through appellate mandate. Adv. Dkt. 79 at 3, 5–6. That request must satisfy the standards governing a stay or injunction; it does not follow from the existence of a live appeal.

The Funding Order already controls the recipients, uses, and maximum authorized disbursements, preserves surplus, and requires a separate ledger. Adv. Dkt. 51 at 3–4. NBA's allowance remains subject to review and, if appropriate, disgorgement. ECF No. 335 at 3. Those protections and the availability of effective appellate relief undermine an assertion that transfer necessarily causes irreparable injury. They do not guarantee restitution, concede Orange's entitlement to the funds, or impose personal liability on counsel for every authorized payment. The Court should deny the requested freeze and the underlying stay motion for the reasons stated here and in Plaintiffs' filed opposition. Adv. Dkt. 67.

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

1. On August 18, 2026, the Court entered NBA's fee order, approving total compensation and expenses of $375,536.15 and authorizing payment from lawfully available funds subject to applicable orders governing the payment source. ECF No. 335 at 2–3. The allowance expressly

remains subject to review, adjustment, reallocation, and, if appropriate, disgorgement in connection with the final fee application or further order. *Id.* at 3.[1]

2. On September 23, 2026, the Court entered the Funding Order approving Wanger's binding, irrevocable contribution, individually and as trustee of the LRW Revocable Trust. Adv. Dkt. 51 at 2. The contribution is voluntary, non-reimbursable, and not conditioned on confirmation, a release, discharge, equity, or other consideration; it creates no repayment or priority claim against a Debtor or Reorganized Debtor. *Id.* at 2.

3. The Funding Order directs transfer of the actual Merrill account proceeds to NBA's client trust account. NBA receives them as custodian and disbursing agent, not as unrestricted compensation. *Id.* at 3. Upon receipt of cleared funds, NBA must first pay the unpaid portion of Alan Chapell's $12,835 award, and only then may apply remaining funds to its unpaid allowance under ECF No. 335, capped at $375,536.15. Adv. Dkt. 51 at 3–4. Aggregate authorized disbursements may not exceed $388,371.15. *Id.* at 4.

4. Excess receipts must remain segregated pending further order. The Funding Order prohibits transfers to Wanger, the Trust, a Debtor operating account, another insider, or any other unauthorized recipient; it does not authorize later-accrued fees. *Id.* at 4. It also requires a separate receipt-and-disbursement ledger and any supplemental compensation disclosure required by Rule 2016. *Id.* at 4. The order is immediately enforceable. *Id.* at 5.

5. On October 1, 2026, Orange filed its stay motion, requesting suspension of the preliminary-injunction and reconsideration rulings through appellate mandate. Adv. Dkt. 62 at 2–4, 8. Orange acknowledged the possibility of unwinding payments but asserted that recovery from a bankruptcy law firm could be difficult; it also proposed leaving the funds restricted while confirmation proceeded. *Id.* at 6–7 & n.2.

6. On October 2, 2026, the Court entered the reconsideration denial and preliminary injunction. Adv. Dkt. 65 at 1; Adv. Dkt. 66 at 1. The reconsideration order leaves the Funding

[1] "Adv. Dkt." references identify this adversary docket; "ECF No." references identify the jointly administered main case, No. 25-12627-mkn.

Order effective according to its terms, subject to an actual stay or further order, and expressly preserves Rule 8007 relief. Adv. Dkt. 65 at 3. The PI finds serious questions concerning confirmation, sharply tipping hardships, likely irreparable reorganization harm, and sufficient public-interest support for interim protection. Adv. Dkt. 66 at 3–4. It preserves Orange's underlying judgment and limits the restraint's subject matter and duration. *Id.* at 4–5. On October 2, 2026, Plaintiffs filed their stay opposition. Adv. Dkt. 67 at 1.

7. On October 19, 2026, Merrill completed the wire transfer. Alan Chapell has been paid consistent with the Funding Order. Plaintiffs report these implementation facts through undersigned counsel; the cited orders establish the authorized payment mechanism, not proof of the later transactions. These developments require the Court to distinguish completed acts from any prospective conduct Orange now seeks to restrain.

8. On October 25, 2026, Orange filed its Brief on Mootness, bearing an October 28, 2026, 10:30 a.m. hearing setting. Adv. Dkt. 79 at 1, 6. It requests an injunction against counsel and NBA, an accounting, and a restraint extending to the ombudsman to the extent he received funds. *Id.* at 3, 5–6. The brief supplies no declaration, bank record, current ledger, or recipient-specific evidence of inability to satisfy a lawful repayment obligation. *Id.* at 2–6.

**II. LEGAL STANDARDS**

Rule 8007(a)(1)(A), (C), and (D) expressly permits requests for a stay, an injunction pending appeal, and other protective relief. Rule 8007(e) preserves the bankruptcy court's authority, subject to the appellate court, to protect all parties in interest. These provisions authorize consideration of relief after an appeal begins; they do not make relief automatic or dispense with the governing equitable standards.

A stay requires consideration of appellate merit, irreparable injury without relief, injury to other interested parties, and the public interest. The applicant bears the burden, and the first two factors are most critical. *Nken v. Holder*, 556 U.S. 418, 433–35 (2009). A substantial case on the merits can suffice when hardships tip sharply toward the applicant, but probable irreparable injury

remains indispensable. *Leiva-Perez v. Holder*, 640 F.3d 962, 966–68, 970 (9th Cir. 2011). A possible injury cannot be rescued by balancing the other factors. *Id.* at 965, 968.

A new preliminary injunction also requires likely irreparable injury, a favorable balance of equities, and consistency with the public interest, together with the required merits showing. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 22 (2008). The Ninth Circuit's serious-questions formulation preserves those requirements. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Rule 7065 incorporates Civil Rule 65, including notice, specificity, and limits on the persons bound. Bankruptcy Rule 9013 and Local Rule 9014 separately govern the request's presentation, service, and evidentiary support.

Mootness addresses a different question. Article III mootness concerns whether effective relief remains possible; equitable mootness concerns whether relief would be inequitable because of intervening transactions and third-party reliance. *Motor Vehicle Casualty Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880–83 (9th Cir. 2012). The latter doctrine does not itself authorize interim coercive relief. Whether an appeal can proceed and whether conduct should be restrained during that appeal require distinct determinations.

## III. ARGUMENT

Orange's supplemental request fails because the authorities preserving appellate review do not establish entitlement to a freeze, the request remains subject to the ordinary equitable standards, and the record does not establish probable nonrecoverable injury. The proposed restraint would also alter the Funding Order's express payment scheme and reach recipients whose positions require separate consideration. A focused implementation report can clarify the facts without deciding those issues by assumption.

### A. The Court should reject mootness as a basis for a freeze because the cited cases preserve appellate remedies rather than award interim relief.

Plaintiffs accept the narrow proposition for which Orange properly invokes *Spirtos*: transfer or expenditure does not necessarily eliminate effective appellate relief. In that case, the court could order a debtor who was before it to return distributed pension assets. *Spirtos v. Moreno*

*(In re Spirtos)*, 992 F.2d 1004, 1006–07 (9th Cir. 1993). Its discussion of counsel's interim fees came from *Salomon v. Logan (In re International Environmental Dynamics, Inc.)*, 718 F.2d 322, 325–26 (9th Cir. 1983), where the fee recipient was a party to the appeal and could be ordered to return an erroneous payment. Neither decision awarded the prospective account freeze Orange requests.

The distinction remains clear under the later equitable-mootness cases. *Thorpe* considers pursuit of a stay, substantial consummation, effects on third parties, and the practical availability of effective and equitable relief. 677 F.3d at 881–83. *JPMCC 2007-C1 Grasslawn Lodging, LLC v. Transwest Resort Properties, Inc. (In re Transwest Resort Properties, Inc.)*, 801 F.3d 1161, 1167–73 (9th Cir. 2015), applies that inquiry to the particular relief sought and recognizes that monetary or partial relief may preserve an appeal without undoing the entire plan. Those decisions examine whether an appeal should be dismissed; they do not substitute their mootness analysis for the requirements governing a stay.

Orange's appeal concerns the PI and reconsideration rulings, and its supplemental request concerns identifiable funding and payments. Adv. Dkt. 60 at 2; Adv. Dkt. 79 at 2–5. Plaintiffs do not seek dismissal merely because the wire completed or Chapell was paid. Effective relief remains available for consideration on appeal and remand, including modification of prospective relief and, where legally warranted, return or adjustment of payments. The existence, extent, and proper obligor of a monetary remedy depend on the appellate disposition and the applicable law; they need not be predetermined to reject automatic mootness.

The same distinction answers Orange's concern about its pending motion. A stay cannot prevent a completed wire, but a request directed at future conduct is not necessarily moot. The Court may consider it under Rule 8007. That conclusion gets Orange to the merits of its request, not to an injunction. Plaintiffs therefore oppose the requested relief on its legal and factual merits without asking this Court to decide every possible future mootness issue for the appellate tribunal.

**B. The Court should apply the ordinary stay and injunction standards because equity does not excuse Orange's required showing.**

Orange asks the Court to command counsel, NBA, and potentially Chapell not to spend or transfer funds. Adv. Dkt. 79 at 3, 5. That is affirmative regulation of recipients' conduct. *Nken* distinguishes such an injunction from a stay operating on a judicial order, while recognizing their practical overlap. 556 U.S. at 428–29. Rule 8007(a)(1)(C) supplies a procedure for seeking an injunction during appeal; the fact that such relief is procedurally available does not establish its necessity or proper scope.

Orange acknowledges the governing factors and incorporates its earlier stay arguments rather than repeating them. Adv. Dkt. 79 at 5. The Court can consider those arguments and Plaintiffs' response together. Adv. Dkt. 62 at 4–8; Adv. Dkt. 67 at 5–11. But supplemental authority on remedial power cannot cure a missing showing of probable irreparable injury. Even assuming a substantial appellate question, *Leiva-Perez* requires that injury and, under its sliding-scale formulation, a balance of hardships tipping sharply toward Orange. 640 F.3d at 966–68, 970.

The Court need not resolve a categorical dispute over whether every injunction pending appeal receives a separate application of *Winter*. The request fails unless the governing stay factors are satisfied; any additional preliminary restraint must also comply with Rule 65's applicable protections. Orange's cited propositions about discretionary equitable relief do not identify an exception to either requirement. Its own recognition that the ordinary factors govern forecloses treating a live appeal as sufficient grounds for relief. Adv. Dkt. 79 at 4–5.

Section 105(a) does not provide an alternative route around those requirements. *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1094–96 (9th Cir. 2007), requires the usual preliminary-injunction analysis for nondebtor restraints of the kind addressed there. *Law v. Siegel*, 571 U.S. 415, 421–22 (2014), likewise confines bankruptcy equity to the Code rather than permitting it to override statutory limitations. Plaintiffs defend the entered relief under the applicable standards; they do not argue that invoking § 105 gives either side unbounded power to restrain another person's property.

**C. The Court should deny the freeze because Orange has not established probable irreparable injury from the authorized payments.**

Orange's concern is concrete in one respect: disbursement reduces the particular fund against which it asserts collection rights. Plaintiffs do not deny that consequence. But loss of access to a particular fund does not itself establish that effective relief will probably be unavailable if Orange prevails. Orange's new brief affirmatively argues that funds can be recovered on remand, even after leaving counsel's trust account. Adv. Dkt. 79 at 3–4. That position undermines any categorical assertion that payment necessarily destroys the appeal's practical value.

The record supplies protections beyond that legal possibility. NBA's fee order expressly preserves review, adjustment, reallocation, and appropriate disgorgement. ECF No. 335 at 3. Sections 330(a)(5) and 331 recognize interim compensation and potential return of payments exceeding the ultimate award. The Funding Order separately limits authorized payments, segregates excess, and requires a ledger. Adv. Dkt. 51 at 3–4. Thus, receipt in trust is not unrestricted compensation, and an authorized payment is not immunized from later review merely because it has occurred.

Those protections must not be overstated. Final fee review does not automatically resolve Orange's asserted rights to the payment source. A reduction of compensation under § 330(a)(5) and restitution following appellate reversal are different grounds for relief. Nor does *Spirtos* establish personal liability of counsel for every payment made as a disbursing agent, as Orange suggests in footnote 1. Adv. Dkt. 79 at 3 n.1. Liability, available defenses, jurisdiction, and collectibility require their own legal and factual support; neither Plaintiffs nor NBA guarantees recovery from any recipient.

That qualification does not shift Orange's burden. Its original motion offered a general concern about collecting from bankruptcy firms, and its new brief supplies no recipient-specific evidence of insolvency, evasion, or probable inability to comply with a lawful repayment order. Adv. Dkt. 62 at 6; Adv. Dkt. 79 at 2–6. A live appeal can coexist with irreparable injury, and a proven recovery risk could matter. What is missing is proof that such injury is probable here.

Uncertainty about the current location or balance of funds is a reason to establish the facts, not a substitute for establishing the required injury.

Chapell's payment reinforces the need for precision. An injunction against his future use of funds is distinct from preventing NBA's already-completed payment to him. His award and any applicable review or recovery rules must be considered on their own terms; NBA's interim-fee provisions should not simply be imputed to him. Orange identifies no evidence that his receipt creates a probable nonrecoverable loss, and its brief's conditional treatment of whether he received funds cannot support findings about their subsequent disposition. Adv. Dkt. 79 at 5.

**D. The Court should preserve the Funding Order's payment scheme because Orange's blanket freeze would suspend expressly authorized performance.**

Orange describes its proposal as having "no discernable downside." Adv. Dkt. 79 at 5. But the Funding Order deliberately distinguishes the unpaid awards, which may be paid in the specified sequence, from excess receipts, which must remain segregated. Adv. Dkt. 51 at 3–4. An order freezing all funds now held would erase that distinction for the duration of appellate review. It would be a substantive change in permissible conduct, not merely clarification of an existing custodial duty.

The reconsideration denial makes the operative framework express: the Funding Order remains effective according to its terms unless stayed or otherwise modified. Adv. Dkt. 65 at 3. Plaintiffs do not contend that the Court lacks power to make such a modification under Rule 8007. They contend that Orange must justify it. The lawful availability of a modification cannot be treated as proof that the modification is necessary, and a prohibition on "dissipation" must not obscure that Orange seeks to prohibit payments the Court expressly authorized.

The opposing interests also remain material. The PI identifies threatened reorganization harm from unavailable funding and considers administrative claims, feasibility, confirmation costs, and the creditor body's opportunity for a meaningful Chapter 11 process. Adv. Dkt. 66 at 3–4. Those findings do not authorize later-accrued fees or new recipients beyond the Funding

Order. They do require the Court to assess the actual effect of withholding authorized payment, rather than assume that retaining cash is costless to everyone except Orange. The public-interest finding was measured, not absolute, and should be weighed as entered. *Id.* at 4.

Orange's strongest proposed accommodation—preserving the restriction while confirmation proceeds—was already presented in its stay motion. Adv. Dkt. 62 at 6–7 & n.2. Plaintiffs do not characterize that proposal as improper merely because it protects appellate review. Its weakness is that Orange requests protection through mandate without showing that this duration and scope are needed or that the resulting burden is justified. Adv. Dkt. 79 at 3. The Court should decide that request under the stay factors, while leaving ownership, priority, confirmation objections, and the merits of the appeal for their proper determination.

**E. The Court should refuse undefined restraints on recipients because notice and Rule 65 require a concrete, properly supported order.**

Orange's proposal reaches more than the original transfer: it seeks an accounting and restraints against counsel individually, NBA, and the ombudsman. Adv. Dkt. 79 at 3, 5–6. Rule 65(a)(1) requires notice of preliminary injunctive relief, and Rule 9013 requires particularity concerning the grounds and relief sought. Local Rule 9014(c)(1) requires evidentiary support for disputed facts.

NBA and its attorneys cannot claim categorical immunity as nonparties: Rule 65(d)(2)(B) expressly reaches a party's attorneys who receive actual notice. But that does not resolve the merits of a restraint on counsel's own funds or establish personal repayment liability. Chapell's role as a court-appointed ombudsman likewise does not, without more, make him Plaintiffs' agent or a person acting in concert with them. The Court must identify the basis for binding him and provide an opportunity to be heard. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110–12 (1969), rejects an injunction against a nonparty without the necessary jurisdictional and participation determinations.

The order's terms must also identify the persons, funds, prohibited acts, and duration with

reasonable detail. Fed. R. Civ. P. 65(d)(1). Orange instead asks that funds remain in whatever account, form, and sum they presently occupy while requesting an accounting to determine the amount. Adv. Dkt. 79 at 3, 5. The requested accounting acknowledges the factual gap. Before granting relief, the Court would need to distinguish trust funds, compensation already applied, Chapell's payment, and any surplus; it should not inadvertently freeze unrelated client funds or impose a requirement to replenish money already paid.

Security requires attention as well if Orange seeks a new preliminary injunction. Rule 7065 permits relief without Rule 65(c) compliance on application of a debtor, trustee, or debtor in possession; Orange is none of those applicants. The PI's no-bond determination for Plaintiffs therefore does not automatically dispose of security for Orange's new restraint. Adv. Dkt. 66 at 4–5. The Court should address any applicable security requirement and appropriate amount on the actual proposed relief, rather than silently carry forward the earlier determination.

If the Court needs current implementation information, it can direct a focused report under the Funding Order's existing ledger requirement, with account identifiers and unrelated client information protected. Adv. Dkt. 51 at 4. Plaintiffs do not contend that the current balance is immune from a properly supported judicial inquiry. But obtaining information and restraining assets are different actions. The Court should deny the freeze on this record; alternatively, it should require a defined request, necessary recipient notice, and supporting evidence before deciding any additional restraint, while leaving existing restrictions and payment limits in place.

## IV. CONCLUSION

The Court should deny the injunction and blanket freeze requested in Adv. Dkt. 79 and deny the stay motion at Adv. Dkt. 62 for the reasons stated here and in Plaintiffs' opposition to stay relief. A completed transfer does not automatically moot appellate review, and the availability of effective relief does not entitle Orange to an injunction. The Funding Order, fee order, and PI should continue to operate according to their terms unless modified upon the required showing.

Alternatively, the Court should obtain only the implementation information needed to

resolve a concrete factual dispute and require proper notice, evidence, findings, and defined terms before imposing any further restraint. Any ruling should preserve applicable fee review and lawful appellate remedies without adjudicating Orange's ownership or priority claims, imposing blanket personal liability on counsel, guaranteeing restitution, or expanding the payments already authorized.

Dated: October 26, 2026
Respectfully submitted,

**NEVADA BANKRUPTCY ATTORNEYS, LLC**

By: *s/ Matthew I. Knepper, Esq.*
Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Attorneys for Plaintiffs/Debtors